Andrea Mazingo, SBN 300824
**Lumen Law Center, P.C.**
8605 Santa Monica Blvd PMB 832031
West Hollywood, CA 90069
Telephone: (310) 269-6739
Email: andi@lumenlawcenter.com

Barbara E. Cowan, SBN 251942
**Workplace Advocates, P.C.**
9431 Haven Avenue, Suite 100
Rancho Cucamonga, CA 91730
Telephone: (909) 983-4102
Email: brandi@wpa.law

Rebecca Houlding *(pro hac vice pending)*
**Houlding Law PC**
431 Classon Avenue, Suite 1B
Brooklyn, NY 11238
Telephone: (646) 561-9119
Email: rebecca@houldinglaw.com

**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

Does 1 through 26

        Plaintiffs,

v.

META PLATFORMS, INC.,

        Defendant.

Case No. _____

**DECLARATION OF Doe 13 Doe 13 IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

*[Filed concurrently with Plaintiffs' Notice of Motion and Motion for Preliminary Injunction; Memorandum of Points and Authorities; and additional supporting declarations]*

I Doe 13 declare as follows:

1. I am over the age of eighteen and a resident of ▮▮▮▮ California. I have personal

knowledge of the matters stated in this declaration, except as to those matters stated on

Doc ID: a85c0b25825e1ad23a95e2a94e239f77829da654

information and belief, and as to those matters I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2. I submit this declaration in support of Plaintiffs' Motion for a Preliminary Injunction. I am one of the Meta employees who was selected for termination in Meta's May 2026 reduction in force. Less than a year before I was selected, ▉▉▉▉▉▉▉▉▉▉ took ▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉.

3. I began my employment with Meta Platforms, Inc. ("Meta") in ▉▉▉▉▉▉▉ I was hired as a ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ and I held that same title and level throughout my employment. My most recent team was in ▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ I worked in person from Meta's office in ▉▉▉▉▉ ▉▉▉, California.

4. My manager was ▉▉▉▉▉▉▉ and my skip-level manager was ▉▉▉▉▉▉ As a ▉▉▉▉▉▉▉▉▉▉▉▉▉ I led a team of approximately ▉▉▉▉▉▉▉▉

5. In mid-June 2025 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉ I disclosed ▉▉▉▉▉▉▉ my need for leave to both my manager and Meta's human resources, and Meta approved the leave. ▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉

Doc ID: a85c0b25825e1ad23a95e2a94e239f77829da654

6. For my year-end 2025 performance review—which was decided in approximately January 2026 and communicated to me in early February 2026, several months after my ███████ ███████ leave—I received a rating of "Meets Most," the first rating below "Meets All" of my tenure. I do not believe that rating reflects my actual performance ███████ My manager initially rated me "Consistently Meets Expectations" and had indicated I was trending well for the cycle; I understand the rating was lowered to "Meets Most" during Meta's calibration process, in which a group of my manager's peers adjusted it downward based on one component of Meta's semi-annual anonymous "Pulse" survey. The Pulse survey measures, among other things, my team's perception of me ███████ and my team's working conditions. My ███████ score was among the highest on my team. The lower score on the working-conditions component reflected ███ team's dissatisfaction with the ███████ project we had been assigned— work team members regarded as unglamorous and that Meta's performance system tends to disfavor relative to work with more immediate impact—and was further affected by the month I was out on ███████ leave, during which I could not provide my team the reassurance I ordinarily did, and by intervening changes in the team's priorities. It did not reflect dissatisfaction with ███████.

7. Meta conducts the Pulse survey approximately twice per year. The most recent Pulse survey was conducted shortly before the May 20, 2026 reduction in force. I understand that Meta had the results of that most recent survey before it announced the layoff, although Meta has not shared my results from that survey with me.

Doc ID: a85c0b25825e1ad23a95e2a94e239f77829da654

8. I was never placed on a performance improvement plan, a coaching plan, or a written warning, and I was never the subject of any disciplinary action. Before the reduction in force, no one told me that my job was at risk.

