Andrea Mazingo, SBN 300824
**Lumen Law Center, P.C.**
8605 Santa Monica Blvd PMB 832031
West Hollywood, CA 90069
Telephone: (310) 269-6739
Email: andi@lumenlawcenter.com

Barbara E. Cowan, SBN 251942
**Workplace Advocates, P.C.**
9431 Haven Avenue, Suite 100
Rancho Cucamonga, CA 91730
Telephone: (909) 983-4102
Email: brandi@wpa.law

Rebecca Houlding *(pro hac vice pending)*
**Houlding Law PC**
431 Classon Avenue, Suite 1B
Brooklyn, NY 11238
Telephone: (646) 561-9119
Facsimile: (800) 345-4784
Email: rebecca@houldinglaw.com

**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

Does 1 through 26

                    Plaintiffs,

v.

META PLATFORMS, INC.,

                    Defendant.

Case No. _____

**DECLARATION OF Doe 14 Doe 14 IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

*[Filed concurrently with Plaintiffs' Notice of Motion and Motion for Preliminary Injunction; Memorandum of Points and Authorities; and additional supporting declarations]*

I Doe 14 declare as follows:

DECLARATION OF Doe 14 ISO MOTION FOR PRELIMINARY INJUNCTION          Page 1

Doc ID: 4ec370cc53ed1610bd3e2b152f8bc6cbe032835c

1. I am over the age of eighteen and a resident of ▉▉▉▉▉▉▉ New Jersey. I have personal knowledge of the matters stated in this declaration, except as to those matters stated on information and belief, and as to those matters I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2. I submit this declaration in support of Plaintiffs' Motion for a Preliminary Injunction. I am one of the Meta employees who was selected for termination in Meta's May 2026 reduction in force. I was on approved ▉▉▉▉▉ leave for ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ the time I was selected.

3. I began my employment with Meta Platforms, Inc. ("Meta") on ▉▉▉▉▉▉▉▉ My most recent position was ▉▉▉▉▉▉▉▉▉▉▉▉▉ in Meta's ▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉ on the team ▉▉▉▉▉▉▉▉▉▉▉ I worked from Meta's New York office ▉▉▉▉▉▉▉▉▉▉▉▉▉▉

4. Over my nearly ▉▉▉▉ years at Meta, my work spanned ▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉

5. My most recent manager was ▉▉▉▉▉▉▉, and my skip-level manager was ▉▉▉▉ ▉▉▉▉▉

Doc ID: 4ec370cc53ed1610bd3e2b152f8bc6cbe032835c

6.  My performance ratings were "Meets All" expectations or above for several years ████████ and I was promoted to th███ level in mid-2023. My ratings then declined to "Meets Most" for both 2024 and 2025—the two review cycles tied to the years in which ███████████took ██████leave.

7.  ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████ followed by an approved recharge leave. My intention for splitting my ████████leave in two parts was to minimize the impact on my team and the likelihood that my ███████leave would negatively impact my performance reviews.

8.  In early 2025, I then received the first "Meets Most" rating of my career, for year-end 2024. Subsequently, my first-half 2025 rating was a "leave of absence" rating.

9.  When I returned from leave, my team and scope had changed, knowledge transfer had occurred without me, and I was assigned a collection of products that had no established team or owner.

10. ████████████████████████████████████████ I was already under mounting pressure regarding my performance. I made the opposite choice during the year-end 2025 review cycle that concluded in early 2026: I did not tell my manager that ██████████████████because I hoped to avoid worsening my trajectory. I nonetheless received a "Meets Most" rating again for year-end 2025.

11. After the review cycle, I informed my manager in March 2026 that I would be taking ██████leave ████████████ I raised it during a one-on-one on the day news of the impending layoffs had leaked; when I told him, he responded that he "cannot promise

anything." I began approved ███████ leave on ███████████ which Meta approved through August 30, 2026. Even while on leave, I continued to work to complete my projects.

12. I was a heavy adopter of Meta's internal artificial-intelligence tools. By the end of 2025, I was in the top two percent of AI adopters at Meta, and I included a screenshot reflecting that in my performance review. Meta maintained an internal dashboard tracking employees' use of its AI tools, on which I consistently ranked high, and my code output was high. At the start of my 2026 ███████ leave, I was at the median among the approximately ████████████████████ in my skip-level manager's reporting chain. I used Meta's internal tools, including Claude Code and MetaMate, in my work.

13. During my employment, Meta deployed activity-monitoring software on its systems that, I understand, captured activity including keystrokes, screen content, mouse and activity data, browsing history, messaging, email, and voice, video, and location data. This program began while I was on leave.

14. On May 20, 2026, while I was on approved ███████ leave, I was notified by an automated email that I had been selected for termination in Meta's May 2026 reduction in force. My employment is scheduled to end on August 20, 2026—before my approved ███████ leave was set to end on August 30, 2026.

15. Approximately ███████████ reported to my manager, ████████████ To my knowledge, two of us were selected for termination ████████████████████████ ███████████

Doc ID: 4ec370cc53ed1610bd3e2b152f8bc6cbe032835c

16. I have been offered a severance and release agreement in connection with my termination, and I have not signed it or any release of my claims.

17. My compensation at Meta included a base salary of approximately ███████ per year and a substantial equity component in the form of restricted stock units ("RSUs"). My final vesting before separation is scheduled for August 15, 2026, and after my August 20, 2026 separation I will forfeit approximately ███ unvested RSUs scheduled to vest thereafter. I will also lose my 2026 bonus, which would otherwise be paid in 2027.

18. My family relies on the health insurance provided through my employment at Meta, ███████████████████████████████████████ and my active coverage will end when my employment terminates. Meta has offered to pay the premiums for continued coverage through COBRA for a period of time, but I understand that premium subsidy to be conditioned on my signing a separation agreement and release, which would require me to release my claims, including the claims at issue in this case. Without signing that release, I would be responsible for the full cost of any COBRA continuation coverage myself, and after any subsidized period ends I would be responsible for the full cost in any event.

19. Being selected for termination while I was on approved ███████ leave ██████████████ ████████ has been a significant source of stress and anxiety for me and my family, ███████████████████ The loss of my income and benefits will fall on a household that depends on them.

20. I make this declaration in support of Plaintiffs' request that the Court preserve the status quo and enjoin the finalization of the May 2026 reduction in force pending an

DECLARATION OF ███Doe 14███ ISO MOTION FOR PRELIMINARY INJUNCTION    Page 5

independent audit, or, in the alternative, enjoin Meta from separating employees who took protected ████████ leave, pending such audit. If I am separated before that review can occur, I will lose my employer-sponsored health coverage, my unvested equity, including equity scheduled to vest shortly after my separation date, and the protected ████leave I had remaining, none of which I believe a later award of money damages could fully restore.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ___2nd July___, 2026, at ████████New Jersey.

Doe 14

Doe 14

Doc ID: 4ec370cc53ed1610bd3e2b152f8bc6cbe032835c