Andrea Mazingo, SBN 300824
**Lumen Law Center, P.C.**
8605 Santa Monica Blvd PMB 832031
West Hollywood, CA 90069
Telephone: (310) 269-6739
Email: andi@lumenlawcenter.com

Barbara E. Cowan, SBN 251942
**Workplace Advocates, P.C.**
9431 Haven Avenue, Suite 100
Rancho Cucamonga, CA 91730
Telephone: (909) 983-4102
Email: brandi@wpa.law

Rebecca Houlding *(pro hac vice pending)*
**Houlding Law PC**
431 Classon Avenue, Suite 1B
Brooklyn, NY 11238
Telephone: (646) 561-9119
Email: rebecca@houldinglaw.com

**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION



Does 1 through 26

Plaintiffs,

v.

META PLATFORMS, INC.,

Defendant.

Case No. _____

**DECLARATION OF** Doe 15
Doe 15 **IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

*[Filed concurrently with Plaintiffs' Notice of Motion and Motion for Preliminary Injunction; Memorandum of Points and Authorities; and additional supporting declarations]*

Doc ID: e265b7fa624fa92d56d2551f207b2482ad941f16

I, Doe 15 ██████████, declare as follows:

1. I am over the age of eighteen and a resident of ████ Washington. I have personal knowledge of the matters stated in this declaration, except as to those matters stated on information and belief, and as to those matters I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2. I submit this declaration in support of Plaintiffs' Motion for a Preliminary Injunction. I am one of the Meta employees who was selected for termination in Meta's May 2026 reduction in force. In the months before I was selected, ████████████████████████ ███████████████████████████████████████ ███████████████████

3. I began my employment with Meta Platforms, Inc. ("Meta") on ██████████ My most recent position was ██████████████████████████████████ on the ██████████████████████████ team— ███████████████████ team—within the ████████████████████████████ I was hired at the █████ and was promoted to ██████████████ I worked at Meta's office in ████ Washington. My work involved █████████████████████████ ███████████████████████████████████████

4. I am the last remaining ██████ member of the ██████ which is responsible for approximately half of all Facebook ██████████ Over my ████ years at Meta, my contributions to ████████████████████████ drove revenue improvements

Doc ID: e265b7fa624fa92d56d2551f207b2482ad941f16

that I understand to be in the hundreds of millions of dollars. In March 2026, I received the ████████ award, an organization-wide recognition.

5. From September 2024 through approximately August 2025, my manager was ████████ From September 2025 until my selection, my manager was ████████ My skip-level manager was ████████ and my director was ████████

6. My performance ratings at Meta were consistently strong: "Exceeds Expectations" for 2023, "At or Above Expectations" for 2024, and a promotion to ██ in mid-2025. I was never placed on a performance improvement plan, never disciplined, never the subject of any investigation.

7. Throughout my employment, I worked far more than 1,250 hours in every twelve-month period, regularly working long hours, including nights. In the last two to three years of my employment, I took no more than approximately five days of paid time off, even though I had accrued the company-maximum balance of 31.5 days.

8. In or around October or November 2025, in a one-on-one meeting, I told ████████ how ████████████████ because of Meta's repeated layoffs. He brushed my concerns aside, telling me, in words or substance, that he had "seen a lot of it," that a "layoff can also be good for you," and that I should "try to chill."

9. Around the same time, my manager and team leadership discussed rolling back an internal system I worked on, called ██████ I objected that the rollback decision was not supported by adequate data or a valid hypothesis. My manager was upset by my objection and told me, in words or substance, to "fly under the radar," to accept leadership's decisions at face value, and not to question them.

10. In January 2026, while performance calibrations were ongoing, ██████—who until then had given me consistently positive feedback—became detached and avoided speaking with me. When I pressed him, he told me he was surprised by how calibrations were going in my case and that he would have to push my rating down. When I asked why, given my promotion just months earlier, he gave vague answers—that I should "stay under the radar" and not question leadership—and suggested my rating could suffer because, in words or substance ██████████████████████████████████████ When I pointed to my strong impact and peer feedback for the year, he told me, in words or substance, that "the decision was already made even before the self-review was submitted."

11. I raised my rating with my director, ████████ He asked me to send him my work documentation, reviewed it, agreed my work impact was solid, and said, in words or substance, that the rating issue might be "because ██████ is new to Meta and missing some context." Two days after I sent him my documentation, however, he reversed himself, telling me, in words or substance, "I suggest you talk to ██████ about this going forward, and I trust his judgment."

12. In early February 2026, ██████████ reprimanded me in a one-on-one for having spoken to ██████████ told me he now "had to commit" to the lower rating, and warned me to "stay under the radar" so that involvement by human resources could be avoided.

13. In early March 2026, I received a "Meets Most" rating—the first rating below expectations I had ever received at Meta. ██████ now gave me a different explanation: he said that because the team had ██████████ he had to apply "stack ranking" for "team health," and that lowering my rating was the only way another ██████ on the team could be

promoted from ███████ That ███████ had joined Meta approximately six months earlier. █████████ also cited a three-day period of approved paid time off I had taken in August 2025—before he became my manager—as a reason for the rating. He told me that because of my recent promotion I "should be safe" despite the rating, and that since I was ███████ I should not worry about the compensation impact.

14. In April 2026, ███████ told me in a one-on-one meeting that the recently promoted █████████████ was going on ███████ leave. During that conversation, he expressed regret about my performance rating. He told me: "Unfortunately I don't have a time machine, but I wish I did things differently." I understood him to mean that he had promoted ███████ to ██ prematurely, believing it would strengthen the team, and that because I was a recent promotion candidate, he had lowered my rating to offset that promotion.

