Andrea Mazingo, SBN 300824
**Lumen Law Center, P.C.**
8605 Santa Monica Blvd PMB 832031
West Hollywood, CA 90069
Telephone:(310) 269-6739
Email:andi@lumenlawcenter.com

Barbara E. Cowan, SBN 251942
**Workplace Advocates, P.C.**
9431 Haven Avenue, Suite 100
Rancho Cucamonga, CA 91730
Telephone:(909) 983-4102
Email:brandi@wpa.law

Rebecca Houlding (*pro hac vice* pending)
**Houlding Law PC**
431 Classon Avenue, Suite 1B
Brooklyn, NY 11238
Telephone: (646) 561-9119
Facsimile: (800) 345-4784
Email: rebecca@houldinglaw.com

**Attorneys for Plaintiffs**

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**



Does 1 through 26

Plaintiffs,

v.

Case No. _____

**DECLARATION OF** Doe 16 **N
SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION**

*[Filed concurrently with Plaintiffs' Notice of
Motion and Motion for Preliminary Injunction;
Memorandum of Points and Authorities; and
additional supporting declarations]*

---

DECLARATION OF Doe 16 ISO MOTION FOR PRELIMINARY INJUNCTION                    Page 1

META PLATFORMS, INC.,

Defendant.

I, Doe 16 declare as follows:

1. I am over the age of eighteen and a resident of ████ Washington. I have personal knowledge of the matters stated in this declaration, except as to those matters stated on information and belief, and as to those matters I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2. I submit this declaration in support of Plaintiffs' Motion for a Preliminary Injunction. I am one of the Meta employees who was selected for termination in Meta's May 2026 reduction in force. ████████████████████████████ and in the months before I was selected for termination, I had disclosed ████████ to Meta and ████████████ ████████.

3. I began working at Meta Platforms, Inc. ("Meta") as ████████████████ first from approximately September 2022 to September 2023, and again from approximately November 2024 until August 2025. On August 25, 2025 ████████████████████████ ████████████████████████████████████████████████ ████████████████ I physically worked from Meta's ████████████████████ Washington, ████████████.

4. In my role, I conducted ████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████

Doc ID: 7c6fe47b02ddd56451f3410f9d22fa416df599f6

5.  My manager was ▮▮▮▮▮▮▮▮▮, who was my only manager during my ▮▮▮▮▮▮ employment. My skip-level manager was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6.

7.  During my first months as a ▮▮▮▮▮▮ employee, I met the onboarding expectations my manager communicated to me, and I received positive informal feedback about my work. I was never placed on a performance improvement plan, coaching plan, or formal warning, and I was never the subject of any disciplinary action. Meta's own ▮▮▮▮▮▮ onboarding materials stated that it takes approximately six months for a new employee to become fully effective. My reassignment and my first performance rating occurred in late February and early March 2026, at or just before the end of that six-month period.

8.  On or about February 9, 2026, my manager asked me, for the first time, to create a strategic roadmap for ▮▮▮▮▮▮ I completed a roadmap and sent it to her shortly thereafter.

9.  On February 20, 2026, my manager told me that she was reassigning me from ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ against my wishes. During that same meeting, I disclosed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮

Doc ID: 7c6fe47b02ddd56451f3410f9d22fa416df599f6

10. I later learned that two of my teammates ██████████████████████████ who were affected by the same reassignment had each been asked by our manager whether they wanted to ████████ I was the only member of the team who was not asked, but rather required, to ████████ I told my manager that I did not want to move, and she told me that her decision was final.

11. ████████ o which I had been reassigned had little or no work available for me to perform. I raised this lack of work with my manager in each of our one-on-one meetings in March and April 2026. In our final one-on-one meeting, on or about April 30, 2026, she suggested moving me to yet another ████████

12. On or about March 3, 2026, in my first performance review as a ████████ employee, my manager gave me an unexpected rating of "Meets Most" expectations. She stated that I had "lagged in creating a strategic roadmap despite coaching," even though she had first asked me to create a roadmap on February 9, 2026, and I had completed it. During that meeting, ████████████████████████████████████████████ Even as she gave me that rating, my manager acknowledged that the quality of my research work was "excellent"; the concerns she raised related to the unwritten expectations I have described rather than to the substance of ████████

13. One of my teammates ████████ who holds the more senior ███ level, was also asked by our manager to create a strategic roadmap. He did not create one, and I understand that this was not raised as a concern in ███ performance review.

Doc ID: 7c6fe47b02ddd56451f3410f9d22fa416df599f6

14. When I asked my manager to provide expectations and feedback in writing, she told me that she viewed writing things down as "extreme." On other occasions during my employment, she made comments to me such as "this company isn't for everyone."

15. My "Meets Most" rating reduced my annual bonus; I received only a portion of my target bonus as a result of that rating.

16. On or about March 10, 2026, I met with an Employee Relations Business Partner, ███████ ████████ about my performance review. She encouraged me to submit a formal ███████ ████████████████

17. On or about March 30, 2026, I submitted a formal request ████████████████████ through Meta's ████████████████████████████████████████ ██████████████████████████████████████

18. My manager did not act on ████████████████████ for approximately five weeks. She approved it only in early May 2026, and only after Meta's human-resources personnel became involved. The approval covered a period of only approximately three months, through June 30, 2026, ████████████████████████████ and it included caveats that ████████████████████ ████████████████████████ ██████████████████████████████ A member of Meta's ████████████ team told me that the length of the delay was not typical.

19. On or about April 24, 2026, I was excluded from a ████████████████████████ ██████████ even though my other ████████████ teammates were included and ████████ ██████████████████████████ When I raised this exclusion, the explanation I

was given changed after I provided a document showing that ███████████████ ████████████████

20. On or about May 5, 2026, I submitted a written complaint to ██████████ and, separately, through Meta's internal reporting channel. In my complaint, I raised my concerns regarding █████ discrimination, my manager's █████████████████████████████ ███████ and retaliation.

