Andrea Mazingo, SBN 300824
**Lumen Law Center, P.C.**
8605 Santa Monica Blvd PMB 832031
West Hollywood, CA 90069
Telephone:(310) 269-6739
Email: andi@lumenlawcenter.com

Barbara E. Cowan, SBN 251942
**Workplace Advocates, P.C.**
9431 Haven Avenue, Suite 100
Rancho Cucamonga, CA 91730
Telephone:(909) 983-4102
Email: brandi@wpa.law

Rebecca Houlding (*pro hac vice* pending)
**Houlding Law PC**
431 Classon Avenue, Suite 1B
Brooklyn, NY 11238
Telephone: (646) 561-9119
Facsimile: (800) 345-4784
Email: rebecca@houldinglaw.com

**Attorneys for Plaintiffs**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION



Plaintiffs,

v.

META PLATFORMS, INC.,

Case No. _____

**DECLARATION OF** Doe 17 **IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

*[Filed concurrently with Plaintiffs' Notice of Motion and Motion for Preliminary Injunction; Memorandum of Points and Authorities; and additional supporting declarations]*

---

DECLARATION OF Doe 17 ISO MOTION FOR PRELIMINARY INJUNCTION                                    Page 1

Doc ID: c5dc9ee5ba85699ef055776e5393c90daa9b7c7e

Defendant.

I, Doe 17, declare as follows:

1. I am over the age of eighteen and a resident of ▮▮▮▮▮Washington. I have personal knowledge of the matters stated in this declaration, except as to those matters stated on information and belief, and as to those matters I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2. I submit this declaration in support of Plaintiffs' Motion for a Preliminary Injunction. I am one of the Meta employees who was selected for termination in Meta's May 2026 reduction in force. I ▮▮▮▮▮▮▮▮ on approved ▮▮▮▮ leave when I was notified of my selection▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3. I began my employment with Meta Platforms, Inc. ("Meta") on ▮▮▮▮▮▮▮ as a ▮▮▮▮▮▮ I was promoted to the ▮▮ level in 2023. At the time of my selection, I worked in Meta's ▮▮▮▮▮ organization, and I physically worked from Meta's office in ▮▮▮▮ Washington.

4. In my role, I performed ▮▮▮▮▮▮▮▮ work supporting Meta's ▮▮▮▮▮ efforts.

5. At the time Meta selected me for the reduction-in-force, my manager was ▮▮▮▮▮ who had beco me my manager in approximately mid-February 2026. My prior manager was ▮▮▮▮, who left Meta in approximately April 2026. My skip-level manager was ▮▮▮▮▮▮▮▮▮▮▮▮▮

Doc ID: c5dc9ee5ba85699ef055776e5393c90daa9b7c7e

6.  My performance at Meta was strong. I received ratings of "Exceeds Expectations" in ██████ ████████ and a rating of "Meets All" expectations in 2025. I was never placed on a performance improvement plan, a coaching plan, or a written warning. In approximately March and April 2026, my manager was discussing a plan for my promotion to the ██████ level with me, and noted in our one-on-one notes that I was already demonstrating next-level behavior in certain areas.

7.

    My manager, my skip-level manager, and Meta's human-resources personnel were aware that this leave was related to ████████████.

8.  Immediately upon my return from that leave in late November 2025, I was assigned to a project, █████████████████████ By approximately March and April 2026, after working on the project, I concluded that the area was not promising, and I raised that concern with my manager.

9.  My manager told me to continue with the project and framed it as an opportunity for me to demonstrate next-level influence. She told me that my promotion case would come from recommending that Meta ██████████████████████████████████████ ████████████ after which I would move to other work and be promoted.

10. In February 2026, I told my manager and my skip-level manager, orally during a one-on-one meeting, that I planned to take ████████ leave from early May 2026 through November 2026. On March 6, 2026, I submitted my official leave request for ██████████

Doc ID: c5dc9ee5ba85699ef055776e5393c90daa9b7c7e

████████████████ leave, scheduled to run from May 4, 2026 through approximately mid-November 2026. I intended to take recharge leave following the ██████ leave.

