Andrea Mazingo, SBN 300824
**Lumen Law Center, P.C.**
8605 Santa Monica Blvd PMB 832031
West Hollywood, CA 90069
Telephone:(310) 269-6739
Email:andi@lumenlawcenter.com

Barbara E. Cowan, SBN 251942
**Workplace Advocates, P.C.**
9431 Haven Avenue, Suite 100
Rancho Cucamonga, CA 91730
Telephone:(909) 983-4102
Email:brandi@wpa.law

Rebecca Houlding (*pro hac vice* pending)
**Houlding Law PC**
431 Classon Avenue, Suite 1B
Brooklyn, NY 11238
Telephone: (646) 561-9119
Facsimile: (800) 345-4784
Email: rebecca@houldinglaw.com

**Attorneys for Plaintiffs**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| Does 1 through 26<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. _____<br><br>**DECLARATION OF** Doe 20 Doe 20 **IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>*[Filed concurrently with Plaintiffs' Notice of Motion and Motion for Preliminary Injunction; Memorandum of Points and Authorities; and additional supporting declarations]* |

I Doe 20 declare as follows:

1. I am over the age of eighteen and a resident of _____ Washington. I have personal

---

DECLARATION OF Doe 20 ISO MOTION FOR PRELIMINARY INJUNCTION                    Page 1

Doc ID: bf7100f0f699d67136d09bcf06be7524a07cab76

knowledge of the matters stated in this declaration, except as to those matters stated on information and belief, and as to those matters I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2. I submit this declaration in support of Plaintiffs' Motion for a Preliminary Injunction. I am one of the Meta employees who was selected for termination in Meta's May 2026 reduction in force. I was on approved medical leave when I was notified of my selection.

3. I began my employment with Meta Platforms, Inc. ("Meta") on ███████████, as a ████████████████████████ I worked in Meta's ████████████ organization, where I led ████ work for ██████████████████████████████ ████████████████████ In early 2026, in a reorganization, the name of our team changed to ████████████████████████████ I worked from Meta's office ████████ Washington.

4. My manager was ████████████ and my skip-level manager was ████████████

5. My performance at Meta was strong. I received an "Exceeds Expectations" rating for 2025. I was never placed on a performance improvement plan, a coaching plan, or a written warning, and before March 2026 I had not been advised that my employment was at risk or that there were significant concerns about my performance.

6. In March 2026, I ████████████████████████████████████ ██████████████████████████████

7. No later than March 2026, and possibly earlier, I used Metamate to search ████████ ████████████████████████

8. On March 6, 2026, during a ████████ meeting, my skip-level manager gave me critical feedback that focused on her statements that she did not understand me or my

communication style, rather than on the substance of my work. At that meeting, my skip-level manager appeared not to have reviewed the materials that had been prepared for the ███████████ The discussion became tense, and near its end she asked me to stop responding. Later the same day, my manager gave me additional critical feedback, including that leadership viewed me as "defensive." This feedback was a significant departure from my prior performance history.

9. The communication concerns were new, subjective and inconsistent with my prior feedback history. The concerns emerged immediately before my leave.

10. In the weeks that followed, my skip-level manager criticized me for proceeding with a ████████ without her approval. I had requested her approval, received no response, and then obtained my manager's approval before proceeding, and I provided documentation showing this. After I provided that documentation, my skip-level manager told me, in substance, that this meant I no longer needed her help. Concerns about my "communication" continued to be raised even after I provided that documentation and resolved the underlying issues. My skip-level manager's criticism was inconsistent with the documented facts and my prior performance history. These interactions contributed significantly to ██████████████

11. I submitted a request for ████ leave on March 25, 2026, and I began approved ██████ leave on March 26, 2026, for ███████████████████████████████

12. On the morning my leave began, March 26, 2026, I received a notification that my manager had updated our one-on-one document with written feedback about the March 6 ███ ███ and my subsequent interactions with my skip-level manager. To my knowledge, those concerns had not previously been documented in writing. The written documentation appeared after I had submitted my leave request and after the underlying work issues had been resolved.

13. My ████ leave was approved, and it was subsequently extended and approved through August 11, 2026, so that I remained continuously on approved ████ leave. On May 20, 2026, while I was on that approved leave, I received notice that I had been selected for termination in Meta's May 2026 reduction in force.

14. My need for ████ leave, and my request to extend that leave, were documented with and known to Meta's leave administration and human-resources personnel.

15. On my immediate team under my manager, which had approximately ██ people, about half were selected for termination in the May 2026 reduction in force, including me and ██ other employee who was also on ████ leave.

16. Meta deployed activity-monitoring software on my Meta-issued devices, which I understand captured activity including keystrokes, screen content, browsing, messaging, and email.

17. I was offered a severance and release agreement in connection with my termination. I have not signed it or any release of my claims.

18. My compensation at Meta included equity in the form of restricted stock units ("RSUs"). I hold unvested RSUs that I will forfeit if my employment is terminated.

19. I and my family rely on the health insurance provided through my employment at Meta,

---

Doc ID: bf7100f0f699d67136d09bcf06be7524a07cab76

and ██████████████████████████████████ My active coverage will end when my employment terminates. Meta has offered to pay the premiums for continued coverage through COBRA for a period of time, but I understand that premium subsidy to be conditioned on my signing a separation agreement and release, which would require me to release my claims, including the claims at issue in this case. Without signing that release, I would be responsible for the full cost of any COBRA continuation coverage myself, and after any subsidized period ends I would be responsible for the full cost in any event. Continued coverage is important to me because ████████████████████████ ████████████████████████████████████████████████████ ██████████

20. Being selected for termination while I was on a ██████ leave that I had taken ████████ has compounded the ██████████████████████████

21. I make this declaration in support of Plaintiffs' request that the Court preserve the status quo and enjoin the finalization of the May 2026 reduction in force pending an independent audit, or, in the alternative, enjoin Meta from separating employees who took protected leave or requested a ██████████████ pending such audit. If I am separated before that review can occur, I will lose my employer-sponsored health coverage ████████ ██████████████ my unvested equity, and the right to return to my position at the conclusion of my leave, none of which I believe a later award of money damages could fully restore.

Doc ID: bf7100f0f699d67136d09bcf06be7524a07cab76

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on  ___July 1_____, 2026, at _____ Washington.

Doe 20

Doe 20

Doc ID: bf7100f0f699d67136d09bcf06be7524a07cab76