Andrea Mazingo, SBN 300824
Lumen Law Center, P.C.
8605 Santa Monica Blvd PMB 832031
West Hollywood, CA 90069
Telephone: (310) 269-6739
Email: andi@lumenlawcenter.com

Barbara E. Cowan, SBN 251942
Workplace Advocates, P.C.
9431 Haven Avenue, Suite 100
Rancho Cucamonga, CA 91730
Telephone: (909) 983-4102
Email: brandi@wpa.law

Rebecca Houlding (pro hac vice pending)
Houlding Law PC
431 Classon Avenue, Suite 1B
Brooklyn, NY 11238
Telephone: (646) 561-9119
Facsimile: (800) 345-4784
Email: rebecca@houldinglaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| **Does 1 through 26**<br><br>          Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>          Defendant. | Case No. _____<br><br>**DECLARATION OF Doe 21 IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>*[Filed concurrently with Plaintiffs' Notice of Motion and Motion for Preliminary Injunction; Memorandum of Points and Authorities; and additional supporting declarations]* |

I, Doe 21 declare as follows:

1.  I am over the age of eighteen and a resident of ▮▮▮▮▮▮ California. I have

    personal knowledge of the matters stated in this declaration, except as to those matters

DECLARATION OF Doe 21 ISO MOTION FOR PRELIMINARY INJUNCTION                Page 1

stated on information and belief, and as to those matters I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2. I submit this declaration in support of Plaintiffs' Motion for a Preliminary Injunction. I am one of the Meta employees who was selected for termination in Meta's May 2026 reduction in force. At the time I was selected, I was on continuous, approved leave ███████████████████████████████████

3. I began my employment with Meta Platforms, Inc. ("Meta") on ██████ 2019. My most recent position was ████████████████ in Meta's ████████████ organization, where I █████████████████████████████████████████████ ███████████████████████████ I worked remotely ████████████ California and from Meta's ██████████ office.

4. My most recent manager was ██████████, and my skip-level manager was ██████████ ██████████

5. My performance at Meta was strong throughout my employment. I joined as a ████████ ████████ was advanced early to the ███ level, got "Redefines Expectation" and promoted to ███ in H2 2021. I have stayed ███ and my performance ratings have consistently been "Exceeds Expectations" since then, including for 2024. I was never placed on a performance improvement plan, a coaching plan, or a written warning, and I was never the subject of any disciplinary action.

6. I was a recognized contributor across my organization. I won company-wide or organization-wide hackathons each year, and was a finalist who presented ideas to senior Meta leaders; one of my hackathon ideas, ██████████████████ became a team project that Meta publicly announced in June 2026. I served as the ████████████████████ for

Doc ID: 1b69632d6f0a54212d198150ec1047f8fbe40c90

my organization, where I organized a ███████████████ for more than two years, and I mentored many ██████████████████████████████ in 2025. I also participated and led my team in the company-wide fixathons in H1 and H2 2025, placed ███ in my organization as well as placed ███ company-wide for both, which wins were recognized by company Vice Presidents and organizational leaders in posts.

7. I informed my manager and my skip-level manager of ███████ in approximately September 2025, and ███████████████ among my team.

8. Beginning in the second half of 2025, after my ███████ was known, projects that I had originated or had been tech-leading were reassigned to other ███████ and/or I was not given recognition for my contributions. For example, a project to ███████████████ ███████████ which I had tech-led since 2024, had been reassigned to another ███████ on my team, ███████ after my ███████ was known, although that project launched with significant measured gains, my contributions to it were not reflected in my performance review. In December 2025, a second project that I had originated and driven was given to ███████ on another team, ███████ To my knowledge, neither of those ███████████████████████.

9. For the year-end 2025 review cycle—by which point I had informed my managers and team of my ███████—I received a rating of "Meets Most," the first such rating of my career. My manager informed me that high productivity does not link to a good rating – it is impact based. However, my projects were having a big impact, ███████████████ ███████ and I had many solid company-wide awards. I strongly disagreed with my "Meets Most" ratings, and many of my coworkers were surprised as well. I understand that Meta applies a forced-distribution element to its performance ratings, under which



DECLARATION OF Doe 21 ISO MOTION FOR PRELIMINARY INJUNCTION                    Page 3

some employees receive a rating of "Meets Most" or below regardless of their actual performance.

10. During my ▮▮▮▮▮▮ my direct manager made comments to me to focus on ▮▮▮▮▮ ▮▮▮▮ and not worry about performance, but my rating during ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ appeared to be in preparation to lay me off.

