Andrea Mazingo, SBN 300824
**Lumen Law Center, P.C.**
8605 Santa Monica Blvd PMB 832031
West Hollywood, CA 90069
Telephone:(310) 269-6739
Email:andi@lumenlawcenter.com

Barbara E. Cowan, SBN 251942
**Workplace Advocates, P.C.**
9431 Haven Avenue, Suite 100
Rancho Cucamonga, CA 91730
Telephone:(909) 983-4102
Email:brandi@wpa.law

Rebecca Houlding (*pro hac vice* pending)
**Houlding Law PC**
431 Classon Avenue, Suite 1B
Brooklyn, NY 11238
Telephone: (646) 561-9119
Facsimile: (800) 345-4784
Email: rebecca@houldinglaw.com

**Attorneys for Plaintiffs**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION



Does 1 through 26

Plaintiffs,

v.

Case No. _____

**DECLARATION OF** Doe 24 **IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

*[Filed concurrently with Plaintiffs' Notice of Motion and Motion for Preliminary Injunction; Memorandum of Points and Authorities; and additional supporting declarations]*

DECLARATION OF Doe 24 SO MOTION FOR PRELIMINARY INJUNCTION                    Page 1

Doc ID: e8c0c86e2868b00acf98b9d534534d64f16e6efb

META PLATFORMS, INC.,

|                                   Defendant.

I, **Doe 24** declare as follows:

1. I am over the age of eighteen and a resident of ████ California. I have personal knowledge of the matters stated in this declaration, except as to those matters stated on information and belief, and as to those matters I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2. I submit this declaration in support of Plaintiffs' Motion for a Preliminary Injunction. I am one of the Meta employees who was selected for termination in Meta's May 2026 reduction in force. At the time I was selected, I was on approved ████ leave that I had taken on ████████████████.

3. I began my employment with Meta Platforms, Inc. ("Meta") on ████ 2017. I am a ████████████████ and I served as a ████████████████ ████████████████ I originally worked from Meta's offices in ████ California, and in recent years I have worked ████ ████████ California.

4. Over the course of nearly nine years at Meta, I consistently met or exceeded the expectations of my role, and I was promoted twice—████████████████ ████████████ My performance reviews over the years included ratings of "Exceeds Expectations" and "Greatly Exceeds Expectations," and my two most recent ratings before my year-end 2025 review were "Consistently Meets Expectations" for year-end 2024 and "At or Above Expectations" at mid-year 2025. I was never placed on a performance improvement plan, a coaching plan, or a written warning, and I was never the subject of

Doc ID: e8c0c86e2868b00acf98b9d534534d64f16e6efb

any disciplinary action.

5. In early 2026, I received my year-end 2025 performance review with a rating of "Meets Most"—the first such rating in my nearly nine years at Meta. The manager who conducted my review, ███████ had joined the team in ███████████ and left the team in December ██████ before a team reorganization in January 2026. My team had recently been reorganized, and the manager who authored my year-end review moved off the team shortly afterward, so during the review-dispute period He was thus unfamiliar with work that I did at the beginning and end of 2025. Most of the negative commentary in this disputed review centered on those time periods. The review's narrative was positive as to the substance of my work, and the rating rested on a single evaluation area, in which it cited "wrong prioritization" and a "lack of technical rigor." I believe the factual assertions underlying that criticism, including a performance metric cited in the review, are inaccurate, and I documented why in a written correction request.

6. I had received no negative feedback from my colleagues or partners in my peer reviews, which were positive. It is my understanding that Meta applies a forced-distribution element to its performance ratings, under which a portion of the employees in each organization receive a rating of "Meets Most" or below, and I understand that this element can result in a strong performer receiving such a rating to satisfy the distribution.

