Andrea Mazingo, SBN 300824
**Lumen Law Center, P.C.**
8605 Santa Monica Blvd PMB 832031
West Hollywood, CA 90069
Telephone:(310) 269-6739
Email:andi@lumenlawcenter.com

Barbara E. Cowan, SBN 251942
**Workplace Advocates, P.C.**
9431 Haven Avenue, Suite 100
Rancho Cucamonga, CA 91730
Telephone:(909) 983-4102
Email:brandi@wpa.law

Rebecca Houlding (*pro hac vice* pending)
**Houlding Law PC**
431 Classon Avenue, Suite 1B
Brooklyn, NY 11238
Telephone: (646) 561-9119
Facsimile: (800) 345-4784
Email: rebecca@houldinglaw.com

**Attorneys for Plaintiffs**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION



Does 1 through 26,

Plaintiffs,

v.

META PLATFORMS, INC.,

Case No. _____

**DECLARATION OF** ▮▮▮▮
Doe 12 ▮▮▮▮ **IN**
**SUPPORT OF PLAINTIFFS'**
**MOTION FOR PRELIMINARY**
**INJUNCTION**

*[Filed concurrently with Plaintiffs' Notice
of Motion and Motion for Preliminary
Injunction; Memorandum of Points and
Authorities; and additional supporting
declarations]*

Defendant.

I, ███Doe 12███, declare as follows:

1. I am over the age of eighteen and a resident of ████, New York. I have personal knowledge of the matters stated in this declaration, except as to those matters stated on information and belief, and as to those matters I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2. I submit this declaration in support of Plaintiffs' Motion for a Preliminary Injunction. I am one of the Meta employees who was selected for termination in Meta's May 2026 reduction in force. I took protected ████████ leave during the period preceding that reduction in force, and I was on approved ████ leave when Meta notified me of my selection for termination, with approximately two months of that leave then remaining.

3. I began my employment with Meta Platforms, Inc. ("Meta") on ████, 2025, as a ████ ████████ at the ██ (manager) level on ████████ team. I physically worked from Meta's office located ████████ ████. I am a ████.

4. In my role, I managed a team of six ████████ responsible for ████████ — that is, ensuring that ████████ apps and websites in Meta's ████████, while ████████ ████. A significant part of my role was supporting the members of my team, including providing career feedback and supporting them through the promotion process.

---

Doc ID: 302b5ac1a0f17e242f36c9fdf342b6a8d0e8e6dc

5.  Before joining Meta, I had spent approximately eight and a half years at my prior employer, where I held a director-level position. I accepted the manager-level role at Meta with the understanding, conveyed during recruiting, that I would have the opportunity to earn a promotion and to grow my team by hiring additional ███████████

6.  My direct manager was ██████████, a Senior Manager of ██████████, until approximately ████ 2026, when—while I was on leave—my reporting line was changed to ██████. My skip-level manager was ██████████ until approximately one week before my leave began, when it changed to ██████████.

7.  Throughout my employment, my performance was rated as consistently meeting expectations. I was never placed on a performance improvement plan, coaching plan, or written warning, and I was never the subject of any disciplinary action or investigation.

8.  I was ██████████ during my employment at Meta. In approximately October 2025, I notified my manager of ██████████ verbally. I also disclosed ██████████ to Meta through Meta's leave portal. My ██████████ was also widely known among my colleagues. I attended an in-person roadmap planning meeting at Meta's ██████████ office while I was ██████████, and my ██████████ team traveled to ██████ for a planning session at which ██████████ was also apparent.

9.  Under Meta's policy, I was permitted to begin ██████████ ██████████. My manager encouraged me not to begin my leave until after the year-end 2025 performance review cycle, which took place in January 2026. As a result, although I was eligible to begin my leave on approximately ██████████, I took only two of the four weeks available to me and did not begin my leave until ██████, 2026.

Doc ID: 302b5ac1a0f17e242f36c9fdf342b6a8d0e8e6dc

10. Because of that pressure, during the week before my leave began I worked extremely long hours—including until approximately 3:00 a.m.—to finish performance reviews following repeated rounds of feedback, performance sessions, and required rewrites, all while ███████. I was also asked to prepare documents so that my work could be covered during my leave.

11. I ████████████████, 2026. My approved ██████ leave was scheduled to continue through ██████, 2026, which I understood to be my expected last day of leave. I was still on that approved leave in May 2026.

12. While I was on leave, Meta changed my reporting structure without any advance notice to me and without asking for my input. I was placed—or "layered"—under ██████, who had previously been my peer. Before this change, ██████ and I held parallel ██████ Manager positions with similar scope; he had less work experience and substantially less managerial experience than I did. I learned of this change to the team structure from a post on Meta's internal Workplace site. I was not consulted, and I received no advance warning.

13. Also while I was on leave, I was excluded from a mid-year bonus for which I understood I remained fully eligible notwithstanding my leave.

14. I was notified by email, in a letter dated May 20, 2026 (the "Notification Letter"), that I had been selected for termination in Meta's May 2026 reduction in force. A true and correct copy of the Notification Letter is attached as Exhibit A. The Notification Letter states that my employment is scheduled to end on August 20, 2026 (my "Intended Termination Date"), and that the period from the date of the notice through that date is my notice period. In connection with my separation, Meta also presented me with a Separation Agreement

---

Doc ID: 302b5ac1a0f17e242f36c9fdf342b6a8d0e8e6dc

and Release (the "Separation Agreement"), a true and correct copy of which is attached as Exhibit B.

15. My team's organization, ███████████████, was eliminated in the reduction in force. My scope of work was not eliminated, however; it was reassigned to ██████, the male former peer ███████████████████ during my leave. Additionally, Meta opened a new IC ███ level role in my team just before I was notified of being selected for layoff. This position is at the same level as I was at an ███, just as an individual contributor. The scope described in the requisition notice exactly matches the work that my team and I had been doing. The only member of my team who was retained was ███████████████, and ████████████████████ reporting to my former manager, ██████████. The members of my team who were selected for termination, including me, ██████████ I was also the only member of my team with ████████████.

16. I was selected for termination while on protected ██████ leave and before I was scheduled to return to work. The notice period associated with my separation runs from May 20, 2026 through my Intended Termination Date of August 20, 2026, and overlaps the portion of my ██████ leave that had been scheduled to continue through ██████, 2026. Because Meta does not permit an employee to receive both notice-period pay and ██████-leave pay for the same period, the approximately two months of protected leave I had remaining were effectively consumed by the notice period. These leave and notice-period dates were confirmed to me by Meta's leave administrator, Lincoln Financial, in correspondence dated June 5, 2026. To preserve a New York ████████████ benefit and to reduce repeated administrative follow-ups, I elected to end my Meta ██████ leave effective May 19, 2026.

Doc ID: 302b5ac1a0f17e242f36c9fdf342b6a8d0e8e6dc

If my separation is finalized, I will also lose the right to be reinstated to my position at the conclusion of my leave.

17. Based on my own observations during my employment, I perceived that Meta treated protected leave as something to be kept quiet. On at least one occasion, I observed a manager appear visibly displeased when an employee took leave during a period in which the team's goal metrics were underperforming and were being measured for year-end performance.

18. During my employment, I began using an internal analytics agent in my work, and my team maintained a shared set of analytics "recipes," sometimes referred to as a "team brain," built from our work product and the datasets and metrics we used. I understand that these tools, and the work product and data on which they were built, remain available to Meta after my separation.

19. Meta deployed activity monitoring on my work-issued device. To my recollection, I was never asked to, and did not, affirmatively consent to that monitoring through any pop-up or acknowledgment. I regularly used my Meta-issued device and accounts to access personal health information—including through my health-insurance and benefits portals and my personal email.

20. My annual base salary at Meta was approximately $███████ in 2025 and approximately $██████ in 2026. My compensation also included a substantial equity component in the form of restricted stock units ("RSUs"). My initial new-hire equity grant was valued at approximately $███████. I understand that I currently hold approximately $███████) to $███████ in unvested RSUs, all of which I will forfeit if my employment is terminated. I

---

Doc ID: 302b5ac1a0f17e242f36c9fdf342b6a8d0e8e6dc

was also eligible for performance bonuses, which in 2026 were to be granted twice per year.

21. My entire family is covered by health insurance through my employment at Meta. I am the primary earner in my household, and my family relies on that coverage, including coverage connected to the ███████████████. My active coverage will end when my employment terminates. The Separation Agreement offers to pay the premiums for continued coverage through COBRA for a period of time, but I understand that premium subsidy to be conditioned on my signing the Separation Agreement and Release, which would require me to release my claims, including the claims at issue in this case. Without signing that release, I would be responsible for the full cost of any COBRA continuation coverage myself, and after any subsidized period ends I would be responsible for the full cost in any event.

22. The loss of my position and the uncertainty surrounding my separation have been a significant source of anxiety, ███████████████████

███████

23. After I went on leave, my access to Meta's systems was restricted. I no longer have access to my work email, calendars, chat logs, or Meta's internal performance and human-resources platforms.

24. I had expected to return to work at Meta at the conclusion of ███████████. Instead, I am now spending time that I expected to use ████████████████ searching for a new job. I have begun applying for positions and contacting recruiters. Prospective employers and recruiters have asked me about the circumstances of my layoff. I have also

---

DECLARATION OF ██████████████████ ISO MOTION FOR PRELIMINARY INJUNCTION        Page 7

declined to pursue interviews at two companies, including Lyft and a startup, where the total compensation offered would have represented a substantial pay cut.