9. On May 20, 2026, I received an email at approximately 4:00 a.m. notifying me that I had been selected for termination in Meta's May 2026 reduction in force. My employment is scheduled to be finalized on or about July 22, 2026.

10. I was ███ years old at the time I was selected. To my knowledge, I was the only ██████ in ██████████████ which included approximately ███ employees, with eight ███ who was selected for termination; other ████████ were retained or moved into other roles.

11. Even the day before the layoff notifications issued, I spoke with my manager, who told me that he had no knowledge of who would be affected and no visibility into the selections. On information and belief, I understand that the selection decisions were made at the vice-president level, without input from the managers who knew the work. The absence of any input from the managers familiar with our work suggested to me that the selections were driven by data or metrics from some other source, rather than by managerial judgment.

12. In approximately April 2026, I became aware that Meta had announced an expansion of employee-monitoring software, shortly before the monitoring was reported in the press. I was not asked to provide consent, and I understood there was no ability to opt out. Monitoring-related software was installed on Meta-issued computers, and on my Meta-issued computer a prompt appeared asking me to change my settings to permit screen and activity recording. Before the reduction in force, I did not change my settings to allow that recording. I understand the monitoring captured activity including keystrokes, screen

Doc ID: a85c0b25825e1ad23a95e2a94e239f77829da654

content, and mouse and activity data, and that Meta stated its purpose was to observe how employees worked in order to train Meta's artificial-intelligence tools.

13. During my employment, I regularly used my Meta-issued work computer to access personal health and insurance information, including through a Meta-provided benefits service called Accolade.

14. In approximately mid-January 2026, Meta announced that it was moving to a six-month performance-review cycle and that, beginning with the June 2026 cycle, performance reviews would be produced using an artificial-intelligence-assisted system that Meta refers to internally as "Checkpoint." Meta described the change as a way to make the performance-review process more efficient. I understand that the June 2026 review cycle was to be AI-based, although I have not seen any Checkpoint outputs for myself or my direct reports. Meta also expected ████████████████ to adopt and use its internal artificial-intelligence tools, and one member of my team was reassigned, before the layoff, into a group working on training Meta's artificial intelligence.

15. I was offered a severance and release agreement in connection with my termination. I have not signed it or any release of my claims.

16. My compensation at Meta included a substantial equity component in the form of restricted stock units ("RSUs"), and my most recent annual RSU grant was reduced as a result of my "Meets Most" rating. I hold unvested RSUs that I will forfeit if my employment is terminated. I will also forfeit a one-month "recharge" (long-service) leave for which I became eligible upon completing ██ years of service at Meta.

Doc ID: a85c0b25825e1ad23a95e2a94e239f77829da654

17. My family and I rely on the health insurance provided through my employment at Meta, and my active coverage will end when my employment terminates. Meta has offered to pay the premiums for continued coverage through COBRA for a period of time, but I understand that premium subsidy to be conditioned on my signing a separation agreement and release, which would require me to release my claims, including the claims at issue in this case. Without signing that release, I would be responsible for the full cost of any COBRA continuation coverage myself, and after any subsidized period ends I would be responsible for the full cost in any event. Continued coverage is especially important to me ████████████████████████████████████████████████████████████████

18. Being selected for termination less than a year after ██████████████████████ took ████ leave ████████ has been a significant source of stress for me and my family, including ████████████████████████████████████████████████████████████████████████ ████████████████████████████████

19. I make this declaration in support of Plaintiffs' request that the Court preserve the status quo and enjoin the finalization of the May 2026 reduction in force pending an independent audit, or, in the alternative, enjoin Meta from separating employees who took protected ████████ leave or who have ████████ pending such audit. If I am separated before that review can occur, I will lose my employer-sponsored health coverage, my unvested equity, and the right to continue in my position, none of which I believe a later award of money damages could fully restore.

Doc ID: a85c0b25825e1ad23a95e2a94e239f77829da654

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on __07/02/2026__, 2026, at ███████████, California.

Doe 13

Doe 13

DECLARATION OF Doe 13 ISO MOTION FOR PRELIMINARY INJUNCTION          Page 7