15. By early 2026, I was experiencing ████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ███████████

16. On March 18, 2026, I was ████████████████████ ██████████████████████████████ ██████████████████████████████ ████████████████████

17. In late March 2026, I verbally disclosed ████████████████████████████ Over the course of several conversations, he dismissed what I told him, saying things to me, in words or substance, such as: "maybe if you sleep on it a couple of days"; "maybe meditate for five minutes"; "it's probably just in your mind"; "why don't you just take the weekend"; that I should try to "overcome weakness"; and that I should be grateful to Meta for good work and free food. At no point did ████████ or anyone else at Meta, ████████



████████████████████████████████████████ engage in any interactive process ████████████████

18. In mid-April 2026, ████████████████████████████

████████████████████████████████████████████ Meta's internal leave-application wiki instructs employees, as a first step, to give their manager a courtesy notification before submitting a leave application through Meta's leave tool, which is administered by Lincoln Financial.

19. When I gave ████████ that courtesy notification, he instantly became furious and spoke to me aggressively for the remainder of the meeting. He threatened me, in words or substance, as follows: (a) the team already had one person on ████████ leave and he could not "afford to lose another person to leave"; (b) because of my "Meets Most" rating, taking a leave would mean senior leadership "will definitely" terminate me or nominate me for the anticipated layoffs, and the company would view me as using protected leave to "work around" the rating; and (c) if I proceeded with the leave, he would, in words or substance, "share with the HRBP to initiate performance management to remove me from Meta."

Doc ID: e265b7fa624fa92d56d2551f207b2482ad941f16

20. ███████ then proposed what he called a "win-win": he acknowledged that my first-half 2026 performance had been "way above the bar," and said he would send an exceptionally positive performance letter about me to the HR business partner—but only if I agreed to immediately "drop the idea" of ███████ leave. When I asked him to put his statements in writing, he refused, saying he wanted to "avoid a paper trail"—but he immediately sent me the positive first-half performance letter as "proof," asking me to edit it before he sent it to the HR business partner. He instructed me not to discuss the matter with the HR business partner, my director, my teammates, or anyone else, told me I could "take a day off but don't officially mark it on the calendar," and again told me to "fly under the radar."

21. During this period, I told ███████ that I understood Washington law protects employees on ████████████ leave from being included in mass layoffs. He responded, in words or substance: "This is Meta—if the company wants something, they make it happen."

22. ███████ also told me that he himself was at risk: with only seven ███████ if I went on leave, the team could fall below the size at which Meta "flattens" managers to individual-contributor roles, and he said he could not attribute any performance impact to the ███████ on ███████ leave, so it would fall on "somebody who has no such ███████ responsibility."

23. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

24. As a result of ███████ threats, I never submitted my leave application, even though my ████████████████████████ my need for leave ████████████████



expose ██████████████████████████ and result in the retaliation ████████ had threatened.

25. On May 20, 2026, I was notified that I had been selected for termination in Meta's reduction in force. Of the ████████████ on my team, I was the only one selected. After the reduction in force, ████████ was in fact "flattened" from manager to an individual-contributor role—exactly the outcome he had told me he feared—and the remaining members of the team now report to a different manager.

26. Later on May 20, 2026, ████████ sent me a message on LinkedIn stating: "████ hope you are fine. Sorry the company's move is just 1 month before we can mark your great performance into the system. Best wishes to your next journey." He also voluntarily posted a positive LinkedIn recommendation for me referencing my ████████████ award. I have preserved screenshots of these messages.

27. Since my selection, I have learned that Meta has designated me as ineligible for rehire. I understand that a different Meta team sought to rehire me and that Meta did not permit that rehire to proceed.

28. I have been offered a severance and release agreement in connection with my termination, and I have not signed it or any release of my claims.

29. My compensation at Meta included a substantial equity component in the form of restricted stock units ("RSUs"), which I will forfeit if my employment is terminated, and my retirement contributions will cease as of my July 22, 2026 separation.

Doc ID: e265b7fa624fa92d56d2551f207b2482ad941f16

30. I and my family rely on the health insurance provided through my employment at Meta, and my active coverage will end when my employment terminates. Meta has offered to pay the premiums for continued coverage through COBRA for a period of time, but I understand that premium subsidy to be conditioned on my signing a separation agreement and release, which would require me to release my claims, including the claims at issue in this case. Without signing that release, I would be responsible for the full cost of any COBRA continuation coverage myself, and after any subsidized period ends I would be responsible for the full cost in any event. Continued coverage is especially important to me because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

31. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ My job search has been impaired: recruiters and employers ask whether I was selected in the May 20 layoff, and interest ends when I confirm that I was. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

32. The experience has taken a severe toll on my health and my family. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

33. I make this declaration in support of Plaintiffs' request that the Court preserve the status quo and enjoin the finalization of the May 2026 reduction in force pending an independent

Doc ID: e265b7fa624fa92d56d2551f207b2482ad941f16

audit, or, in the alternative, enjoin Meta from separating employees who sought or were deterred from taking protected ██████ eave, ████████████ pending such audit. If I am separated before that review can occur, I will lose my employer-sponsored health coverage ██████████████████████████-my unvested equity, and ██████████ ████████████████ none of which I believe a later award of money damages could fully restore.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ___2nd July___, 2026, at ████ Washington.





Doc ID: e265b7fa624fa92d56d2551f207b2482ad941f16