21. This situation took, and continues to take, a significant toll on my health. ████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████During that period, ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████

22. On or about May 11, 2026—the week after I submitted my complaint—my manager provided me, for the first time in writing, with feedback stating that I was "trending below expectations." This written feedback contradicted what she had told me verbally in our prior one-on-one meetings. I asked her follow-up questions about the feedback on May 12, 2026, and she did not respond to the questions before I was notified of my termination.

23. On May 20, 2026, I was notified that I had been selected for termination in Meta's May 2026 reduction in force—approximately two weeks after I submitted my complaint. I was informed that my termination would be effective July 22, 2026.

Doc ID: 7c6fe47b02ddd56451f3410f9d22fa416df599f6

24. During my onboarding, I signed several agreements through Meta's electronic signature system, which I understand included an arbitration agreement and a class-action waiver. A true and correct copy of the Mutual Arbitration Agreement and class-action waiver I signed during my onboarding is attached as Exhibit A.

25. I have not signed the separation agreement or any release of claims that Meta has offered me in connection with my termination.

26. During my employment, Meta announced an expansion of employee-monitoring software, and in the following weeks monitoring-related software began appearing on my Meta-issued work device. I regularly used my Meta work systems and device for personal and sensitive matters, including ███████████████████████████████ ████████████████████████████████████████████ ██████ and accessing my personal email.

27. During my employment, my manager and I maintained a shared one-on-one document that included a standing section, updated each week, titled "AI Impact," in which I was expected to report how I had used Meta's internal artificial-intelligence tools in my work that week. I regularly reported using internal and third-party AI tools, including tools referred to as Metamate, Manus, and MyClaw, for tasks such as analysis, literature review, and drafting. I understood from my manager and from my team's leadership that adoption and use of these AI tools was an expectation of my role and a component of how my contributions were assessed.

28. My annual base salary at Meta was approximately ███████ when ████████████████ in 2025 and approximately ████████ in 2026. My compensation also included a target

Doc ID: 7c6fe47b02ddd56451f3410f9d22fa416df599f6

annual bonus of fifteen percent, which was reduced by my performance rating, and equity in the form of restricted stock units ("RSUs"). My new-hire equity grant was valued at approximately ███████████████ and I later received additional refresher units. I will forfeit my unvested RSUs if my employment is terminated.

29. My health insurance is provided through my employment at Meta. I am the primary earner in my household, and my spouse depends on my Meta-sponsored coverage. My active coverage will end when my employment terminates. Meta has offered to pay the premiums for continued coverage through COBRA for a period of time, but I understand that premium subsidy to be conditioned on my signing a separation agreement and release, which would require me to release my claims, including the claims at issue in this case. Without signing that release, I would be responsible for the full cost of any COBRA continuation coverage myself, and after any subsidized period ends I would be responsible for the full cost in any event.

30. I lost access to Meta's systems on May 20, 2026, when I was notified of my termination. The documentation I retain consists of materials I had lawfully saved before that date.

31. Beginning in approximately April 2026, when I came to believe that I was at risk of being laid off due to my manager's ███████████████████████████████ and prior hostility, I began applying for new positions. ████████████████████████████ is highly specialized, and comparable roles are rare. I have not yet received any interviews.

32. The loss of my position has disrupted my career and my family's plans. As the primary earner in my household, I am responsible for our household income and our health coverage, and my spouse and I have had to reconsider plans that depended on my continued

Doc ID: 7c6fe47b02ddd56451f3410f9d22fa416df599f6

employment, ███████████████████████████████████

████████████████████████████████

33. I make this declaration in support of Plaintiffs' request that the Court preserve the status quo and enjoin the finalization of the May 2026 reduction in force pending an independent audit, or, in the alternative, enjoin Meta from separating employees who ████████ ███████████████ or engaged in protected activity pending such audit. If I am separated before that review can occur, I will lose my employer-sponsored health coverage, my unvested equity, and the opportunity to perform my role free from the treatment I have described—none of which I believe a later award of money damages could fully restore.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed **Doe 16** 2026, at ██████ Washington.



Doe 16

_____
Doe 16

Doc ID: 7c6fe47b02ddd56451f3410f9d22fa416df599f6

# EXHIBIT A



**Attachment B**

**Mutual Arbitration Agreement**

  This Mutual Arbitration Agreement ("**Agreement**") is entered into between Meta Platforms, Inc. and its current or future parents, subsidiaries, affiliates, successors and assigns (collectively, "**Employer**" or "**Company**") and the employee named below ("**Employee**"). Employer and Employee may be collectively referred to herein as "Parties" or "we," and each may be referred to individually as a "Party."

CONFIDENTIAL



████████████████████████████████████

### Claims Not Covered by the Agreement

Notwithstanding the above, we agree that the following disputes and claims are not covered by this Agreement and shall therefore be resolved in any appropriate forum as required by the laws then in effect:

████████████████████████████████████

- claims for temporary or preliminary injunctive relief (including a temporary restraining order) in aid of arbitration or to maintain the status quo pending arbitration, in a court of competent jurisdiction in accordance with applicable law;

████████████████████████████████████

CONFIDENTIAL



CONFIDENTIAL

Meta_Lumen_01224



1 Meta Way, Menlo Park, CA 94025

CONFIDENTIAL

Meta_Lumen_01225







CONFIDENTIAL

Meta_Lumen_01226







Employee Signature

Employee Name (Please Print)

Meta Platforms, Inc.

1 Meta Way, Menlo Park, CA 94025

CONFIDENTIAL