11. Meta approved my leave from May 4 through June 13, 2026. The remainder of my leave was pending because Meta's leave administrator, Lincoln, required confirmation of ████ ████████ before approving the rest ████████████████████████████████████

12. On May 20, 2026, while I was on approved ██████ leave, I received notice that I had been selected for termination in Meta's May 2026 reduction in force. The notice stated that my role had been eliminated. ████████████████████████████████████ ████████████████████████████

13. The statement that my role had been eliminated was inconsistent with the promotion discussions my manager had been having with me shortly before.

14. My skip-level manager had approximately ████████ employees in her reporting line. Three of them were selected for termination in the May 2026 reduction in force: I, who was on ██████ leave; a male colleague who had begun ██████ leave in April 2026; and one other employee. Two of the three of us were on leave related ████████████████ ██████████

15. Both my manager and my skip-level manager told me that their manager had asked them whether they had any low performers on their teams.

16. I believe that my 2025 year-end performance rating, which was lower than my ratings in ████████████ was affected by the ████████████ leave I had taken.

Doc ID: c5dc9ee5ba85699ef055776e5393c90daa9b7c7e

17. During my employment, my team was strongly encouraged to use Meta's internal artificial-intelligence tools. I used internal AI tools, including a "second brain" and a tool referred to as Metamate, along with Claude and Analytics Agent, another internal AI tool. I was aware of an AI-usage dashboard, my usage was average pre-leave, and I understand that my usage would structurally drop during leave. I understand that my work product remains available to Meta after my departure.

18. During my employment, Meta increasingly treated the development and adoption of artificial-intelligence tools as a measure of ██████████ performance and contribution. ██████████ in my organization were expected not only to use Meta's internal AI tools but to build AI tooling—including Claude-based "skills," plugins, and frameworks—and to drive adoption of those tools across the organization. The degree of an employee's "AI and organizational impact" was treated as a factor in evaluating performance and in assessing readiness for promotion, including in the promotion discussions my manager was having with me. An employee's measured contribution on these criteria depended on continuous, active engagement with Meta's systems, which an employee on protected leave is not present to provide.

19. Shortly before my leave, Meta deployed activity-monitoring software on my work device, and I accepted a consent notification. I used my Meta work laptop to access personal ██████ information, including ████████████████████████████ ██████████████.

20. I was offered a severance and release agreement in connection with my termination. I have not signed it or any release of my claims.

Doc ID: c5dc9ee5ba85699ef055776e5393c90daa9b7c7e

21. My compensation at Meta included equity in the form of restricted stock units ("RSUs"). I hold unvested RSUs that I will forfeit if my employment is terminated. I understand I will also forfeit a bonus in September 2026, that I would have been entitled to despite being on ██████████ leave.

22. I and my family rely on the health insurance provided through my employment at Meta, and my active coverage will end when my employment terminates. Meta has offered to pay the premiums for continued coverage through COBRA for a period of time, but I understand that premium subsidy to be conditioned on my signing a separation agreement and release, which would require me to release my claims, including the claims at issue in this case. Without signing that release, I would be responsible for the full cost of any COBRA continuation coverage myself, and after any subsidized period ends I would be responsible for the full cost in any event. The loss of coverage is especially serious for me because ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

23. In addition, subsequent to being notified of the intent to terminate my employment, I have ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Doc ID: c5dc9ee5ba85699ef055776e5393c90daa9b7c7e

24. I had expected to take my approved leave, ███████████████████████████ and return to work in November 2026. Being notified of my termination while on ███████ leave █████████████████████ has caused me significant anxiety and distress ████████████████████████████████████████

25. I make this declaration in support of Plaintiffs' request that the Court preserve the status quo and enjoin the finalization of the May 2026 reduction in force pending an independent audit, or, in the alternative, enjoin Meta from separating employees who ████████████████ who took protected leave pending such audit. If I am separated before that review can occur, I will lose my employer-sponsored health coverage ████████████████████ ███████████ my unvested equity, and the right to be reinstated to my position at the conclusion of my leave, none of which I believe a later award of money damages could fully restore.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ___06/30_____, 2026, at ████████ Washington.

Doe 17

_____
Doe 17

Doc ID: c5dc9ee5ba85699ef055776e5393c90daa9b7c7e