11. Prior to my ▮▮▮▮▮ leave, I had taken occasional sick days and PTO, during which a manager on a sister team (who participated in my 2025 performance review) and a senior ▮▮▮▮▮ on another sister team, pinged me for extra help and work while I was marked as Out Of Office. Even though I was out, I worked to respond to their requests. Although at the time, they sent "#thanks" (an internal recognition method), they later said I was not responding quickly enough, noting it as a "communication issue" in my performance review.

12. My leave spanned the reduction in force and was scheduled to continue well beyond it. I began approved ▮▮▮▮▮▮▮ or ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ also had an approved "recharge" (long-service) leave scheduled from July 6 through August 4, 2026, and I had substantial leave balances remaining—approximately eighty-seven days of ▮▮▮▮ leave and more than thirty days of accrued paid time off. Taking these together, my approved and available time off would have continued until approximately ▮▮▮▮▮▮▮ My doctor has added another two weeks of leave, from ▮▮▮▮▮▮▮▮▮

Doc ID: 1b69632d6f0a54212d198150ec1047f8fbe40c90



14. On March 14, 2026, news of Meta's intended layoff was leaked. Instead of ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ I was working through a long layoff preparation list provided by other Meta employees. On ▮▮▮▮▮▮▮▮▮▮▮

15. Before my leave, Meta expected employees, including me, to use and train its internal artificial-intelligence tools, and the expectation intensified in the period just before I went on leave. I used Meta's internal tools, including "devmate" (which uses Claude Code) and Metamate, in my work.

16. During my employment, Meta deployed activity-monitoring software on its systems that, I understand, captured activity including keystrokes, screen content, mouse and activity data, browsing history, messaging, email, and voice, video, and location data. This software was applied to my devices and, upon information and belief, continued to run during my leave, even though I was out of the office and had not consented to it.

DECLARATION OF Doe 21 ISO MOTION FOR PRELIMINARY INJUNCTION          Page 5

Doc ID: 1b69632d6f0a54212d198150ec1047f8fbe40c90

17. On May 20, 2026, while I was on approved leave, I was notified by an email from "Meta Leadership" that I had been selected for termination in Meta's May 2026 reduction in force. I was awake at 4 a.m. when I received the email. I lost access to Meta's systems within about an hour of the notification. My employment is scheduled to end on July 22, 2026.

18. My immediate team had approximately ███████ members. ███ teams report to my skip-level manager, comprised of ██ people. To my knowledge, only two of us were selected for termination—me and a colleague who ████████████████ and no one else in a team directly reporting to my skip-level manager was selected, to the best of my knowledge.

19. I have been offered a severance and release agreement in connection with my termination, and I have not signed it or any release of my claims.

20. My compensation at Meta included a substantial equity component in the form of restricted stock units ("RSUs"). As of June 26, 2026, I held ██ unvested RSUs valued at approximately █████ based on Meta's share price as of that date, all of which I will forfeit if my employment is terminated. The next vesting event is scheduled for August 15, 2026—after my July 22, 2026 separation date—and represents approximately ██ shares valued at approximately █████ with further vesting events scheduled in November 2026 and quarterly thereafter. I will also forfeit the substantial leave balances and the approved "recharge" leave described above.

21. ████████ rely on the health insurance provided through my employment at Meta, and my active coverage will end when my employment terminates. Meta has offered to pay the premiums for continued coverage through COBRA for a period of time, but I

Doc ID: 1b69632d6f0a54212d198150ec1047f8fbe40c90

understand that premium subsidy to be conditioned on my signing a separation agreement and release, which would require me to release my claims, including the claims at issue in this case. Without signing that release, I would be responsible for the full cost of any COBRA continuation coverage myself, and after any subsidized period ends I would be responsible for the full cost in any event. Continued coverage is especially important to me because ███████████████████████████████████████████████████████████

22. Being selected for termination while I was on approved leave ████████████ ████████████████████████████ has been a significant source of stress for me and my family. ████████████████████████████████████████████████████

23. I make this declaration in support of Plaintiffs' request that the Court preserve the status quo and enjoin the finalization of the May 2026 reduction in force pending an independent audit, or, in the alternative, enjoin Meta from separating employees who took protected ████████████████ leave, pending such audit. If I am separated before that review can occur, I will lose my employer-sponsored health coverage ██████████████████████████████ my unvested equity, and the substantial protected leave I had remaining, none of which I believe a later award of money damages could fully restore.

Doc ID: 1b69632d6f0a54212d198150ec1047f8fbe40c90

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on __July 2nd____, 2026, at ████████ California.

Doe 21

Doe 21

_____

Doc ID: 1b69632d6f0a54212d198150ec1047f8fbe40c90