7. I disputed my year-end 2025 review through Meta's human-resources process, including by submitting a written response identifying specific factual inaccuracies in the review. My skip-level manager acknowledged that at least one of the corrections I identified was warranted and indicated he was willing to update the review for accuracy if it was validated, but told me that the rating itself could not be changed once it had been locked except in

rare circumstances such as a policy violation. I raised in writing that the "Meets Most" rating—based on what I believed was inaccurate information—placed me at heightened risk in the anticipated reduction in force, and I asked whether I would have received that rating had the corrected facts been before the calibration. Meta's employee-relations process ultimately concluded that there had been no policy violation and, although it referred the asserted inaccuracies to management for correction, management did not correct them or engage with me further.

8.  In the weeks after I received this review,  begin leave.

9.  I obtained approval for my █████ leave through Meta's leave administrator. On or about ████████ I informed my skip-level manager and Meta's human-resources personnel of █████████ leave. I began my █████ leave on or about ████████ ████ My leave was initially approved through █████████ and was then extended and approved through ████████████

10. I had been employed at Meta for approximately nine years and worked on a full-time basis throughout my employment. I understand that I was eligible for job-protected ████ leave

11. In or about ██████████ while I was on approved █████ leave, I was notified that I had been selected for termination in Meta's May 2026 reduction in force.  A week after

Doc ID: e8c0c86e2868b00acf98b9d534534d64f16e6efb

notification that I was selected for termination, my approved leave was shortened to end on May 19, 2026, rather than on ███████ as initially approved. ███████

████████████████████████████████████████████

████████████████████████████

12. Based on a schedule of affected employees included with my separation agreement, I was the only individual-contributor ███████ at the ███ level who was selected for termination in my organization; the other affected employees at the ███ level and above were managers. After a reorganization had merged my team into a larger group of approximately ███████ ███████ I believe I was the only member of that group who was selected.

13. In the period before my leave, Meta expected ███████ including me, to adopt its internal artificial-intelligence tools and to develop projects that automated aspects of our work and trained AI on our workflows. I used internal AI tools, including a tool referred to as Metamate, in my work. I understand that my work product remains available to Meta after my departure.

14. When I was selected for termination, my access to Meta's systems was cut off, and I returned my Meta-issued devices.

15. I have not signed any separation agreement or release of claims.

16. My compensation at Meta included a base salary of approximately ███████ per year and a substantial equity component in the form of restricted stock units ("RSUs"). I hold unvested RSUs valued at approximately ███████ including approximately ███████ in RSUs scheduled to vest later in 2026—on August 15, 2026 and November 15, 2026—all of which I will forfeit if my employment is terminated.

17. I and my family rely on the health insurance provided through my employment at Meta,

 

and my active coverage will end when my employment terminates. Meta has offered to pay the premiums for continued coverage through COBRA for a period of time, but I understand that premium subsidy to be conditioned on my signing a separation agreement and release, which would require me to release my claims, including the claims at issue in this case. Without signing that release, I would be responsible for the full cost of any COBRA continuation coverage myself, and after any subsidized period ends I would be responsible for the full cost in any event. Continued coverage is especially important to me because ███████████████████████████████████

18. Being selected for termination while I am on ██████████████████████████████ has been a significant additional source of stress for me and my family.

19. I make this declaration in support of Plaintiffs' request that the Court preserve the status quo and enjoin the finalization of the May 2026 reduction in force pending an independent audit, or, in the alternative, enjoin Meta from separating employees who took protected ██████ leave or who disputed a performance rating or otherwise engaged in protected activity, pending such audit. If I am separated before that review can occur, I will lose my employer-sponsored health coverage-███████████████████████████my unvested equity, and the opportunity to have my performance rating and my selection reviewed free of the inaccuracies and the treatment I have described, none of which I believe a later award of money damages could fully restore.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ___07/12/2026___, 2026, at ████████ California.

Doc ID: e8c0c86e2868b00acf98b9d534534d64f16e6efb

Doe 24

Doe 24

Doc ID: e8c0c86e2868b00acf98b9d534534d64f16e6efb