25. The loss of my position has placed significant stress on my family, including with respect to ▉▉▉▉ and our finances. As the primary earner in my household, I am responsible for our household expenses, including our mortgage.

26. I make this declaration in support of Plaintiffs' request that the Court preserve the status quo and enjoin the finalization of the May 2026 reduction in force pending an independent audit, or, in the alternative, enjoin Meta from separating employees who took protected leave or requested a disability accommodation pending such audit. If I am separated before that review can occur, I will lose my employer-sponsored health coverage, my unvested equity, my statutory leave-reinstatement rights, and the protected leave time itself—none of which I believe a later award of money damages could fully restore.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on  06/30 , 2026, at ▉▉▉▉ , New York.

_____
DOE 12

Doc ID: 302b5ac1a0f17e242f36c9fdf342b6a8d0e8e6dc

# EXHIBIT A

May 20, 2026



Employee ID No. ▮▮▮▮▮
▮▮▮▮▮@gmail.com

Re:    Notice of Employee Separation (Notification Letter)

Dear ▮▮▮▮▮▮▮▮▮▮▮,

We regret to inform you that Meta Platforms, Inc. (formerly Facebook, Inc.) and/or any of its subsidiaries or corporate affiliates (the "Company" or "Meta") is separating employees, including at the facility (if any) at which you work. Employee terminations in New York resulting from this action are expected to commence effective August 20, 2026. Terminations resulting from this action are expected to be permanent. Terminated employees are not permitted to displace remaining employees based on seniority or any other factor (i.e., there are no 'bumping rights').

Your employment will be terminated as part of this action. As a result, **your employment with the Company is scheduled to end effective August 20, 2026** (your "Intended Termination Date"). The period from the date of this notice until your Intended Termination Date is your notice period. During your notice period, you will continue to receive any pay and benefits due to you as an employee (up until the termination of your employment) and you will no longer be expected to report to or perform work. Please see the included attachments for further information concerning benefits available to you in connection with the termination of your employment.

You are also hereby notified that, as a result of your employment loss, you may be eligible to receive job retraining, re-employment services, or other assistance with obtaining new employment from the New York State Department of Labor or its workforce partners upon your termination. You may also be eligible for unemployment insurance benefits after your last day of employment. Whenever possible, the New York State Department of Labor will contact your employer to arrange to provide additional information regarding these benefits and services to you through workshops, interviews, and other activities that will be scheduled prior to the time your employment ends. If your job has already ended, you can also access reemployment information and apply for unemployment insurance benefits on the Department's website or you may use the contact information provided on the website or visit one of the Department's local offices for further information and assistance.

Nothing in this notice alters your at-will employment status. This notice is given based upon the best information available to the Company at this time. If you have any questions or concerns that are not answered or addressed in the attached materials, please visit the Alumni Portal.

Sincerely,
Janelle Gale
Chief People Officer

# EXHIBIT B

## SEPARATION AGREEMENT AND RELEASE

Employee:　　　　　　　　　████████████████

Delivered via email at:　　　████████@gmail.com

Notification Date:　　　　　May 20, 2026

## SUMMARY OF KEY TERMS

Last Day with System Access:　　May 20, 2026

Intended Termination Date:　　　August 20, 2026

Separation Pay:　　　　　　　　$█████████

Notice Period:　　　　　　　　　12 weeks

COBRA Coverage Duration:　　　6 months (as explained more fully below)

Additional COBRA Subsidy:　　　12 months (as explained more fully below)

Career Outplacement Services:　　3 months (Meta may elect to provide without requiring a signature on this Agreement)

Expiration Date:　　　　　　　Agreement must be executed by August 27, 2026

---

### How Your Separation Pay was Calculated:

**Your Base Salary:** $█████████
**Your Date of Hire:** ████████, 2025
**Your Years of Service** (as of August 20, 2026): 1 years
**Your Notice Period:** 12 weeks

**Calculation:**
Separation Pay = Your Weekly Pay *times* Your Number of Weeks of Severance
　　　Your Weekly Pay: $███████
　　　Your Number of Weeks of Severance is: ████████
　　　　　How was Your Number of Weeks of Severance calculated?
　　　　　16 weeks *plus* [(2 x Your Years of Service\*) up to a max of 36 weeks] *minus*
　　　　　the number of weeks in Your Notice Period

　　　　　\*Number of full 12-month periods between Date of Hire and Intended Termination Date

Note: Payout of any accrued PTO (and unused choice days, where required by law) will be included in your final paycheck. It is *not* part of this agreement.

---

*Additional terms and conditions of your agreement, including details regarding the terms referenced above, follow.*

Page 1

This letter agreement ("**Agreement**"), including the Summary of Key Terms set forth above, reflects the full terms of your separation from employment with Meta Platforms, Inc. and/or any of its subsidiaries or corporate affiliates ("**Company**" or "**Meta**"). The purpose of this Agreement is to establish an amicable arrangement for ending your employment relationship, for you to release the Company of any actual or potential claims, to resolve any disputes you may have with the Company regarding your employment or separation from that employment, and to permit you to receive separation pay or other benefits to the extent specified below. With these understandings and in exchange for the promises of you and the Company as set forth below, you and the Company agree as follows:

1. **Employment Status:**

   (a)     The Company intends that your employment will end on the "**Intended Termination Date**" referenced above. However, the Company recognizes that after receiving notice of separation, you may elect to voluntarily resign prior to the Intended Termination Date by providing written notice of resignation to meta.com/alumni in which case your actual date of termination ("**Actual Termination Date**") may occur earlier than the Intended Termination Date.

   (b)     On or after your Actual Termination Date, regardless of whether you enter into this Agreement, you will be paid any earned but unpaid compensation, including any accrued but unused PTO, through the Actual Termination Date, less applicable deductions and withholdings, in accordance with applicable law. As of the Actual Termination Date, your employment with the Company shall end, your compensation will cease, and any entitlement you have or might have under a Company-provided benefit plan, program, contract or practice, other than the Meta Platforms, Inc. Severance Plan ("**Severance Plan**"), will terminate, in accordance with the terms of those plans. Your access to Company email, data network, voicemail, facilities, and other Company resources will terminate on the "**Last Day of System Access,**" as referenced above. The Company reserves its right to terminate your access to Company email, data network, voicemail, facilities, and other Company resources prior to this date in the event of an actual or perceived violation of Company policy.

   (c)     The Company will present you with information on your eligibility for benefits under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("**COBRA**") under separate cover.

   (d)     Notwithstanding the foregoing, the Company recognizes that after receiving notice of separation, certain employees may identify and accept alternative employment opportunities with the Company. To the extent you have accepted an alternative employment opportunity with the Company prior to the Actual Termination Date, then you acknowledge and agree that this Agreement shall be rendered null and void, of no force or effect, and you shall not be entitled to the consideration described in Section 2. Further, to the extent you become reemployed with the Company during the six-month period after the Actual Termination Date, then you acknowledge and agree that your new-hire compensation package (including but not limited to signing bonuses, base pay, and equity) may be adjusted in order to offset the separation package described by the Consideration provision. However, such offset will not exceed the total amount of the Consideration you receive under this Agreement.

   (e)     Notwithstanding the foregoing, nothing herein alters the at-will nature of your employment relationship with the Company. In the event your employment with the Company is terminated due to Misconduct (as defined in the Severance Plan), or due to a violation of the Company's Code of Conduct or another Company policy prior to the Intended Termination Date,

Page 2

then you acknowledge and agree that this Agreement shall be rendered null and void, of no force or effect, and you shall not be entitled to the consideration described below.

**2.      Consideration:**  In accordance with the terms of the Severance Plan, in exchange for, and in consideration of, your timely execution, return, non-revocation (if applicable), and full compliance with the terms of this Agreement, the Company agrees to provide you the consideration outlined below.  Note that to be timely, you must return your signed copy of this Agreement  by the **Expiration Date** referenced above – the Company reserves the right to refuse acceptance of any Agreement that is signed and returned after this Expiration Date.

(a)      Separation Pay:  Although you are not otherwise entitled to receive any separation pay from the Company, the Company will pay you the "**Separation Pay**" referenced above, less all legally required and permitted payroll deductions and withholdings, via direct deposit to the bank account listed in Workday within 45 days of your Actual Termination Date or within 45 days of the date you sign this Agreement and it becomes effective as set forth below, whichever is later.

(b)      COBRA:  Provided this Agreement goes into effect, the Company will provide the COBRA premiums for your medical, dental, vision, and Lyra Mental Health benefits (excluding any Healthcare or Limited Purpose Flexible Spending Account) in which you (and any family members) are enrolled at the time of your Actual Termination Date, so that your coverage through COBRA begins on the first day of the month following your Actual Termination Date and continues for the COBRA Coverage Duration plus the Additional COBRA Subsidy duration referenced above, provided you remain eligible and timely apply for COBRA benefits.  Any COBRA premiums owed on or before this Agreement becomes effective should be paid by you and the Company, via its COBRA administrator BenefitConnect, will reimburse you for this cost, upon request, once the subsidy is applied.  All additional premiums owed after this Agreement becomes effective will be paid by the Company. At the end of such COBRA Coverage Duration and Additional COBRA Subsidy duration, you will be solely responsible for paying the entire amount of all COBRA premiums for you and your family's continuation of coverage going forward. You are not obligated to enroll in benefits continuation under COBRA; this is a personal choice, and the Company advises you to consider alternatives prior to doing so (which may be more cost-effective, depending on your circumstances).  However, should you elect an alternative benefits provider, you will be responsible for any costs associated with those benefits.

(c)      Career Outplacement Services: The Company has contracted with Lee Hecht Harrison ("**LHH**") to provide you with "**Career Outplacement Services**" for whichever period is less: (i) the amount referenced above, or (ii) until you accept other full-time employment.  You must commence using these outplacement services no later than 60 days after your Actual Termination Date.  A summary of LHH's outplacement services has been, or will be, provided. Meta may, in its election, satisfy this obligation by providing the Career Outplacement Services in advance of this Agreement going into effect.

(d)      Repayment Forgiveness (if applicable): Additionally, to the extent you have a financial obligation to repay certain balances to the Company with respect to any unearned sign-on bonus, relocation benefits, or negative PTO balances that accrued prior to your Notification Date and that have not been fully reconciled by your Actual Termination Date, then the Company agrees to forgive such repayment obligations and, subject to your continued compliance with the terms of this Agreement, waives its right to recover such balances.

All consideration payments and benefits described herein shall be subject to all applicable federal, state and/or local withholding and/or payroll taxes. Any payments will be remitted via direct deposit to the bank account listed in Workday within 45 days of your Actual Termination

Page 3

Date or within 45 days of the date you sign this agreement and it becomes effective as set forth below, whichever is later.

3.      **Equity:**  To the extent that you hold any Company equity awards, such as stock options or restricted stock units ("**RSUs**") or any underlying shares of Company stock, these equity awards remain subject to the terms and conditions of the applicable agreement(s) signed by you and the terms and conditions of the Company's 2005 Stock Plan and/or 2012 Equity Incentive Plan ("**Equity Agreements**").  If you would like a report regarding the status of your equity awards, please send a request via the alumni portal.

4.      **Permitted Actions and Disclosures:** Nothing in this Agreement (including, without limitation, the Release provision, the Defamation provision, the Confidentiality of Terms provision, and the Cooperation provision) should be read to impede you, the Company, or any individual from (i) disclosing information regarding unlawful acts in the workplace, including, but not limited to, sexual harassment, discrimination, or any other conduct that you have reason to believe is unlawful including, but not limited to, factual information related to any claims for sexual assault or under California's Fair Employment and Housing Act (if applicable); (ii) communicating with, cooperating with, providing relevant information to (including but not limited to information regarding the existence of or facts and circumstances underlying this Agreement), or otherwise assisting in an investigation by (A) the Securities Exchange Commission ("**SEC**") or any other governmental, regulatory, or legislative body regarding a possible violation of any federal law relating to fraudulent or suspicious activities or possible securities law violation; or (B) the Equal Employment Opportunity Commission ("**EEOC**"), Department of Labor ("**DOL**"), National Labor Relations Board ("**NLRB**") or any other governmental authority with responsibility for the administration of fair employment practices laws regarding a possible violation of such laws; (iii) responding to any inquiry from any such governmental, regulatory, or legislative body or official or governmental authority, including an inquiry about the existence of this Agreement or its underlying facts or circumstances; or (iv) participating, cooperating, testifying, or otherwise assisting in any governmental action, investigation, or proceeding relating to a possible violation of any such law, rule or regulation.  Further, nothing in this Agreement shall prohibit or restrict you from initiating communications with, or responding to any inquiry from, or providing testimony before, the SEC or any federal or state regulatory authority regarding this Agreement or its underlying facts or circumstances.  To be clear, nothing in this Agreement prohibits you from seeking and receiving incentive program awards from a governmental or regulatory agency for providing information regarding potential violations of federal law.  Moreover, nothing herein is intended to limit the exercise of any rights under Section 7 of the National Labor Relations Act ("**NLRA**"), to the extent the NLRA applies to your employment with the Company.

5.      **Release:**

(a)      Except as described in the Permitted Actions and Disclosures provision, in exchange for the consideration described in Section 2, which you acknowledge is in addition to anything of value to which you are entitled to receive, and other good and valuable consideration and mutual promises made herein, the receipt and sufficiency of which you hereby acknowledge, you and your representatives, agents, estate, heirs, successors and assigns, absolutely and unconditionally hereby release, remise, discharge, and hold harmless the Company Releasees ("**Company Releasees**") defined to include the Company and/or any of its parents, subsidiaries or affiliates, predecessors, successors or assigns, and its and their respective current and/or former partners, directors, shareholders/stockholders, officers, employees, employee benefit plans, insurers, attorneys and/or agents, all both individually and in their official capacities, from any and all legally waivable actions or causes of action, suits, claims, complaints, contracts, liabilities, agreements, promises, contracts, torts, debts, damages, controversies, judgments, rights and demands, whether existing or contingent,

Page 4

known or unknown, suspected or unsuspected, which arise out of your employment with, change in employment status with, and/or separation of employment from, the Company. This release is intended by you to be all-encompassing and to act as a full and total release of any legally waivable claims, whether specifically enumerated herein or not, that you may have or have had against the Company Releasees arising from conduct occurring up to and through the date you sign this Agreement, including, but not limited to, any legally waivable claims arising from any federal, state or local law, regulation or constitution dealing with either employment, employment benefits or employment discrimination including any claims or causes of action you have or may have relating to discrimination under federal, state or local statutes, all as amended from time to time, including, but not limited to, Title VII of the Civil Rights Act of 1964, the Employee Retirement Income Security Act of 1974, the Americans with Disabilities Act, the Family and Medical Leave Act, the California Fair Employment and Housing Act; the Unruh Civil Rights Act; the California Business and Professions Code; the California Equal Pay Act; the California Family Rights Act; the California Pregnancy Disability Leave Law; the California Paid Sick Leave Law; the California Labor Code including the wage payment laws; the California Whistleblower Protection Act; the California WARN Act; any applicable California Industrial Welfare Commission Wage Order; wrongful termination in violation of public policy (Tameny claims); the California Occupational Safety and Health Acts; the California Military Personnel Bias Law; and the California Constitution, all as amended from time to time, and, if you were located and worked for the Company outside the State of California, the non-exhaustive list of statutes set forth on **Schedule 1** hereto for your particular location (as applicable; all as amended from time to time); any contract, whether oral or written, express or implied; any tort; any claim for equity or other benefits; or any other statutory and/or common law claim.

(b)     You acknowledge that your execution of this Agreement shall be effective as a bar to each and every claim specified in the Release provision of this Agreement, including both known and unknown claims. Accordingly, you hereby expressly waive any and all rights and benefits conferred upon you by the provisions of Section 1542 of the California Civil Code (or analogous statute(s) from any other state) and expressly consent that this Agreement shall be given full force and effect with respect to each and all of its express terms and provisions, including those related to unknown and/or unsuspected claims, if any. Section 1542 provides as follows:

> *"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."*

You further represent that you understand and acknowledge the significance and consequence of such release, inclusive of the specific waiver of Section 1542, and that you have had an opportunity to consult with legal counsel of your choosing prior to agreeing to such release and waiver.

(c)     The only exceptions to this release are any claim(s) you may have for:

    (i)     Unemployment benefits pursuant to the terms of applicable law (to the extent available to you under applicable law);

    (ii)    Workers' compensation insurance benefits pursuant to Division 4 of the California Labor Code or a comparable and applicable state law, under the terms of any workers' compensation insurance policy or fund of the Company;

Page 5

(iii)    Continued participation in certain of the Company's medical, dental, vision health benefit plans pursuant to the terms and conditions of COBRA, if applicable, and/or any applicable state law counterpart to COBRA;

(iv)    Any benefit entitlements vested as of your Actual Termination Date, pursuant to written terms of any applicable employee benefit plan sponsored by the Company;

(v)    Any claims that, as a matter of applicable law, are not waivable; and

(vi)    Claims that arise after you sign this Agreement.

**6.**    **Acknowledgments:**  The consideration set forth above in Section 2 shall be complete and unconditional payment, settlement, accord and/or satisfaction with respect to all obligations and liabilities of the Company Releasees to you, including, without limitation, all claims for disputed compensation or benefits, including bonuses, stock and stock options, commissions, severance pay, reimbursement of expenses or other costs or sums (if applicable).  You acknowledge and represent that, other than the consideration set forth in this Agreement, the Company has paid or provided you all salary, wages, bonuses, accrued paid time off, relocation costs, interest, severance, outplacement costs, fees, commissions, stock, stock options, vesting, and any and all other benefits and compensation due to you as of the date you sign this Agreement.  Notwithstanding, this provision does not apply to standard base compensation earned and paid during your Notice Period, payout of accrued but unused PTO (if applicable), or payment pursuant to the terms of any Company Variable Compensation Plan to those employees who are eligible participants of the Company's Variable Incentive Compensation Plan as of their notice date, each of which will be paid out in the normal course and/or in accordance with applicable law and/or plan terms and conditions. You further acknowledge that, if applicable, you have been provided any statutory protected leaves that you have requested and were entitled to; that you are not aware of having suffered any workplace injuries that you have not already reported to the Company; and that you have not made any claims or allegations related to sexual harassment or sexual abuse with respect to the Company Releasees.

**7.**    **Company Files, Documents and Other Property:**  You agree that on or before your Actual Termination Date you will return to the Company all Company property and materials, including but not limited to (if applicable), computers, laptops, phones, tablets, servers, handheld devices, paper notes or documents, Company credit cards, manuals, building keys, badges, passes, parking passes, data storage devices, intangible information (whether stored on devices, the cloud, or other platform), photographs, audio files, software programs and data compiled with the use of those programs, designs, drawings, prototypes, software passwords or codes, trade secrets and confidential or proprietary information, sales forecasts, names and addresses of Company customers and potential customers, customer lists, customer contacts, sales information, sales forecasts, memoranda, sales brochures, business or marketing plans, reports, projections, and any and all other information or property previously or currently held or used by you that is or was related to your employment with the Company ("**Company Property**").  You agree that in the event that you later discover any other Company Property in your possession, then you will immediately return such Company Property to the Company.

**8.**    **Final Expense Reimbursement Request:**  You agree that you have submitted to the Company all final requests for reimbursement of any business expenses you were required to incur in performing your job for the Company.  You understand and agree that all such reimbursements will be subject to the terms and conditions of the Company's then current Travel and Expense Reimbursement policy and other applicable policies and procedures.

**9.**     **Defamation:** Except as described in the Permitted Actions and Disclosures provision, you agree to refrain from any disparagement, defamation, libel, or slander of any of the Company Releasees; and to refrain from making any statement, verbally or in any writing, to any person or entity that is reasonably calculated to harm the Company's reputation or reduce its income, including any disloyal, unlawful, reckless, malicious, or maliciously false statements concerning the Company's products, services, programs, business affairs, operation, management, or financial condition, or the circumstances surrounding your employment and/or separation of employment from the Company, including by way of sharp, public, disparaging attacks. For sake of clarity, this applies to disparagement in any forum, including but not limited to social media platforms.  You further agree to refrain from any tortious interference with the contracts and relationships of any of the Company Releasees.  Notwithstanding, nothing in this Defamation provision, or this Agreement generally, (a) restricts you from making statements to co-workers, former co-workers, or any third party to the extent protected by the NLRA, if applicable; (b) denies you the right to disclose information about unlawful acts in the workplace, including, but not limited to, sexual harassment, sexual assault, discrimination, or any other conduct that you have reason to believe is unlawful; or (c) waives your right to testify truthfully in an administrative, legislative, or judicial proceeding concerning alleged criminal conduct or sexual harassment, sexual assault, discrimination, or any other conduct that you have reason to believe is unlawful.

**10.**     **Media Statements:**  In any communications  with the media ("**Media Statements**"), you agree that you will not represent yourself as authorized to speak on behalf of the Company, or otherwise imply that any statements you make are representative of the views or policies of the Company, without advance, express written permission from an authorized representative of Meta's Communications Department.  Media Statements include, but are not limited to, statements made on television, radio, internet blogs, social media, apps, internet sites, videos, newspapers, magazines, or any other form of media, whether in print, televised, online, electronic, or other format ("**Media**"). You understand and agree that this covenant against unauthorized Media Statements is reasonable and will prevent your being perceived by any member of the public as speaking on behalf of the Company or as an authority on Meta, particularly on matters which you have incomplete, stale, or incorrect information.  Unauthorized Media Statements about Meta's business, technologies, market position, operations, products or services to the Media without advance, express written permission from Meta's Communications Department shall constitute a material breach of this Agreement. Notwithstanding, nothing herein is intended to limit the exercise of your rights under Section 7 of the NLRA (if applicable), or otherwise limit any disclosures or actions permitted by the Permitted Actions and Disclosures provision.

**11.**     **CIIAA:**  You understand and agree that you have continuing obligations under the Confidential Information and Inventions Assignment Agreement between you and the Company (the "**CIIAA**").  You reaffirm your commitment under the CIIAA in this Agreement, and agree that, as part of this Agreement, except as described in the Permitted Actions and Disclosures provision,  you will comply fully with the terms of the CIIAA.  You also confirm that you have not violated the CIIAA.  Notwithstanding your confidentiality and non-disclosure obligations under the CIIAA or this Agreement, as provided in the Federal Defend Trade Secret Act (18 U.S.C. §§ 1833(b)(1) and 1833(b)(2)), you shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made: (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney, and solely for the purpose of reporting or investigating a suspected violation of law; or (ii) in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

12.    **Confidentiality of Terms:**  Except as described in the Permitted Actions and Disclosures provision, you agree that you will not publicize (directly or indirectly), or otherwise disclose to others, the existence of this Agreement, the contents and terms of this Agreement, or the financial terms of this Agreement (collectively, the "**Separation Terms**"), except that you may disclose Separation Terms to your spouse or immediate family members (subject to their understanding and agreement to otherwise maintain such information in confidence), your attorney, your accountant or tax advisor (to the extent they need to understand your rights hereunder to provide advice or to prepare your tax returns), an arbitrator or court of law for purposes of enforcing the terms of this Agreement or as otherwise expressly permitted by applicable law.

13.    **Cooperation:**  Except as described in the Permitted Actions and Disclosures provision, you agree to make yourself reasonably available to the Company to respond to requests by the Company for information that may be within your knowledge pertaining to or relating to the Company and/or Company Releasees.  This includes providing any passwords to Company devices or encrypted business communications, documents, or data at the Company's request. Moreover, you agree to cooperate fully with the Company in connection with any and all existing or future arbitration proceedings, actual or threatened litigation, charges, grievances, actions, appeals or investigations brought by or against the Company or any of the Company Releasees, whether administrative, civil or criminal in nature, in which and to the extent the Company deems your cooperation necessary.

14.    **Dismissal of Pending Claims**:  If applicable, you agree to effectuate the dismissal of any pending claims, charges, grievances, actions, appeals or complaints against Company Releasees in or with any administrative, state, federal or governmental entity, agency, board or court, or before any other tribunal or arbitrator(s), public or private, based upon any actions occurring prior to the date of this Agreement.  Notwithstanding, this provision shall not apply to any whistleblower tips provided to the SEC pursuant to its whistleblower program.

15.    **Tax Compliance:**  This Agreement is intended to comply with section 409A of the Internal Revenue Code of 1986, as amended (the "**Code**") and its corresponding regulations, including the six-month delay for certain key employees if applicable, or an exemption, and payments may only be made under this Agreement upon an event and in a manner permitted by section 409A of the Code, to the extent applicable.  All payments to be made upon a termination of employment under this Agreement may only be made upon a "separation from service" under section 409A of the Code. For purposes of section 409A of the Code, each payment hereunder shall be treated as a separate payment and the right to a series of installment payments under this Agreement shall be treated as a right to a series of separate payments.  All reimbursements and in-kind benefits provided under the Agreement shall be made or provided in accordance with the requirements of section 409A of the Code.  In no event may you, directly or indirectly, designate the calendar year of a payment. Notwithstanding any provision of this Agreement to the contrary, in no event shall the timing of your execution of this Agreement, directly or indirectly, result in you designating the calendar year of payment of any amounts of deferred compensation subject to section 409A of the Code, and if a payment that is subject to execution of this Agreement could be made in more than one taxable year, payment shall be made in the later taxable year.

16.    **Certain Covenants and Representations; Governing Law:**

(a)    Except as explicitly provided herein, this Agreement (including its Summary of Key Terms and any Schedules) sets forth the complete and sole agreement between the parties and supersedes any and all other agreements or understandings, whether oral or written, between you and the Company.  As such, the CIIAA, any Mutual Arbitration Agreement entered into between you and the Company (if applicable, the "**Arbitration Agreement**"), and, if applicable, any Equity Agreements referenced herein shall remain in full force and effect in accordance with their

Page 8

respective terms. This Agreement may not be changed, amended, modified, altered or rescinded except upon the express written consent of both you and a duly authorized senior executive of the Company.

(b)     If any provision of this Agreement, or part thereof, is held invalid, void or voidable as against public policy or otherwise, the invalidity shall not affect other provisions, or parts thereof, which may be given effect without the invalid provision or part. To this extent, the provisions and parts thereof of this Agreement are declared to be severable. Any waiver of any provision of this Agreement shall not constitute a waiver of any other provision of this Agreement unless expressly so indicated otherwise. The language of all parts of this Agreement shall in all cases be construed according to its fair meaning and not strictly for or against either of the parties.

(c)     Any claims arising out of this Agreement (or any other claims arising out of the relationship between the parties) shall be governed by and construed in accordance with the laws of the state in which your last assigned Company office is located, and shall in all respects be interpreted, enforced and governed under the internal and domestic laws of such state, without giving effect to the principles of conflicts of laws of such state. Any claims or legal actions by one party against the other shall be subject to binding arbitration (as set forth below). To the extent such arbitration provision is deemed unenforceable for any reason, then such claims or legal actions shall be brought in a court of competent jurisdiction in the county and state in which your last assigned Company office is located and, except to the extent such matters are subject to arbitration, you hereby submit to the jurisdiction and venue of any such court.

(d)     **Arbitration:** The parties agree that any and all disputes arising out of the terms of this Agreement, their interpretation, and any of the matters herein released, shall be subject to arbitration pursuant to the Arbitration Agreement (which shall control, if applicable), and otherwise, to the extent there is no prior enforceable Arbitration Agreement, then subject to arbitration before the American Arbitration Association ("**AAA**") in accordance with the Federal Arbitration Act and the AAA Employment Arbitration Rules and Mediation Procedures, available at www.adr.org (or in hard copy upon request to HR). Whether pursuant to the Arbitration Agreement or this Section, the Parties agree that any arbitration hearing pursuant to this provision (e.g. with respect to disputes arising out of the terms of this Agreement, their interpretation, and any of the matters herein released) shall be held in-person (and not virtual), *unless* in advance of such arbitration hearing the parties expressly agree in a signed writing to instead participate in a virtual arbitration hearing. The arbitrator may grant injunctions and other relief in such disputes. The arbitrator shall administer and conduct any discovery in accordance with the Federal Rules of Civil Procedure or any other discovery required by state law in arbitration proceedings. To the extent that any of the Employment Arbitration Rules and Mediation Procedures of the AAA or anything in this Agreement conflicts with any arbitration procedures required by law, the arbitration procedures required by law shall govern. You and the Company also agree that nothing in this Agreement relieves either party from any obligation they may have to exhaust certain administrative remedies before arbitrating any claims or disputes under this Agreement. The decision of the arbitrator shall be final, conclusive, and binding on the parties to the arbitration. The parties agree that the prevailing party in any arbitration shall be entitled to relief in any court of competent jurisdiction to enforce the arbitration award. The parties agree that either may seek permanent injunction and/or temporary restraining order to the extent necessary to preserve the status quo of the parties pending arbitration. THE PARTIES HEREBY AGREE TO WAIVE THEIR RIGHT TO HAVE ANY DISPUTE BETWEEN THEM RESOLVED IN A COURT OF LAW BY A JUDGE OR JURY. Notwithstanding the foregoing, nothing in this arbitration provision shall be construed to limit any disclosures or actions permitted by the Permitted Actions and Disclosures provision, or otherwise prohibit any current or former employee from filing any charge or complaint or participating in any investigation or

Page 9

proceeding conducted by an administrative agency, including but not limited to the EEOC, DOL, or NLRB.

(e)     This Agreement shall not be construed as an admission by you or the Company of any wrongful act, unlawful discrimination, or breach of contract.

(f)     In the event that the Company prevails in any action brought by the Company to enforce any provision of this Agreement or the CIIAA, you agree that you will pay the Company's costs, including attorneys' fees, in addition to any other damages or amounts that may be awarded.

(g)     You may not assign any of your rights or delegate any of your duties under this Agreement.  The rights and obligations of the Company shall inure to the benefit of the Company's successors and assigns.

(h)     The failure or any delay on the part of the Company to exercise any right, remedy, power or privilege under this Agreement shall not operate as a waiver thereof, nor shall any single or partial exercise of any right preclude any other or further exercise of the same or of any other right, nor shall any waiver of any right with respect to any occurrence be construed as a waiver of such right with respect to any other occurrence.

(i)     This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument.

**[SIGNATURE PAGE FOLLOWS]**

You acknowledge that you have been provided a sufficiently reasonable period to consider the terms of this Agreement and to consult an attorney regarding this Agreement before signing it. If you choose to sign the Agreement sooner than the date specified, then you acknowledge that you are doing so knowingly and voluntarily, and were not induced to do so by fraud, misrepresentation or threat by the Company to withdraw or alter the separation terms being offered.

If this letter correctly states the agreement and understanding we have reached, please indicate your acceptance by countersigning no later than the Expiration Date.

Best regards,
Meta Platforms, Inc.

Name: Janelle Gale
Title:   Vice President, People

**I REPRESENT THAT I HAVE READ THE FOREGOING AGREEMENT, THAT I FULLY UNDERSTAND THE TERMS AND CONDITIONS OF SUCH AGREEMENT, AND THAT I AM KNOWINGLY AND VOLUNTARILY EXECUTING THE SAME WITHOUT DURESS OR COERCION FROM ANY SOURCE.  IN ENTERING INTO THIS AGREEMENT, I DO NOT RELY ON ANY REPRESENTATION, PROMISE, OR INDUCEMENT MADE BY THE COMPANY OR ITS REPRESENTATIVES, EXCEPT FOR THE TERMS EXPRESSLY PROVIDED FOR HEREIN.**

Accepted and Agreed to:

{{Sig_es_:signer1:signature}}

{{Sig_es_:signer1:fullname}}

Page 11

**SCHEDULE 1**

If you were located and/or worked for the Company in one of the states enumerated below, then you acknowledge and agree that the release set forth in Section 5(a) includes, but is not limited to, a release of all legally waivable claims under the statutes identified below for your particular location(s) (each as amended from time to time):

| | |
|---|---|
| Alabama | The Alabama Age Discrimination in Employment Act; the Clarke-Figures Equal Pay Act; Title 25 of the Alabama Code, including without limitation, the Alabama law on unlawful employment practices regarding opposition to an employer, the retaliation provision and the actions against third parties jointly liable with employers' provision of the Alabama Workers' Compensation Law. |
| Alaska | Alaska Human Rights Law; Alaska Family Leave Act; Alaska Wage and Hour Act; Alaska Occupational Safety and Health law; Alaska Uniform Contribution Among Tortfeasors Act. Employee further expressly waives any right to liquidated damages arising out of or related to any failure by the Company to pay overtime compensation or other wages to Employee when due, as provided in the Alaska Wage and Hour Act and/or other Alaska wage payment laws. |
| Arizona | The Arizona Civil Rights Act; the Arizona Employment Protection Act; the Arizona Occupational Safety and Health Act; Title 23 of the Arizona Revised Statutes, including without limitation, the Arizona equal pay laws, the Arizona employee drug testing laws, the Arizona wage payment laws; the Arizona Medical Marijuana Act; Title 20 of the Arizona Revised Statutes, including without limitation, the Arizona genetic testing laws; the Arizona criminal code; and all state or local whistleblower protection statutes, codes, or regulations. |
| Arkansas | The Arkansas Civil Rights Act of 1993; the Arkansas Minimum Wage Act; the Arkansas Social Media Privacy Law; Title 11 of the Arkansas Code, including without limitation, the Arkansas wage payment laws, the Arkansas equal pay law, the Arkansas genetic information in the workplace laws, the Arkansas leave for bone marrow or organ donation law, the Arkansas wage and hour laws; Title 4 of the Arkansas Code, including without limitation, the Arkansas leave of absence for public service law; Title 7 of the Arkansas Code, including without limitation, the Arkansas work time to be scheduled for voting law; Title 16 of the Arkansas Code, including without limitation, the Arkansas prohibition on penalty for employees' jury service; the Arkansas Uniform Contribution Among Tortfeasors Act; the Arkansas Military Service Protection Act; the Arkansas Victims Right Law. |
| California | The California Fair Employment and Housing Act; the Unruh Civil Rights Act; the California Business and Professions Code; the California Equal Pay Act; the California Family Rights Act; the California Pregnancy Disability Leave Law; the California Paid Sick Leave Law; the California Labor Code including the wage payment laws; the California Whistleblower Protection Act; the California WARN Act; any applicable California Industrial Welfare Commission Wage Order; wrongful termination in violation of public policy (Tameny claims); the California Occupational Safety and Health Acts; the California Military Personnel Bias Law; the California Constitution. |
| Colorado | The Colorado Anti-Discrimination Act; the Colorado Equal Pay for Equal Work Act; the Colorado Public Health Emergency Whistleblower Law; the Colorado Paid Family and Medical Leave Insurance Act; Title 8 of the Colorado Revised Statutes, including without limitation, the Colorado minimum wage of workers law; the Colorado Overtime and Minimum Pay Standards Order #36; the Colorado Employment Opportunity Act; Colorado Chance to Compete Act; Colorado Workplace Accommodations for Nursing Mothers Act; Colorado Family Care Act/Colorado Health Families and Workplaces Act; Applicable Colorado Overtime and Minimum Wage Order(s); Colorado Paid |

Page 12

| | |
|---|---|
| | Family and Medical Leave Insurance Act; Title 8 of the Colorado Revised Statutes, including without limitation, Colorado Minimum Wage of Workers Law, the Colorado Labor Peace Act.  Moreover, the Parties attest to compliance with Colo. Rev. Stat. § 24-34-407(1). |
| Connecticut | The Connecticut Fair Employment Practices Act; the Connecticut Human Rights and Opportunities Act, including age and sexual harassment claims; the Connecticut Family and Medical Leave Act; Title 31 of the Connecticut Code, including without limitation, the Connecticut equal pay law, the Connecticut whistleblower law, the Connecticut maximum hours, minimum wage and overtime laws, the Connecticut minimum wage and wage payments laws (provided, however, that nothing in this agreement shall be construed as a release of disputed wages as a condition to receive wages conceded to be done), the Connecticut free speech law, the anti-retaliation provision of the Connecticut Workers' Compensation Act, the Connecticut WARN Act; the Connecticut General Statute Paid Sick Leave and Retaliation Provision of Connecticut Workers' Compensation Act. |
| Delaware | The Delaware Minimum Wage Act; the Delaware Discrimination in Employment Act; the Delaware Persons With Disabilities Employment Protections Act; the Delaware Whistleblowers' Protection Act; the Delaware Wage Payment and Collection Act; the Delaware Fair Employment Practices Act, provided, however, that nothing in this agreement shall be construed as a requirement for or condition to any payment due under the Wage Payment and Collection Act; the Delaware Volunteer Emergency Responders Job Protection Act; Title 19 of the Delaware Code, including without limitation, the Delaware social media law. |
| District of Columbia | The District of Columbia Human Rights Act; the District of Columbia Family and Medical Leave Act; the District of Columbia Accrued Sick and Safe Leave Act; the District of Columbia Earned Sick and Safe Leave Amendment Act of 2013; the District of Columbia whistleblower protections for employees of D.C. contractors (D.C. Code Ann. §§ 2 223.01 – 2 223.07) (if applicable); the District of Columbia Parental Leave Act; the District of Columbia Displaced Workers Protection Act; the District of Columbia's Wage Garnishment Fairness Amendment Act of 2018; the District of Columbia's Tipped Wage Workers Fairness Act of 2018; the District of Columbia Universal Paid Leave Amendment Act of 2016. |
| Florida | The Florida Civil Rights Act; the Florida Educational Equity Act; the Florida Omnibus AIDS Act; Title 41 of the Florida Statutes, including without limitation, the Florida wage discrimination law; Title 17 of the Florida Statutes, including without limitation, the Florida provision prohibiting discrimination against military personnel, the Florida law prohibiting discrimination on the basis of sickle-cell trait; Title 31 of the Florida Statutes, including without limitation, the retaliation provision of the Florida Workers' Compensation Act; the Florida Private Sector Whistleblower Act; the Florida Minimum Wage Act; Article X, Section 24 of the Florida Constitution; the retaliation provisions of the Florida False Claims Act. |
| Georgia | The Georgia Fair Employment Practices Act; the Georgia Equal Pay Act, as amended; the Georgia Prohibition of Age Discrimination in Employment Act; the Georgia Equal Employment for Persons with Disabilities Code; Title 34 of the Georgia Code, including without limitation, the law regarding arbitration for sex discrimination claims, the Georgia minimum wage law, except as prohibited by law; the Georgia Constitution. |
| Hawaii | The Hawaii Dislocated Workers Act; the Hawaii Family Leave Law; the Hawaii Whistleblowers' Protection Act; the Hawaii Fair Employment Practices Law; the Hawaii Pay Transparency Law/Hawaii Equal Pay Law; the Hawaii Lie Detector Tests Law; the Hawaii Civil Rights Act; the Hawaii Discriminatory Practices Law; the Hawaii Temporary Disability Insurance Law; the Hawaii Prepaid Health Care Act; the Hawaii Occupational Safety and Health Law; the Hawaii Constitution. |

Page 13

| Idaho | The Idaho Human Rights Act; the Idaho Equal Pay Law; Title 44 of the Idaho Statutes, including without limitation, the Idaho minimum wage law. |
|---|---|
| Illinois | The Illinois Human Rights Act; the Illinois Right to Privacy in the Workplace Act; the Illinois Union Employee Health and Benefits Protection Act; the Illinois Employment Contract Act; the Illinois Labor Dispute Act; the Illinois Equal Pay Act; the Illinois Family Military Leave Act; the Illinois Family Bereavement Leave Act/Child Bereavement Leave Act; Illinois Religious Freedom Restoration Act; Illinois Service Member Employment and Reemployment Rights Act; the Illinois WARN Act; the Illinois Whistleblower Act; the Illinois Nursing Mothers in the Workplace Act; the Illinois Victims' Economic Security and Safety Act; the Illinois Workplace Transparency Act; the Illinois Biometric Information Privacy Act; the Illinois Minimum Wage Law; the Illinois Wage Payment and Collection Act; the Cook County Human Rights Ordinance; the Illinois Gender Violence Act; the Chicago Human Rights Ordinance; the Illinois Constitution. |
| Indiana | The Indiana Civil Rights Act; the Indiana Military Family Leave Act; Title 10 of the Indiana Code, including without limitation, the Indiana laws related to military leave and re-employment rights; Title 22 of the Indiana Code, including without limitation, the Indiana blacklisting statute, the Indiana off-duty use of tobacco by employees law, the Indiana equal pay law, the Indiana age discrimination law, the Indiana wage payment and wage claims law; the Indiana Whistleblower Protections for Employees of Private Employer that is Under Public Contract Law; the Indiana Occupational Safety and Health Act; the Indiana False Claims and Whistleblower Protection Act. |
| Iowa | Chapter 91D of the Iowa Code, including without limitation, the Iowa minimum wage law; the Iowa Wage Payment Collection Law; Chapter 29A of the Iowa Code, including without limitation, the Iowa military leave/re-employment rights statute; the Iowa Civil Rights Act of 1965; Iowa WARN Act (the Iowa Layoff Notification Law); the Iowa False Claims Act. |
| Kansas | The Kansas Act Against Discrimination; the Kansas Age Discrimination in Employment Act; the Kansas Minimum Wage and Maximum Hours Law; the Kansas Equal Pay Law; the Kansas Discrimination Against Military Personnel Act; the Kansas Discrimination Against Victims of Domestic Violence or Sexual Assault Act; the Kansas Whistleblower Protection Act; Chapter 44 of the Kansas Statutes, including without limitation, the Kansas WARN law. |
| Kentucky | The Kentucky Civil Rights Act; the Kentucky Equal Opportunities Act; the Kentucky Wage Discrimination Because of Sex Law; the Kentucky Equal Pay Act; Title 27 of the Kentucky Revised Statutes, including without limitation, the Kentucky Pregnant Workers Act, the Kentucky adoption leave law, the Kentucky wages and hours laws, the retaliation provision of Kentucky Workers' Compensation Act; Title 5 of the Kentucky Revised Statutes, including without limitation, the Kentucky law regarding military leave and re-employment rights; Title 41 of the Kentucky Revised Statutes, including the damages statute; the Kentucky Occupational Safety and Health Act. |
| Louisiana | The Louisiana Wage Payment Act; the Louisiana Constitution; the Civil Code of the State of Louisiana; Title 23 of Louisiana Revised Statutes, including without limitation, the Louisiana employment discrimination law, the Louisiana family and medical leave law, the Louisiana whistleblower protection laws, the retaliation provision of the Louisiana workers' compensation law. |
| Maine | The Maine Human Rights Act; the Maine Civil Rights Act; the Marine WARN Laws; Title 5 of the Maine Revised Statutes, including without limitation, the Maine protection from harassment law; Title 26 of the Maine Revised Statutes, including without limitation, the Maine equal pay law, the Maine sexual harassment policies law, |

Page 14

| | |
|---|---|
| | the Maine family sick leave law, the Maine family medical leave law, the Maine earned paid leave law; the Maine Whistleblowers' Protection Act. |
| Maryland | Title 20 of the Maryland Code, including the Maryland anti-discrimination laws; the Maryland Flexible Leave Act; the Maryland Fair Employment Practices Act; the Maryland Equal Pay for Equal Work Law (to the extent permissible) and Maryland Occupational Safety and Health Act (to the extent permissible); Title 3 of the Maryland Code, including without limitation, the Maryland deployment leave law; the Maryland Economic Stabilization Act; the Maryland False Claims Act; the Maryland Parental Leave Act; the Maryland Healthy Working Families Act. |
| Massachusetts | The Massachusetts Fair Employment Practices Act; the Massachusetts Equal Pay Act (except for claims that cannot be waived related to inquiry or discussion of wages); the Massachusetts False Claims Act; the Massachusetts Civil Rights Law; the Massachusetts Minimum Fair Wages Law; the Massachusetts Labor and Industry Privacy Law; the Massachusetts Independent Contractor statute; Chapter 214 of the Massachusetts General Laws, including without limitation, the Massachusetts right of privacy law, the Massachusetts right to freedom from sexual harassment law; Chapter 149 of the Massachusetts General Laws, including without limitation, the Massachusetts age discrimination law, the Massachusetts parental leave law; the Massachusetts Payment of Wages Act (to the extent possible); Chapter 151B of the Massachusetts General Laws, including without limitation, the Massachusetts law prohibiting unlawful discrimination; Chapter 93 of the Massachusetts General Laws, including without limitation, the Massachusetts equal rights law, the Massachusetts equal rights for the elderly and handicapped persons law; the Massachusetts Paid Family and Medical Leave Act; the Massachusetts Small Necessities Leave Act; the Massachusetts Earned Sick Time Law.<br><br>*Massachusetts Wage Act Waiver.* By signing this Agreement, Employee is further acknowledging that this waiver includes any claims against the Company under the Massachusetts Wage Act. These claims include, but are not limited to, failure to pay earned wages, failure to pay overtime, failure to pay earned commissions, failure to timely pay wages, failure to pay accrued vacation or holiday pay, failure to furnish appropriate pay stubs, claims for improper wage deductions, and claims for failing to provide proper check-cashing facilities. |
| Michigan | The Elliott-Larsen Civil Rights Act; the Michigan Persons With Disabilities Civil Rights Act; the Michigan Payment of Wages and Fringe Benefits Law; the Michigan Workforce Opportunity Wage Act, including without limitation, Michigan Minimum Wage Law, Michigan Equal Pay Law, Michigan Paid Medical Leave Act; the Michigan Whistleblower's Protection Act; the Michigan WARN Laws; the Michigan Occupational Safety and Health Act; the Bullard-Plawecki Employee Right to Know Act; the Michigan Social Security Number Privacy Act; the Michigan Sales Representatives Commission Act; the Michigan Internet Privacy Protection Act. |
| Minnesota | The Minnesota Human Rights Act; the Minnesota Equal Pay for Equal Work Law; Chapter 181 of the Minnesota Annotated Statutes, including without limitation, the Minnesota health care worker whistleblower protection laws, the Minnesota family leave law, the Minnesota age discrimination laws, the Minnesota nonwork activities law, the Minnesota wage statutes, the Minnesota personnel record access statutes; Minnesota WARN Laws; the retaliation provision of Minnesota Workers' Compensation Act.<br><br>Moreover, if based in Minnesota, then Employee understands and agrees that they have the right to revoke this Agreement and Release within fifteen calendar days after signing it with respect to filing claims under the Minnesota Human Rights Act. Any revocation must be in writing addressed to the Company's human resources department. To be effective, this revocation must either be (a) hand-delivered to the |

Page 15

| | |
|---|---|
| | Company's Representative listed above within fifteen calendar days of signing; or (b) sent by certified mail return receipt requested to the Company's representative with a postmark within fifteen calendar days of signing.  If this Agreement and Release is revoked, however, then Employee will not be entitled to any of the separation pay or benefits described in the consideration paragraph of this Agreement.  If the Company's Representative does not receive written statement of revocation by the end of the revocation period, this Agreement will become legally enforceable and Employee may not thereafter revoke this Agreement. |
| Mississippi | The Mississippi Employment Protection Act; the Mississippi Military Leave/Re-Employment Rights Statute; Mississippi Wage Law; Wrongful discharge claims arising under Miss. Code Ann. Sec. 45-9-55. |
| Missouri | The Missouri Fair Employment Practices Act; the Missouri Human Rights Act; the Missouri Equal Pay Act; the Missouri Service Letter statute; the Missouri Minimum Wage Law; the Missouri Wage Payment Law; Retaliation for Exercise of Rights under Missouri Workers' Compensation Act; Missouri Whistleblower's Protection Act; Missouri Breastfeeding Rights Law; Missouri Handicap Discrimination Statute. |
| Montana | The Montana Human Rights Act; Title 39 of the Montana Code, including without limitation, the Montana equal pay law, the Montana minimum wage and overtime compensation law (to the extent possible); the Montana Maternity Leave Act; the Montana Limitation on Hours for Certain Employees Act; the Wrongful Discharge from Employment Act; the Montana Wage Payment Act; the Montana Blacklisting Statutes. Moreover, if based in Montana, then Employee acknowledges that their termination was for good cause as defined by Montana Law (Mont. Code Ann. § 39-2-903). |
| Nebraska | The Nebraska Fair Employment Practice Act; the Nebraska Age Discrimination in Employment Act; the Nebraska Laws Against Discrimination of Military Personnel; Chapter 48 of the Nebraska Revised Statutes, including without limitation, the Nebraska equal pay law, the Nebraska drug testing law, the Nebraska genetic testing and information law, the Nebraska adoptive parent leave law; Chapter 20 of the Nebraska Revised Statutes, including without limitation, the Nebraska AIDS discrimination act, the Nebraska privacy laws; Chapter 55 of the Nebraska Revised Statutes, including without limitation, the Nebraska military leave laws; the Nebraska Family Military Leave Act; the Nebraska Volunteer Emergency Responders Job Protection Act; Chapter 32 of the Nebraska Revised Statutes, including without limitation, the Nebraska election worker and voting leave laws; Chapter 25 of the Nebraska Revised Statutes, including without limitation, the Nebraska jury duty leave law; waivable claims under the Nebraska Wage Payment and Collection Act. |
| Nevada | The Nevada Fair Employment Practices Act (including age and sexual harassment claims, claims related to false pretenses, blacklisting, grafting, kickbacks, or lie detectors); the Nevada Constitution; the Nevada Paid Leave Law; the Nevada Pregnant Workers' Fairness Act; the Nevada Nursing Mother's Accommodation Act; Chapter 608 of the Nevada Revised Statutes, including without limitation, the Nevada wage laws; Waivable Claims under Chapter 613 of the Nevada Revised Statutes. |
| New Hampshire | The New Hampshire Whistleblowers' Protection Act; Waivable claims under Title 23 of the New Hampshire Revised Statutes, including without limitation, the New Hampshire minimum wage law, New Hampshire Protective Legislation Law, New Hampshire Unemployment Compensation Prohibition Against Discrimination Law, New Hampshire Dog and Horse Racing Law (if applicable); the New Hampshire Uniform Trade Secrets Act; the New Hampshire Safety and Health of Employees Law; the New Hampshire Law Against Discrimination; the New Hampshire WARN Act. |
| New Jersey | The New Jersey Law Against Discrimination; the New Jersey Civil Rights Act; the New Jersey Conscientious Employee Protection Act; the New Jersey Discrimination in |

Page 16

| | |
|---|---|
| | Wages Law; the New Jersey Security and Financial Empowerment Act; the New Jersey Family Leave Insurance provisions of the New Jersey Temporary Disability Benefits Law; the New Jersey Earned Sick Leave Law; the New Jersey Domestic Partnership Act; the New Jersey Family Leave Act; the New Jersey Wage Payment Law; the New Jersey Wage and Hour Law; the New Jersey Wage Theft Act; the New Jersey Equal Pay Act; the New Jersey False Claims Act; the New Jersey Smokers' Rights Law; the New Jersey Genetic Privacy Act; the New Jersey Fair Credit Reporting Act; the New Jersey Emergency Responders Employment Protection Act; the New Jersey Millville Dallas Airmotive Plant Job Loss Notification Act (the New Jersey WARN Act); the New Jersey Compassionate Use Medical Cannabis Act; the New Jersey Secure Choice Act; the retaliation provisions of the New Jersey Workers' Compensation Law.  Further, although the parties may agree to keep the settlement of any of claims against the Company and underlying facts confidential, such a provision is unenforceable against the Company if Employee publicly reveals sufficient details of their claims against the Company so that the Company is reasonably identifiable. |
| New Mexico | The New Mexico Human Rights Act; Chapter 28 of the New Mexico Statutes, including without limitation, the New Mexico reemployment of persons in armed forces law; the New Mexico Fraud Against Taxpayers Act; the New Mexico Promoting Financial Independence for Victims of Domestic Abuse Act; Chapter 50 of the New Mexico Statutes, including without limitation, the New Mexico employee privacy law, the New Mexico social media law; the New Mexico Healthy Workplaces Act; the New Mexico Caregiver Leave Act; the New Mexico Criminal Offender Employment Act. |
| New York | The New York State Executive Law (including its Human Rights Law and all amendments thereto); the New York City Administrative Code (including its Human Rights Law and all amendments thereto); the New York Equal Pay Law; the New York Equal Rights Law; the New York Off-Duty Conduct Lawful Activities Discrimination Law; the New York State Employment Relations Act; the New York Labor Law (including any applicable regulations and/or wage orders); the New York Whistleblower Statute; the New York Paid Family Leave Law; the New York Wage and Hour Laws; the New York WARN Laws; the New York Civil Rights Law; the New York State Corrections Law (including Article 23-A); the New York State Paid Sick Leave Law; the New York City Earned Sick Time Act; the New York City Human Rights Law; the New York City Fair Workweek Law; the retaliation provisions of the New York State Workers' Compensation Law; the New York State False Claims Act; the New York State Rights of Persons with Disabilities Law; the New York State Nondiscrimination Against Genetic Disorders Law; the New York State Smokers' Rights Law; the New York Public Health Law, including the section on HIV testing confidentiality; Chapter 31 of the Consolidated Laws of New York, including without limitation, the New York leave of absence for bone marrow donation law, the New York adoptive parent child care leave law; the New York State Constitution; the New York City Charter. |
| North Carolina | The North Carolina Equal Employment Practices Act; the North Carolina Persons with Disabilities Protection Act; the North Carolina Civil Rights Law; Chapter 95 of the North Carolina General Statutes, including without limitation, the North Carolina sickle cell or hemoglobin C trait discrimination law, the North Carolina genetic information anti-discrimination law, the North Carolina lawful use of lawful products during nonwork hours law; Chapter 130A of the North Carolina General Statutes, including without limitation, the North Carolina HIV/AIDS discrimination law; Chapter 9 of the North Carolina General Statutes, including without limitation, the North Carolina jury duty leave law; Chapter 127A of the North Carolina General Statutes, including without limitation, the North Carolina National Guard reemployment rights law; the North Carolina Military Service Discrimination Act; the North Carolina Retaliatory Employment Discrimination Act; the North Carolina Leave for Parent Involvement in Schools Law. |

Page 17

| North Dakota | The North Dakota Human Rights Act; the North Dakota Age Discrimination Law; North Dakota Whistleblower Law and North Dakota Wage Collection Law; Title 34 of the North Dakota Century Code, including the North Dakota Equal Pay Act and North Dakota wage and hour laws, including any and all amendments to the foregoing. Moreover, Employee expressly waives any and all rights under any state or local statute, executive order, regulation, common law and/or public policy relating to unknown claims, including but not limited to North Dakota Century Code § 9-13-02. |
|---|---|
| Ohio | The Ohio Civil Rights Act; Title 41 of the Ohio Revised Statutes, including without limitation, the Ohio equal pay statute, the Ohio wage payment anti-retaliation statute, the Ohio Workers' Compensation anti-retaliation statute, other miscellaneous labor provisions; the Ohio Whistleblowers' Protection Act; Title 4112 of the Ohio Administrative Code, including without limitation, the Ohio pregnancy and childbirth discrimination provision; the Ohio Minimum Fair Wage Standards Act; the Ohio Constitution. |
| Oklahoma | The Oklahoma Anti-Discrimination Act; the Oklahoma Genetic Nondiscrimination in Employment Act; the Oklahoma Minimum Wage Act; the discrimination or retaliation provision of the Oklahoma Administrative Workers' Compensation Act; the Oklahoma Standards for Workplace Drug and Alcohol Testing Act; Title 40 of the Oklahoma Statutes, including without limitation, the Oklahoma general anti retaliation law, the Oklahoma laws governing wages and working conditions, the Oklahoma discriminatory wages law; Title 63 of the Oklahoma Statutes, including without limitation, the Oklahoma medical marijuana laws; the Oklahoma Medical Marijuana and Patient Protection Act, including any and all amendments to the foregoing.  Moreover, Employee acknowledges that this waiver is not a restraint as contemplated by Okla. Stat. Ann. tit. 40, § 199(B)(2), Oklahoma Law Governing Wages and Working Conditions, Oklahoma Minimum Wage Act, the Retaliation and Discrimination provision of the Oklahoma Administrative Workers' Compensation Act, and the Standards for Workplace Drug and Alcohol Testing Act. |
| Oregon | The Oregon Workplace Fairness Law; the Oregon Equality Act; the Oregon Fair Employment Practices Act; the Oregon Equal Pay Law; the Oregon Genetic Privacy Laws; the Oregon Family Leave Act; the Oregon Military Family Leave Act; the Oregon Unlawful Discrimination Against Persons in Uniformed Service Law; the Oregon Leave of Absence for Uniformed Service Law; the Oregon Sick Leave Law; the Oregon Unlawful Discrimination Against Injured Workers Law; the Oregon Leave of Absence for State Service Law; the Oregon Unlawful Discrimination Against Persons with Disabilities Law; the Oregon Social Media Accounts in Employment Law; the Oregon Initiating or Aiding Administrative, Criminal, or Civil Proceeding Law; Title 51 of the Oregon Revised Statutes, including without limitation, the Oregon hours of labor and wage payment law, the Oregon minimum wage law, the Oregon whistleblower law; Title 26 of the Oregon Revised Statutes, including without limitation, the Oregon WARN laws; the Oregon Constitution. |
| Pennsylvania | The Pennsylvania Human Relations Act; the Pennsylvania Equal Pay Law; the Pennsylvania Wage Payment Collection Act; the Pennsylvania Whistleblower Law; Title 16 of the Pennsylvania Code, including without limitation, the Pennsylvania pregnancy discrimination law, Childbirth and Childbearing Law, Pennsylvania Pregnancy Guidelines of the Human Relations Commission; the Pennsylvania Minimum Wage Law, except as prohibited by law; the Pennsylvania Medical Marijuana Act; the Philadelphia Fair Workweek Employment Standards Ordinance; the Philadelphia Fair Practices Ordinance. |
| Rhode Island | The Rhode Island Fair Employment Practices Act; the Rhode Island Parental and Family Medical Leave Act and Rhode Island Hazardous Substances Right-to-Know Act; Title 42 of the Rhode Island General Laws, including the Rhode Island Civil Rights Act and the Rhode Island Civil Rights of People with Disabilities Law; the |

| | |
|---|---|
| | Rhode Island AIDS Law; the Rhode Island Domestic Abuse Bias in Employment Law; the Rhode Island Discrimination Based on Genetic Testing Law; the Rhode Island Military Family Leave Act; Title 28 of the Rhode Island General Laws, including the Rhode Island Equal Pay Act, the Rhode Island Whistleblower Protection Act, the Rhode Island Employee Social Media Privacy Act, the Rhode Island Healthy and Safe Families and Workplaces Act and Rhode Island wage and hour laws. |
| South Carolina | The South Carolina Human Affairs Law; the South Carolina Bill of Rights for Handicapped Persons Law; the South Carolina Military Reemployment Rights Law; Chapter 41 of the South Carolina Code, including without limitation, the South Carolina unlawful discrimination against union members law, the South Carolina unlawful termination of an employee replaced by an authorized alien law, the South Carolina wrongful demotion or termination of an employee for complying with a subpoena or serving on a jury law, the South Carolina adverse action against employees for using tobacco products outside the workplace law, the retaliation provision of South Carolina Workers' Compensation Law; the South Carolina Whistleblower Law (if applicable); the S.C. Code Ann. Sec. 53-1-110 (South Carolina's Discrimination Against Employees Who Conscientiously Oppose Working on Sunday Law); the Wrongful Termination Provision of the South Carolina Consumer Protection Code. |
| South Dakota | South Dakota Human Relations Act; the South Dakota Genetic Information Bias Law; the South Dakota Wage Retaliation Law; the South Dakota Minimum Wage Law; the South Dakota Equal Pay for equal work law. Moreover, Employee expressly waives any and all rights under any state or local statute, executive order, regulation, common law and/or public policy relating to unknown claims, including but not limited to South Dakota Codified Laws Section 20-7-11. |
| Tennessee | The Tennessee Fair Employment Practices Law, as amended; the Tennessee Equal Pay Act; the Tennessee Disability Act; the Tennessee Public Protection Act; the Tennessee Employee Online Privacy Act; the Tennessee Workers' Compensation Law Retaliation Provision (to the extent permissible); the Tennessee WARN Act; Title 4 of the Tennessee Code, including without limitation, the Tennessee law regarding leave for adoption, pregnancy, childbirth and infant nursing; the Tennessee Pregnant Workers Fairness Act; the Tennessee Plant Closing and Reduction in Operations Act; the Tennessee Occupational Safety and Health Act; the Tennessee Wage Protection/Wage Regulation Act; the Tennessee Human Rights Act. |
| Texas | The Texas Labor Code (specifically including the Texas Payday Law, the Texas Anti-Retaliation Act, Chapter 21 of the Texas Labor Code); Chapter 121 of the Texas Human Resource Code; the Texas Health and Safety Code; the Texas Whistleblower Act; the Texas Deceptive Trade Practices Act; the Texas Equal Pay Law. |
| Utah | The Utah Antidiscrimination Act; the Utah Minimum Wage Act; the Utah Occupational Safety and Health Act; the Utah Genetic Testing Privacy Act; Utah's Local Government Entity/Drug-Free Workplace Policies Act; the Utah Internet Employment Privacy Act; Title 34 of the Utah Code, including without limitation, the Utah drug and alcohol testing law, the Utah employment relations and collective bargaining law; the Utah Right to Work Law; the Utah Protection of Activities in Private Vehicles Act; the Utah Employment Selection Procedures Act; the Utah Constitution. |
| Vermont | The Vermont Fair Employment Practices Act; Title 18 of the Vermont Statutes, including without limitation the Vermont genetic testing discrimination laws; the Vermont Parental and Family Leave Act; the Vermont Earned Sick Time Law; the Vermont Occupational Safety and Health Act; Title 21 of the Vermont Statutes, including without limitation, the Vermont minimum wage law, the Vermont whistleblower laws related to fair employment. |

| Virginia | The Virginians with Disabilities Act; the Virginia Human Rights Act; Title 40.1 of the Virginia Code, including without limitation, the Virginia genetic testing law; the Virginia Equal Pay Act; the Virginia Fraud Against Taxpayers Act; the Virginia Minimum Wage Act; the Virginia Wage Payment Act; the Virginia Right to Work Law; the Virginia Occupational Safety and Health Act; Va. Code Ann. § 40.1-28.7:5 (Virginia's Prohibition Against Certain Access to Employees' and Applicants' Social Media Accounts. |
|---|---|
| Washington | The Washington Industrial Welfare Act; the Washington Law Against Discrimination; the Washington Family Leave Act; the Washington Family Care Act; the Washington Wage Payment Law; the Washington Paid Sick Leave Act; the Washington Domestic Violence Leave Act; the Washington Military Family Leave Act; Title 296 of the Revised Code of Washington, including without limitation, the employer notification and reporting to employees provision; the Washington Age Discrimination Law; Title 284 of the Revised Code of Washington, including without limitation, the prohibition against use of genetic information and requests for genetic testing; Title 49 of the Revised Code of Washington, including without limitation, the Washington social media privacy law, the Washington leave for certain emergency services personnel law; the Washington Minimum Wage Act; the Washington Equal Pay and Opportunities Act; the Washington Fair Chance Act; the Washington Constitution. |
| West Virginia | The West Virginia Human Rights Act, including the Pregnant Workers' Fairness Act; the West Virginia Equal Pay for Equal Work Act; West Virginia's prohibition against discrimination for use of tobacco products; West Virginia's prohibition against discrimination for jury duty summons; W. Va. Code § 21-5H-1 (West Virginia's Prohibition Against Certain Access to Employees' and Applicants' Social Media Accounts); the West Virginia Parental Leave Act; the West Virginia Minimum Wage and Maximum Hour Law; the West Virginia Workers' Compensation Act Discriminatory Practices Law; the retaliation provision of Consumer Credit and Protection Act.<br><br>Moreover, in signing this agreement, Employee acknowledges that they were given at least 21 days in which to consider the agreement, and had a 7 day revocation period under Section 77-6-1.1 – 77-6-8.1 of West Virginia's Human Rights Commission Bias Rules. |
| Wisconsin | The Wisconsin Fair Employment Act, including age and sexual harassment claims, as amended; the Wisconsin Family and Medical Leave Law; the Wisconsin Minimum Wage Law; the Wisconsin Wage Claim and Payment Law; the Wisconsin Worker's Compensation Act Retaliation Provisions; the Wisconsin Business Closing and Mass Layoff Law; Chapter 109 of the Wisconsin Statutes, including without limitation, the Wisconsin cessation of health care benefits law; the Wisconsin Employment Peace Act; Chapter 103 of the Wisconsin Statutes, including without limitation, the Wisconsin restrictions on use of an HIV test law, the Wisconsin personnel records statute; the Wisconsin Bone Marrow and Organ Donation Leave Law; the Wisconsin internet privacy law. |
| Wyoming | The Wyoming Fair Employment Practices Act; the Wyoming Equal Pay Law and Wyoming Minimum Wage Law; the Wyoming Whistleblower Act; the Wyoming Occupational Health and Safety Act. |

Page 20