ERIN M. CONNELL (STATE BAR NO. 223355)
econnell@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

LAUREN M. GOLDSMITH (SBN 293269)
lgoldsmith@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
Telephone:    +1 212 506 5000

DIXIE TAUBER (STATE BAR NO. 321692)
dtauber@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capitol Mall, Suite 3000
Sacramento, CA  95814-4497
Telephone:    +1 916 329 7982

Attorneys for Defendant
META PLATFORMS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DOES 1 THROUGH 26,<br><br>                Plaintiffs,<br><br>    v.<br><br>META PLATFORMS, INC.,<br><br>                Defendant. | Case No. 3:26-CV-07122-WHO<br><br>**DEFENDANT META PLATFORMS, INC.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>Date: July 16, 2026<br>Time: 10 a.m.<br>Judge: Hon. William H. Orrick |

TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................................ 1

II.     BACKGROUND ................................................................................................................ 4

III.    LEGAL STANDARD ......................................................................................................... 6

IV.     PLAINTIFFS ARE NOT ENTITLED TO A TRO ............................................................ 7

        A.      Plaintiffs' Claims Belong in Arbitration, Which Provides the Relief They
                Seek ........................................................................................................................ 7

        B.      Plaintiffs Do Not Show Likelihood of Success on the Merits of Their
                Claims ................................................................................................................... 10

                1.      Plaintiffs Must Make Individualized Showings, Not Blanket
                        Assertions ................................................................................................. 11

                2.      Plaintiffs' Declarations Rest on Speculation and Temporal
                        Proximity, Not Causation or "Proof" Their Claims Have Merit ............... 11

                3.      Plaintiffs' Evidence Is Insufficient ......................................................... 14

        C.      Plaintiffs Will Not Be Irreparably Harmed .......................................................... 15

                1.      Plaintiffs' Delay in Seeking Relief Undercuts Allegations of
                        Irreparable Harm ...................................................................................... 17

        D.      The Balance of Hardships and Public Interest Weighs Strongly Against the
                Requested Temporary Restraining Order .............................................................. 17

        E.      Plaintiffs' TRO Would Upend, Rather than Preserve, the Status Quo ................. 18

        F.      If Injunctive Relief Is Granted, Plaintiffs Must Post a Substantial Bond ............. 19

V.      CONCLUSION ................................................................................................................. 19

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*4 Exotic Dancers v. Spearmint Rhino*,
2009 WL 250054 (C.D. Cal. 2009)..................................................................................... 14

*All. for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011)............................................................................................. 6

*Belzer v. Am. Airlines*,
2007 WL 685865 (E.D. Cal. Mar. 5, 2007) ...................................................................... 16

*Brownfield v. Bonta*,
2021 WL 6621064 (N.D. Cal. Dec. 23, 2021) .................................................................... 6

*Caribbean Marine Servs. Co. v. Baldrige*,
844 F.2d 668 (9th Cir. 1988)............................................................................................... 7

*Chalk v. U.S. Dist. Ct. Cent. Dist. of Cal.*,
840 F.2d 701 (9th Cir. 1988)............................................................................................. 16

*Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp. Inc.*,
2020 WL 620294 (C.D. Cal. Jan. 9, 2020) ......................................................................... 1

*CleanFish, LLC v. Sims*,
2019 WL 2716293 (N.D. Cal. June 28, 2019) .................................................................. 12

*Coleman v. Quaker Oats Co.*,
232 F.3d 1271 (9th Cir. 2000)........................................................................................... 18

*Doe v. Carleson*,
356 F. Supp. 753 (N.D. Cal. 1973) ................................................................................... 14

*Doe v. Lally*,
467 F. Supp. 1339 (D. Md. 1979) ..................................................................................... 14

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) (en banc)......................................................................... 7, 19

*Garcia v. Spun Steak Co.*,
998 F.2d 1480 (9th Cir. 1993)........................................................................................... 13

*Genias Graphics Gumb & Co. KG v. Tecplot, Inc.*,
2013 WL 12092542 (W.D. Wash. Aug. 21, 2013) .................................................... 8, 9, 10

*Graphic Commc'ns Conf.—Int'l Bhd. of Teamsters Loc. 404M v. Bakersfield Californian*,
541 F. Supp. 2d 1117 (E.D. Cal. 2008)......................................................................... 8, 15

*Int'l Bhd. of Elec. Workers, Loc. 1269 v. YP Advert. & Publ'g, LLC*,
2016 WL 706006 (N.D. Cal. Feb. 23, 2016)............................................................................ 16

*KCG Americas LLC v. Zhengquan Zhang*,
2017 WL 8294011 (N.D. Cal. Apr. 10, 2017) ......................................................................... 15

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019) .............................................................................................................. 10

*Lucore v. US Bank, NA for Certificate Holders of Bank of Am. Funding Corp.*
*Mortg. Pass-Through Certificates, Series 2006-H*,
2018 WL 2215430 (S.D. Cal. May 14, 2018)......................................................................... 18

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009)................................................................................................... 7

*Mission Viejo Florist, Inc. v. Orchard Supply Co., LLC*,
2016 WL 9275407 (C.D. Cal. Nov. 17, 2016) ........................................................................ 15

*O'Hailpin v. Hawaiian Airlines, Inc.*,
583 F. Supp. 3d 1294 (D. Haw. 2022) .................................................................................... 17

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*,
762 F.2d 1374 (9th Cir.1985)................................................................................................. 17

*Ogunleye v. Arizona*,
66 F. Supp. 2d 1104 (D. Ariz. 1999)....................................................................................... 17

*Phillips-Kerley v. City of Fresno*,
2022 WL 3371249 (E.D. Cal. Aug. 16, 2022) ................................................................... 15, 17

*Pottenger v. Potlatch Corp.*,
329 F.3d 740 (9th Cir. 2003)................................................................................................... 18

*Roe v. Wade*,
410 U.S. 113 (1973) .............................................................................................................. 14

*Sanders v. City of Newport*,
657 F.3d 772 (9th Cir. 2011)................................................................................................... 12

*Shoup v. Jag Welding, Fab & Servs., Inc.*,
2025 WL 77062 (S.D. Cal. Jan. 10, 2025).............................................................................. 12

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999)........................................................................................... 8, 9, 15

*Stanley v. Univ. of S. Cal.*,
13 F.3d 1313 (9th Cir. 1994)................................................................................................... 19

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010) .............................................................................................................. 10

*Teddy's Red Tacos Corp. v. Vazquez Solis*,
2019 WL 6895983 (C.D. Cal. Oct. 10, 2019)........................................................................... 7

*Telebrands Corp. v. Max Sales Grp., Inc.*,
  2009 WL 10702466 (C.D. Cal. Mar. 11, 2009) ...................................................................... 12

*Vyalkov v. United Guard Servs. of Am.*,
  2025 WL 3074138 (E.D. Cal. Nov. 4, 2025) ......................................................................... 16

*Winter v. Nat. Res. Def. Council*,
  555 U.S. 7 (2008) ............................................................................................................. 6, 11

*World Fin. Grp. Ins. Agency v. Olson*,
  2024 WL 730356 (N.D. Cal. Feb. 22, 2024)......................................................................... 14

**Federal Statutes**

29 U.S.C. § 2617(a)(1)(A)(i)(I)-(B) ............................................................................................. 7

42 U.S.C. § 2000e-5(g)(1)............................................................................................................ 7

COBRA ................................................................................................................................... 4, 16

FMLA............................................................................................................................... 7, 11, 12

**State Statutes**

ADA, FEHA, the Pregnant Workers Fairness Act........................................................................ 7

California FEHA, CFRA, and Pregnancy Disability Leave Law ................................................ 11

**Rules**

Fed. R. Civ. P. 65(c)................................................................................................................... 19

Rule 65 ....................................................................................................................................... 15

**Regulations**

29 C.F.R. § 825.216(a)................................................................................................................ 12

**Other Authorities**

Am. Arbitration Ass'n, *Employment/Workplace Arbitration Rules and Mediation
  Procedures* (2025), *available at*
  https://www.adr.org/media/aktbpg2y/2026_employment-arbitration-rules-and-
  mediation-procedures.pdf........................................................................................................ 7

Am. Arbitration Ass'n, *Employment/Workplace Arbitration Rules and Mediation
  Procedures* (2025), *available at*
  https://www.adr.org/media/aktbpg2y/2026_employment-arbitration-rules-and-
  mediation-procedures.pdf........................................................................................................ 8

*Bakersfield Californian* ...................................................................................................... 15, 16

## I.    INTRODUCTION

Plaintiffs ask this Court to invoke the extraordinary remedy of a temporary restraining order ("TRO") to halt employment decisions that were announced and implemented months ago, on May 20, 2026. That request should be denied. It is not a genuine request for narrow emergency relief, but rather a transparent attempt to eviscerate the at-will employment doctrine, evade the binding individual arbitration agreements that Plaintiffs voluntarily signed, preserve highly valuable unvested equity to which they are not entitled, and conscript this Court into supervising Meta's legitimate business decisions. Plaintiffs also make wildly outlandish and wholly unsupported claims about Meta using AI to determine which employees to include in their legitimate workforce reduction, but tellingly cite not a scintilla of evidence. And, of course, no such evidence exists. Meta did not use AI to determine which employees to include in its legitimate workforce reduction. Plaintiffs also ask the Court to enjoin Meta from terminating the 26 at-will Plaintiffs, and from altering their compensation, benefits, equity vesting, or protected-leave status, pending a preliminary-injunction hearing. That relief is extraordinary, mandatory in practical effect, and flatly unwarranted on this record.

Every form of relief Plaintiffs seek in this Court—reinstatement, preservation of compensation, continuation of benefits, maintenance of equity vesting and leave status—is available in the individual arbitrations that Plaintiffs themselves already have filed.[1] The federal and state employment statutes under which Plaintiffs bring their claims contain comprehensive remedies provisions that expressly authorize equitable relief, including reinstatement, front pay, and "make whole" relief–but only if Plaintiffs win their claims, and convince an arbitrator they are entitled to such relief. An arbitrator adjudicating those claims will have full authority to award every remedy Plaintiffs seek here. Plaintiffs' resort to this Court is therefore unnecessary, procedurally improper, and designed to extract a merits preview and preserve unvested equity before any arbitrator has had the opportunity to evaluate the facts and merits of their claims.

---

[1] If necessary, Meta will file motions to compel arbitration for each of the 26 Plaintiffs. Nothing in this opposition should be viewed as a waiver of Meta's rights to pursue arbitration. *See Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp. Inc.,* 2020 WL 620294, at *9 (C.D. Cal. Jan. 9, 2020) ("defending against attempts to obtain a TRO or preliminary injunction" is not inconsistent with a right to arbitrate).

Plaintiffs' filing not only undermines entirely the concept of at-will employment, but it also directly contradicts the binding arbitration framework to which Plaintiffs agreed. Plaintiffs concede that they signed valid and binding arbitration agreements with Meta (the "Agreement") containing class, collective, and representative-action waivers, and they recognize the Agreement requires arbitration of the exact claims at issue here. The Agreement further provides for AAA employment arbitration procedures, including the AAA's Optional Rules for Emergency Measures of Protection. Simply put, the very relief Plaintiffs seek here is available to them in arbitration and must be sought there. There is nothing remarkable about Plaintiffs' situation: if they are entitled to reinstatement or other equitable relief, their avenue for obtaining it is arbitration—not an emergency application to this Court that asks the Court to usurp the role of the arbitrator and override Congress and the state legislatures that enacted comprehensive remedies provisions for the very statutes Plaintiffs invoke. To the extent there is anything remarkable about Plaintiffs' filing, it is their Kafkaesque view that they can obtain extraordinary remedies from this Court first, and have an arbitrator adjudicate the merits of their claims later. That is not the law.

The carveout Plaintiffs invoke does not authorize the extreme relief they seek. The Agreement excludes only "claims for temporary or preliminary injunctive relief (including a temporary restraining order) *in aid of arbitration* or to maintain the status quo *pending arbitration*." Plaintiffs quote that language, but nothing in their Application is "in aid of arbitration," nor is there any "status quo" to preserve. Plaintiffs' theory is that they may first obtain emergency relief from a federal court, and only then arbitrate the very claims they have asked the Court to prejudge. That is not how the carveout works. The carveout presupposes an existing arbitration that the court's intervention supports; it does not permit Plaintiffs to aggregate 26 employees' individualized claims—based on different facts, work locations, and state laws— into a single consolidated proceeding that bypasses the arbitrator's authority to make a decision on the merits.

The Application is particularly egregious given that Plaintiffs are at-will employees. Granting the requested TRO would effectively override that relationship and transform at-will employment into judicially guaranteed tenure for any employee who alleges, without proof, that

protected leave, disability, or accommodation status was temporally proximate to a workforce reduction. This Court should decline the invitation to gut the at-will employment doctrine.

Plaintiffs' filing is also a transparent bid to prevent the inevitable forfeiture of valuable unvested RSUs that, pursuant to the written documentation governing them, Plaintiffs know they will lose once their terminations become effective. The Application reveals Plaintiffs' true objective: to weaponize the label of "emergency" relief to lock in equity that has not vested and that they have no legal right to retain. But that financial objective does not constitute irreparable harm. Unvested RSUs are not earned compensation, and in any event, alleged losses of compensation are classic economic injuries compensable through damages. Plaintiffs' effort to preserve unvested RSUs through a TRO is not an emergency; it is a litigation tactic designed to convert ordinary employment disputes into a basis for judicial control over Meta's employment decisions.

Granting the TRO would also set a dangerous and unworkable precedent for business operations. Plaintiffs brazenly request that the Court enjoin Meta from restructuring its workforce to meet legitimate business needs—something Meta plainly has the right to do. If Plaintiffs' theory is accepted, any at-will employee facing termination could obtain judicial intervention merely by alleging that protected leave, disability, or accommodation status was temporally proximate to a reduction in force ("RIF"), and then ask the court to freeze the employer's decisions while an "audit" is conducted. Once again, that is not the law. The requested order would freeze employment separations, compensation, benefits, leave status, and equity vesting for 26 employees, while inviting open-ended judicial supervision of Meta's selection process. It would be an unprecedented intrusion into core management functions and would chill every employer's ability to conduct lawful workforce reductions.

The Application also fails under every substantive factor. *First*, Plaintiffs cannot show a likelihood of success on the merits because their theory rests on nothing more than speculation, conjecture, and temporal coincidence—they took leave, disclosed a disability, or requested an accommodation, and they were later included in a companywide RIF. None of them know anything about the selection process that Meta used because they were not involved in it.

META'S OPPOSITION TO APPLICATION FOR
TEMPORARY RESTRAINING ORDER
[CASE NO. 3:26-CV-07122-WHO]

Accordingly, their self-serving declarations fall woefully short of demonstrating likely success on the merits. *Second*, Plaintiffs cannot show irreparable harm because their alleged injuries are textbook economic harms that are fully compensable through monetary relief (and again, their argument that they are not is mooted by the reality that equitable and emergency remedies are available if they prevail in arbitration). As explained below, courts *routinely hold* that loss of at-will employment is *not* irreparable harm, even if it means losing employer-provided health benefits, and Plaintiffs cite no legal authority to the contrary. Moreover, contrary to Plaintiffs' assertions, Meta's generous severance offers (including subsidized COBRA benefits) remain available to them, and even if they reject those offers, they can still maintain health insurance through COBRA, which exists for situations exactly like this one. *Third*, the equities favor Meta because Plaintiffs seek to freeze a large-scale workforce action that has been announced and implemented, imposing substantial operational disruption without any showing of wrongdoing by Meta. And the public interest favors enforcing arbitration agreements, preserving the extraordinary and exceptional nature of TRO relief, upholding the at-will employment doctrine, and declining to transform federal courts into supervisory bodies overseeing lawful business operations.

The Court should deny the Application in full. In the alternative, if the Court is inclined to grant any interim relief, it should require Plaintiffs to post a bond sufficient to protect Meta from the substantial costs of continued compensation, benefits, equity treatment, administrative burdens, and operational disruption occasioned by any injunction. As explained below, although quantifying the cost to Meta is difficult given the novel and unwarranted approach Plaintiffs are taking, Meta proposes a bond of at least $10 million, including to cover the cost of prolonging the at-will employment of these highly compensated 26 individuals, combined with the inevitable vesting of unvested RSUs to which they are not entitled, and interference with Meta's legitimate right to restructure its workforce to meet changing business needs and priorities.

## II.    BACKGROUND

Each Plaintiff chose to enter into an at-will employment relationship with Meta. Indeed, the arbitration agreements expressly confirm that they "do[] not in any way alter the 'at-will'

- 4 -

status of Employee's employment." Doe 16 Decl. ¶ 24, Ex. A. On April 23, 2026, Meta announced that it would lay off approximately 10 percent of the company as part of a comprehensive organizational transformation. Declaration of Bryan Sharkey ("Sharkey Decl."), ¶ 5. On May 20, 2026, Plaintiffs and thousands of other affected employees were notified that their roles had been eliminated. *Id.* ¶ 7. Plaintiffs lost access to Meta systems that same day and have not performed any work for Meta since. *Id.* Although Plaintiffs remain on payroll through their separation dates, which range from July 22 to August 20, that period reflects the statutorily required notice period rather than continued active employment. *Id.*

Contrary to Plaintiffs' baseless allegations about Meta's purported use of AI to make selection decisions (for which they cite no evidence), the RIF was a structural reorganization driven by business needs. Declaration of Linh Doan ("Doan Decl.") ¶ 4. Selection decisions were made by human business leaders based on documented, neutral criteria. *Id.* These leaders were only authorized to make selection decisions by applying the specific, pre-determined permissible criteria for the applicable decisional unit. *Id.* Those permissible criteria did not include leave status, leave history, disability status, or accommodation requests, or any other protected characteristic. *Id.* For each decisional unit, the business rationale for the restructuring determined which specific permissible criteria could be used. *Id.* Depending on the business unit and its organizational objectives, selection criteria included one or more of the following:

a. Job profile (*e.g.*, software engineer) or Level (*e.g.*, individual contributor ("IC") level 3; Manager ("M") level 1);

b. Historical performance, based on performance ratings and promotion history over a defined period. There was no AI-assisted "scoring" or "ranking" related to employee performance;

c. Most recent performance rating, with employees rated "Meets Most Expectations," "Meets Some Expectations," or "Does Not Meet Expectations" identified for potential impact;

d. Tenure, but only for the purpose of retaining longer-tenured employees depending on the decisional unit's need for institutional knowledge;

e. Location, consistent with business need;

META'S OPPOSITION TO APPLICATION FOR
TEMPORARY RESTRAINING ORDER
[CASE NO. 3:26-CV-07122-WHO]

f. Job function (*e.g*., a decisional unit could decide to retain only attorneys whose job function focused on a specific set of laws);

g. Specialized skills or experience critical to future business needs, such as specific technical certifications or other capabilities identified by business leaders; and

h. Spans and layers, *e.g*., reducing the number of direct reports per manager or hierarchical tiers to enhance speed, cost efficiency, and/or decision-making agility. *Id.* ¶ 5.

As part of the restructuring using the criteria above, Meta flattened structures, dissolved and reorganized teams, converted many manager roles to individual contributors, and redeployed more than 7,000 employees to new strategic initiatives. Sharkey Decl. ¶ 5. In the seven weeks since May 20, 2026, Meta has restructured around the eliminated positions. *Id.* ¶ 8. Teams have been reorganized or dissolved. Reporting lines have changed. *Id.* Managers have been converted to individual contributors. *Id.* Employees whose managers were eliminated or converted now report to new managers. *Id.* Meta's organizational systems were updated to reflect these changes shortly after they went into effect. *Id.* The organizational charts that existed on May 19, 2026 no longer reflect how Meta operates. *Id.*

## III.    LEGAL STANDARD

The same legal standard applies to a motion for a temporary restraining order and a motion for a preliminary injunction. *Brownfield v. Bonta*, 2021 WL 6621064, at *2 (N.D. Cal. Dec. 23, 2021). A plaintiff seeking either remedy "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id*. Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008).

The Ninth Circuit permits a "serious questions" formulation only where the plaintiff shows serious questions going to the merits, a balance of hardships that tips sharply in the plaintiff's favor, a likelihood of irreparable harm, and consistency with the public interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011). That sliding-scale approach does not eliminate the irreparable-harm requirement. *Id.* at 1135. Nor does it allow a court to

META'S OPPOSITION TO APPLICATION FOR
TEMPORARY RESTRAINING ORDER
[CASE NO. 3:26-CV-07122-WHO]

issue emergency relief based on speculation, conjecture, or generalized allegations. *See Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674–77 (9th Cir. 1988). "[C]ourts routinely deny requests for preliminary injunctions 'where the parties fundamentally disagree on the facts underlying the case.'" *Teddy's Red Tacos Corp. v. Vazquez Solis*, 2019 WL 6895983, at *2 (C.D. Cal. Oct. 10, 2019) (citing *SPS Techs., LLC v. Briles Aerospace, Inc.*, 2019 WL 1974902, at *8 (C.D. Cal. Mar. 11, 2019)).

Where, as here, the requested injunction would require affirmative action and alter the operative status of the parties after layoff notices have issued, the requested relief is mandatory and subject to heightened scrutiny. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc); *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009). Mandatory injunctions are "particularly disfavored" and should not be issued unless the facts and law "clearly favor" the moving party. *Garcia*, 786 F.3d at 740.

## IV.    PLAINTIFFS ARE NOT ENTITLED TO A TRO

### A.    Plaintiffs' Claims Belong in Arbitration, Which Provides the Relief They Seek

The threshold question is whether this Court should grant emergency relief that Plaintiffs can obtain in the arbitral forum to which they contractually committed. The answer is no. The federal and state employment statutes under which Plaintiffs assert claims—including Title VII, the FMLA, the ADA, FEHA, the Pregnant Workers Fairness Act, and their state-law equivalents—contain comprehensive remedies provisions that go far beyond monetary damages. These statutes expressly authorize equitable relief, including reinstatement, front pay, and "make whole" relief. *See, e.g.*, 42 U.S.C. § 2000e-5(g)(1) (Title VII remedies: "affirmative action as may be appropriate, which may include, but is not limited to, reinstatement…or any other equitable relief"); 29 U.S.C. § 2617(a)(1)(A)(i)(I)-(B) (FMLA remedies: "any wages, salary, employment benefits, or other compensation denied or lost" plus "such equitable relief as may be appropriate, including employment, reinstatement, and promotion"). The arbitrator adjudicating Plaintiffs' claims has full authority to award the same equitable remedies Plaintiffs seek here, but only *if* Plaintiffs prevail on their claims and convince an arbitrator they are entitled to equitable and injunctive relief - not *before* their claims have been adjudicated. Am. Arbitration Ass'n,

*Employment/Workplace Arbitration Rules and Mediation Procedures*, at R-46 (2025), *available at* https://www.adr.org/media/aktbpg2y/2026_employment-arbitration-rules-and-mediation-procedures.pdf ("The arbitrator may grant any remedy, relief, or outcome that the parties could have received in court."). Plaintiffs improperly ask this Court to usurp the role of the arbitrator and override the remedial frameworks that Congress and the state legislatures enacted.

Additionally, and critically, the Agreement specifically confirms that emergency relief is available within the arbitral process. The Agreement provides for AAA's Optional Rules for Emergency Measures of Protection, which authorize an emergency arbitrator to "order or award any interim or conservatory measures," including injunctive relief. Doe 16 Decl. ¶ 24, Ex. A; *see also* Am. Arbitration Ass'n, *Employment/Workplace Arbitration Rules and Mediation Procedures*, at R-35 (2025), *available at* https://www.adr.org/media/aktbpg2y/2026_employment-arbitration-rules-and-mediation-procedures.pdf. Thus, the very contract Plaintiffs signed provides a mechanism for obtaining interim relief in the arbitral forum—precisely the kind of relief Plaintiffs now seek from this Court. Plaintiffs argue they may bypass that mechanism entirely and instead ask a federal court to adjudicate the merits of their claims under the guise of "preserving the status quo." But the law does not permit Plaintiffs to obtain relief first, and have the merits of their claims decided later. Where, as here, "an arbitrator is authorized under the governing rules of arbitration to grant the equivalent of the interim relief sought—and is in a position to do so—it is not appropriate for a district court to grant preliminary injunctive relief." *Genias Graphics Gumb & Co. KG v. Tecplot, Inc.*, 2013 WL 12092542, at *1 (W.D. Wash. Aug. 21, 2013) (citing *Toyo Tire Holdings of Americas Inc. v. Continental Tire N. Am., Inc.*, 609 F.3d 975, 981 (9th Cir. 2010) and *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725–26 (9th Cir. 1999)) (court denied the PI and, on its own, dismissed the case; noting that "the Court simply does not understand why [plaintiff] has not sought immediate equitable relief from the arbitrator, as it is clearly permitted to do"); *see also Graphic Commc'ns Conf.—Int'l Bhd. of Teamsters Loc. 404M v. Bakersfield Californian*, 541 F. Supp. 2d 1117, 1125–26 (E.D. Cal. 2008) (denying PI to prevent termination pending arbitration because the arbitrator would have full authority to reinstate employees); *Simula*, 175 F.3d at 725

- 8 -

(affirming denial of PI where "provisional relief is available from the [arbitrator]"). Indeed, "it would [be] inappropriate for the district court to grant preliminary injunctive relief" here. *Simula*, 175 F. 3d at 726; *Genias Graphics Gumb & Co. KG*, 2013 WL 12092542, at \*2 ("it would be inappropriate for the Court to intervene here because it is not necessary to do so").

Plaintiffs purport to rely on the arbitration agreement's injunctive relief carveout, but that carveout is conditional, individual, and narrow by design: it excludes only "claims for temporary or preliminary injunctive relief (including a temporary restraining order) **in aid of arbitration** or to maintain the status quo **pending arbitration**, **in a court of competent jurisdiction** in accordance with applicable law." Compl. ¶ 38 (emphasis added); Doe 16 Decl. ¶ 24, Ex. A. Plaintiffs quote that carveout as their ticket to federal court, but it does not create an all-purpose license to aggregate 26 disputes into a single TRO proceeding.

*First*, the phrase "in a court of competent jurisdiction in accordance with applicable law" preserves, rather than overrides, individualized forum and choice-of-law limits. Doe 16 Decl. ¶ 24, Ex. A. The agreement provides that the agreement and claims arising under it are governed by "the law of the state where Employee works or worked at the time the arbitrable dispute or claim arose," and it separately provides that arbitration shall take place "in the county in which the Employee worked at the time the arbitrable dispute or claim arose." *Id.* Plaintiffs here did not all live or work in California, and nothing in the agreement adopts California federal court as a universal forum or law for all employees; it instead points to each employee's own work location and applicable state law. Plaintiffs' Application confirms that they are not proceeding under one common state-law regime, because it invokes California statutes and regulations for some theories while separately identifying "New York Plaintiffs." Appl. for TRO at 6, 16. The carveout therefore does not permit Plaintiffs to collapse different employees, work locations, and state-law regimes into a single multi-plaintiff filing in this district merely by labeling it a TRO.

*Second*, the agreement does not authorize consolidation or joint prosecution of individual employees' claims. The agreement is entered into between Meta and the named "Employee," repeatedly defines the parties as "Employer" and "Employee," and requires arbitration of disputes between that individual Employee and Meta. Doe 16 Decl. ¶ 24, Ex. A. It also provides that, "no

META'S OPPOSITION TO APPLICATION FOR
TEMPORARY RESTRAINING ORDER
[CASE NO. 3:26-CV-07122-WHO]

claims may be brought or maintained on a class, collective or representative basis either in a court of law or arbitration," and that the parties waive any right to submit, initiate, or participate as a plaintiff, claimant, or member in a class or collective action. *Id.* To the extent Plaintiffs characterize their filing as ordinary joinder rather than a class, collective, or representative action, that distinction still does not help them; the agreement contains no affirmative consent to aggregate 26 employees' individual claims, which seek to invoke different federal and state laws and statutes, into one court proceeding, and under the FAA courts may not infer consent to aggregate adjudication from silence or ambiguity. *See Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184–89 (2019); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684–87 (2010).

Reading the carveout as Plaintiffs propose would invert the Agreement's structure and nullify its core purpose. Plaintiffs would transform a narrow exception for interim relief in support of individual arbitration into a vehicle for consolidated federal-court litigation governed by no single state's law, aggregating 26 different at-will employees' individual claims, and displacing the authority of the arbitrator to decide the very claims—and fashion the very remedies—the Agreement assigns to arbitration. Even if the Court were to agree with Plaintiffs that this "clause specifically authorizes the parties to seek preliminary equitable relief in court rather than from the arbitrator," the Court should still conclude that Plaintiffs "should pursue [their] request for equitable relief in arbitration rather than in this Court." *Genias Graphics Gumb & Co. KG*, 2013 WL 12092542, at *2 (denying PI). This Court should reject Plaintiffs' attempt to convert the carveout into an escape hatch from arbitration and deny the TRO on this ground alone.

**B.       Plaintiffs Do Not Show Likelihood of Success on the Merits of Their Claims**

Plaintiffs cannot carry their burden to show a likelihood of success on any pleaded claim. The *only* evidence they offer in support of the claims is their own self-serving declarations, which on their face are based on speculation and conjecture, combined with their own subjective view that Meta should not have selected them for termination. They also improperly aggregate 26 materially different Plaintiffs whose claims turn on individualized allegations that Meta categorically denies. Indeed, their merits theory reduces to temporal coincidence, and their

META'S OPPOSITION TO APPLICATION FOR
TEMPORARY RESTRAINING ORDER
[CASE NO. 3:26-CV-07122-WHO]

evidentiary showing falls far short of the "clear showing" required for emergency relief.

### 1. Plaintiffs Must Make Individualized Showings, Not Blanket Assertions

Plaintiffs do not make the individualized evidentiary showing required for any single Plaintiff—much less all of them. *See Winter*, 555 U.S. at 20-23. Plaintiffs' own pleadings show that they are differently situated. They worked in different states, held different jobs in different organizations, and assert different federal and state claims. The Complaint divides Plaintiffs into separate groups, including "California Plaintiffs," "Washington Plaintiffs," "New York Plaintiffs," "Pregnancy- and Sex-Discrimination Plaintiffs," and "FMLA-Eligible Plaintiffs." Compl. ¶ 44. Those groupings confirm Plaintiffs' claims turn on different statutes, work locations, leave histories, accommodation requests, and alleged decisionmaking facts. Those differences matter. Some Plaintiffs assert FMLA theories, some assert California FEHA, CFRA, and Pregnancy Disability Leave Law theories, and others proceed under Washington, New York, D.C., Florida, Illinois, or Pennsylvania law. Some allege protected leave, others allege disability accommodation issues, and some allege discouragement from taking leave. A plaintiff-specific showing is therefore indispensable.

Plaintiffs' TRO Application ignores these differences and asks the Court to treat all 26 Plaintiffs as a single undifferentiated block. The Application refers to "Plaintiffs" collectively, asserts that each took or requested protected leave or an accommodation within 24 months, and then demands that the Court enjoin Meta from separating any of them. Appl. for TRO at 4–5. That is not how the law works. Each Plaintiff must independently establish likelihood of success on the particular claim he or she asserts. *See Winter*, 555 U.S. at 20–22. Plaintiffs' generalized allegation that they were all selected in the same RIF does not establish that any particular Plaintiff was unlawfully selected, much less that all 26 were.

### 2. Plaintiffs' Declarations Rest on Speculation and Temporal Proximity, Not Causation or "Proof" Their Claims Have Merit

Plaintiffs' merits showing also fails because their allegations are nothing more than temporal proximity and speculation. Plaintiffs allege that each Plaintiff took or requested leave, or received an accommodation, at some point within the 24 months before the RIF. From that

- 11 -

chronology alone, Plaintiffs conclude—without evidence—that protected leave "must have" caused their selection. That is not causation; it is conjecture. Plaintiffs have no personal knowledge of how Meta made RIF selection decisions because they were not part of those decisions, and otherwise have no evidence regarding how they were made. By contrast, Meta has submitted evidence in support of this Opposition confirming the legitimate criteria Meta used, which does not include AI to "score, rank, and select employees" full stop, and certainly did not use AI inputs to unlawfully disadvantage leave takers. Doan Decl. ¶ 11.  Moreover, Meta categorically denies Plaintiffs' allegations. In a companywide RIF affecting thousands of employees, the fact that some of those employees had taken leave at some point, over the course of the last two years,  does not remotely establish that protected leave caused any individual selection.

For leave-interference and retaliation theories, Plaintiffs must show far more than the bare fact that leave preceded a termination notice. The FMLA and similar state statutes do not confer immunity to at-will employees from a legitimate RIF, and an employee has no greater right to reinstatement or continued employment than he or she would have had absent protected leave. *See* 29 C.F.R. § 825.216(a); *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011). Plaintiffs recognize the relevant standard as a "negative factor" rule, but they do not—and cannot—show that protected leave was actually used as a negative factor for each or any Plaintiff. Appl. for TRO at 8. Instead, Plaintiffs allege "on information and belief" that Meta did not neutralize certain inputs for protected leave, did not exclude leave-takers from the selection cohort, and did not pause the system for individualized review. *Id.* at 2. Allegations "on information and belief" are not evidence. They do not establish likelihood of success. *See Shoup v. Jag Welding, Fab & Servs., Inc.*, 2025 WL 77062, at *3 (S.D. Cal. Jan. 10, 2025) ("[plaintiff]'s conclusory allegations in the [c]omplaint and subsequent [m]otion are insufficient to satisfy the relevant standard for issuance of a preliminary injunction where concrete factual allegations are required"); *Telebrands Corp. v. Max Sales Grp., Inc.*, 2009 WL 10702466, at *9 (C.D. Cal. Mar. 11, 2009) ("Claims 'on information or belief' are insufficient for Plaintiff to meet its burden on a motion for preliminary injunction"); *CleanFish, LLC v. Sims*, 2019 WL 2716293, at *4 (N.D. Cal.

META'S OPPOSITION TO APPLICATION FOR
TEMPORARY RESTRAINING ORDER
[CASE NO. 3:26-CV-07122-WHO]

June 28, 2019) (denying TRO and motion to seal; "Conclusory allegations alone are not sufficient to demonstrate a likelihood of success on the merits.").

For discrimination and disparate-impact theories, Plaintiffs likewise must show causation and, where applicable, reliable proof of disparate impact. *See, e.g.*, *Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1486 (9th Cir. 1993) (quoting *Rose v. Wells Fargo & C*o., 902 F.2d 1417, 1421 (9th Cir. 1990)) (in a disparate impact case, "plaintiffs must do more than merely raise an inference of discrimination before the burden shifts; they 'must actually prove the discriminatory impact at issue' . . . by prov[ing] the existence of adverse effects of the policy, [] prov[ing] that the impact of the policy is on terms, conditions, or privileges of employment of the protected class, [] prov[ing] that the adverse effects are significant, and [] prov[ing] that the employee population in general is not affected by the policy to the same degree").

Plaintiffs' inflammatory allegations about AI do not strengthen their arguments. First and foremost, Plaintiffs cite no evidence at all in support of their allegations that Meta used AI to make selection decisions. That is because no such evidence exists. Nor do Plaintiffs establish that Meta lacked legitimate business reasons for the RIF or for the criteria used in the selection process. Nor could they. The RIF was a structural reorganization driven by business needs. Doan Decl. ¶ 4. Selection decisions were made by human business leaders based on documented, neutral criteria. *Id.* ¶¶ 4-6. Leave and accommodation status were not criteria for selection. *Id.* ¶ 11. Meta already has explained to Plaintiffs' counsel that Meta did not use AI to score employees or to select them for inclusion in the RIF, but they filed their Application anyway. *Id.*; *see also* Declaration of Andrea Mazingo Regarding Notice to Defendant, Ex. C. If Plaintiffs disagree with those facts, their remedy is to challenge them in arbitration–not to obtain a prejudgment from this Court.

Indeed, Plaintiffs' invocation of "AI" does not cure the reality that they have no evidence to demonstrate a causal link between any protected status or activity and their selection for termination—it obscures it. Plaintiffs assert that Meta used "Metamate," "second-brain" agents, keystroke- and activity-monitoring data, AI-token-usage dashboards, and algorithmically assisted ranking and calibration. Appl. for TRO at 2. But merely describing a set of alleged tools is not

- 13 -

META'S OPPOSITION TO APPLICATION FOR
TEMPORARY RESTRAINING ORDER
[CASE NO. 3:26-CV-07122-WHO]

proof. Plaintiffs must still establish that protected leave, pregnancy, disability, or accommodation status *caused* the selection of each Plaintiff under the statute that Plaintiff invokes. The Application does not, and cannot, do so. Plaintiffs' strategy of generating alarm and widespread media coverage about "AI" in the hope the Court will infer unlawfulness does not transform their baseless Application into a meritorious one. The question is not whether Meta used technology in its RIF process; the question is whether Meta's process violated the law. Plaintiffs have offered no evidence that it did because, quite simply, it did not.

### 3.     Plaintiffs' Evidence Is Insufficient

Plaintiffs' evidentiary showing is woefully inadequate for the extraordinary relief they seek. Plaintiffs' showing depends only on their own self-serving declarations, which do not even include their real names.[2]

Plaintiffs cite their own self-serving observations that scores dropped after vacations or protected leave, their own accounts of ratings and leave history, and their own views about how Meta's systems operated. Those declarations may describe individual employment histories, but they do not establish the companywide selection criteria, the relevant comparator populations, the statistical effect of those criteria, the decisionmakers' reasons for selecting each Plaintiff, or whether any Plaintiff would have been selected absent the alleged protected leave or accommodation status. Self-serving declarations and anecdotal examples are not a substitute for documentary evidence, statistical analysis, or reliable proof tying protected status to each selection decision. *See World Fin. Grp. Ins. Agency v. Olson*, 2024 WL 730356, at *4 (N.D. Cal. Feb. 22, 2024) (denying TRO; "a district court should be wary of issuing an injunction based solely upon allegations and conclusory affidavits submitted by plaintiff").

Plaintiffs' requested relief confirms the weakness of their evidentiary showing. In the Complaint's prayer for relief, Plaintiffs ask the Court to order an "independent auditor" to

---

[2] Meta is separately opposing Plaintiffs' Administrative Motion to Proceed Under Pseudonym and to File Under Seal. Privacy interests significant enough to merit anonymity involve matters of a sensitive and highly personal nature, which are not present here. *Compare Roe v. Wade*, 410 U.S. 113 (1973) (abortion); *Doe v. Lally*, 467 F. Supp. 1339 (D. Md. 1979) (prison rape); *Doe v. Carleson*, 356 F. Supp. 753 (N.D. Cal. 1973) (illegitimacy and paternal abandonment); *with 4 Exotic Dancers v. Spearmint Rhino*, 2009 WL 250054 (C.D. Cal. 2009) (denying exotic dancers anonymity despite interest in keeping their occupations private).

META'S OPPOSITION TO APPLICATION FOR
TEMPORARY RESTRAINING ORDER
[CASE NO. 3:26-CV-07122-WHO]

examine inputs, weights, outputs, proxies, and leave-neutralized recomputations, and to identify any Plaintiff whose selection cannot be justified on leave- and accommodation-neutral grounds. Mot. for Prelim. Inj. at 33. That request is a tacit admission that Plaintiffs do not possess the proof needed to establish causation or likely success. Plaintiffs are asking for discovery disguised as injunctive relief. Rule 65 does not permit Plaintiffs to obtain an injunction first and develop the merits later; that reverses the standard and turns the extraordinary remedy of a TRO into a fishing expedition. In any event, if Plaintiffs believe an audit or investigation is warranted, that is a matter for the arbitrator—who has full authority to order discovery—not for this Court.

### C.     Plaintiffs Will Not Be Irreparably Harmed

Even if Plaintiffs could demonstrate a likelihood of success on the merits—which they cannot—the Application would still fail because Plaintiffs have not shown they will suffer irreparable harm. This failure is independently dispositive. Irreparable harm is "arguably the 'single most important prerequisite for the issuance of a preliminary injunction.'" *KCG Americas LLC v. Zhengquan Zhang*, 2017 WL 8294011, at *2 (N.D. Cal. Apr. 10, 2017) (citation omitted). Critically, all of the injuries Plaintiffs allege are compensable through the comprehensive statutory remedies available in the arbitrations Plaintiffs themselves intend to pursue. The availability of adequate remedies in arbitration defeats irreparable harm. *See, e.g., Simula*, 175 F.3d at 725 (affirming denial of PI where relief is available from the arbitrator); *Mission Viejo Florist, Inc. v. Orchard Supply Co., LLC*, 2016 WL 9275407, at *6 (C.D. Cal. Nov. 17, 2016) (denying PI where harms could be compensated by damages; emergency relief "should not be granted if irreparable harm is absent and there exists an adequate remedy at law"); *Bakersfield Californian*, 541 F. Supp. 2d at 1117 (denying PI where arbitrator had full authority to reinstate employees).

Plaintiffs identify five categories of alleged harm: loss of health coverage, loss of statutory leave and reinstatement rights, forfeiture of unvested equity, loss of work authorization, and the claimed irreversibility of a mass termination. None constitutes irreparable harm. The law is clear that termination, lost wages, and lost benefits do not constitute irreparable harm because they can be remedied through damages, back pay, or comparable relief. *See Phillips-Kerley v. City of*

- 15 -

*Fresno*, 2022 WL 3371249, at *2 (E.D. Cal. Aug. 16, 2022) (denying TRO to prevent termination; "[l]oss of employment [] generally does not constitute irreparable harm"); *see also Bakersfield Californian*, 541 F. Supp. 2d at 1125–26 (denying PI to prevent termination pending arbitration; "loss of employment [] is not irreparable harm and will not support a claim by the union for injunctive relief"); *Vyalkov v. United Guard Servs. of Am.*, 2025 WL 3074138, at *3 (E.D. Cal. Nov. 4, 2025) ("loss of employment" is "a purely economic harm that is generally not considered irreparable" and, if termination is later proven unlawful, "damages can compensate for the loss after the fact"); *Int'l Bhd. of Elec. Workers, Loc. 1269 v. YP Advert. & Publ'g, LLC*, 2016 WL 706006, at *2 (N.D. Cal. Feb. 23, 2016) (denying TRO for employees facing termination). The same principle applies to loss of health benefits. *See Belzer v. Am. Airlines*, 2007 WL 685865, at *2 (E.D. Cal. Mar. 5, 2007) (denying PI; "loss of health benefits does not ordinarily constitute irreparable harm"). Moreover, Plaintiffs ignore altogether that Meta offered each of them incredibly generous severance packages, which they chose not to accept. Contrary to Plaintiffs' inaccurate assertion, those severance offers–which include both monetary payments and subsidized COBRA benefits–remain open to Plaintiffs. Declaration of Erin Connell ("Connell Decl."), ¶ 3, Ex. A. And to be clear, Plaintiffs are not losing access to health insurance. Even if they reject Meta's severance offers,  Plaintiffs can obtain COBRA continuation coverage—they would only lose Meta-subsidized coverage. Declaration of Cindy Pulido ("Pulido Decl.") ¶¶ 9-10, 15-16. Indeed, COBRA continuation exists to address exactly the type of situations that Plaintiffs face here.

Plaintiffs' reliance on *Chalk v. U.S. Dist. Ct. Cent. Dist. of Cal.*, 840 F.2d 701 (9th Cir. 1988), is misplaced. *Chalk* involved a teacher with AIDS who had a limited amount of time to enjoy the relief he sought—return to the teaching setting—and the court found that the "nature of Chalk's affliction" meant that "delay, even if only a few months," was time irretrievably lost. *Id.* at 710. Plaintiffs' alleged injuries are categorically different. They are facing ordinary employment-termination consequences that are fully compensable if they win on the merits of their employment law claims. Again, they will not lose health benefits because COBRA continuation is available to them. *See* Pulido Decl.  ¶¶ 15-16. Nor do Plaintiffs' claimed personal

and family disruptions transform compensable employment injuries into irreparable harm. *Ogunleye v. Arizona*, 66 F. Supp. 2d 1104, 1111 (D. Ariz. 1999) (denying preliminary injunction where plaintiff alleged termination uprooted her family and damaged her career because loss of employment, even if accompanied by financial distress, does not establish irreparable harm); *O'Hailpin v. Hawaiian Airlines, Inc.*, 583 F. Supp. 3d 1294, 1302–03 (D. Haw. 2022) ("discharge and its associated consequences do not ordinarily constitute irreparable harm, no matter how severely they may affect a particular individual.").

### 1.    Plaintiffs' Delay in Seeking Relief Undercuts Allegations of Irreparable Harm

Plaintiffs' own chronology fatally undermines any claim of emergency. Plaintiffs allege that Meta notified them on May 20, 2026 of their terminations. Appl. for TRO at 3. Plaintiffs therefore had notice of the challenged decisions for months before filing this Application. A party that sits on its rights for nearly two months cannot credibly claim an emergency requiring extraordinary judicial intervention. *See Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir.1985); *Phillips-Kerley,* 2022 WL 3371249, at *2 ("claim of irreparable harm [was] fatally undercut by fact that [Plaintiff] waited...17 days from receiving notice" to file).

### D.    The Balance of Hardships and Public Interest Weighs Strongly Against the Requested Temporary Restraining Order

The balance of equities strongly favors Meta. Plaintiffs ask the Court to require Meta to maintain employment, compensation, benefits, equity vesting, and leave status for 26 Plaintiffs indefinitely, while an "independent audit" is conducted and arbitrations proceed. Mot. for Prelim. Inj. at 3. Plaintiffs characterize Meta's burden as "at most, a delay" and "modest administrative cost." Appl. for TRO at 14. That is fantasy. Plaintiffs ask the Court to judicially freeze part of a companywide restructuring affecting thousands of employees after notices have been issued, roles eliminated, and teams dissolved. *See* Sharkey Decl.  ¶ 7. The operational disruption would be significant, and the precedent would be worse: any subset of employees in any future RIF could seek similar relief simply by alleging that protected leave was temporally proximate to their selection. The financial disruption would be equally as significant. *Id.* ¶¶ 10–11. Allowing

- 17 -

Plaintiffs to remain employed for just one extra month–through August 15, 2026–would cost Meta an additional several million dollars for RSUs that would not otherwise vest, and to which Plaintiffs, who have not worked for nearly two months, are not entitled. *Id.* ¶ 11. Additionally, for each month the Court allows Plaintiffs to remain employed, Meta will pay nearly $600,000 to Plaintiffs for their salary and benefits, despite the fact that Plaintiffs have not been, and will not be, working for Meta. *Id.*

Meta has a legitimate business interest in implementing its reduction in force, reallocating resources, and completing workforce actions after proper notice has been provided. Plaintiffs ask this Court to enjoin Meta from restructuring its workforce to meet legitimate business needs— something Meta plainly has the right to do. Plaintiffs cite no legal authority empowering a court to halt a lawful RIF on this basis, because no such authority exists. Plaintiffs' own filing acknowledges that Meta announced the RIF as part of a capital reallocation toward AI investment. Appl. for TRO at 14. Plaintiffs may disagree with that business judgment, but their disagreement does not give them a veto. Courts do not sit as super-personnel departments, and employment laws do not prohibit employers from making business judgments, including reductions in force, absent proof of unlawful discrimination or interference. *See Pottenger v. Potlatch Corp.*, 329 F.3d 740, 747–49 (9th Cir. 2003); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281–85 (9th Cir. 2000). Plaintiffs have offered no such proof. And if they believe they do have evidence of unlawful conduct, the place to present it is in arbitration.

Simply put, Plaintiffs' asserted harms are employment and compensation consequences that can be remedied if Plaintiffs prove liability. Those allegations do not outweigh Meta's interest in completing an already-announced companywide workforce action, particularly where Plaintiffs have not made an individualized showing of likely success or irreparable harm.

**E.        Plaintiffs' TRO Would Upend, Rather than Preserve, the Status Quo**

The purpose of a TRO is to preserve the status quo until a final determination on the merits. *Lucore v. US Bank, NA for Certificate Holders of Bank of Am. Funding Corp. Mortg. Pass-Through Certificates, Series 2006-H*, 2018 WL 2215430, at *1 (S.D. Cal. May 14, 2018). A preliminary mandatory injunction, which mandates an affirmative act that changes the status quo,

META'S OPPOSITION TO APPLICATION FOR
TEMPORARY RESTRAINING ORDER
[CASE NO. 3:26-CV-07122-WHO]

is "particularly disfavored" and should not issue unless the facts and law "clearly favor" the moving party. *Garcia*, 786 F.3d at 740. Plaintiffs claim that they are merely seeking to preserve the status quo, but that is not true. The status quo is not "continued employment." Plaintiffs are at-will employees who have not worked since May 20, 2026, and the restructuring has already taken place. *See* Sharkey Decl. ¶ 7. The actual status quo is that Plaintiffs are on notice of their termination and scheduled to separate. To give Plaintiffs what they seek—active employment in positions that have been eliminated—would require the Court to mandate affirmative action by Meta, overriding both the at-will employment relationship and the organizational restructuring Meta has already implemented. That is a quintessential mandatory injunction. *See, e.g.*, *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (holding plaintiff's request for reinstatement was a request for a mandatory injunction). If Plaintiffs are ultimately entitled to reinstatement or comparable relief, the arbitrator can order it after hearing the evidence—but this Court should not do so on a TRO record that lacks any individualized proof of wrongdoing.

### F.      If Injunctive Relief Is Granted, Plaintiffs Must Post a Substantial Bond

For the reasons stated above, the Application should be denied in full. If the Court nevertheless grants any interim relief, the order should be narrowly limited to Plaintiffs who make an individualized evidentiary showing, should avoid compelling equity vesting or other benefits not otherwise due, should impose no broader preservation requirement than Meta's ordinary litigation obligations, and should require Plaintiffs to post a meaningful bond. Plaintiffs seek an order that would prevent Meta from finalizing noticed separations and would require continuation of employment-related benefits and equity-related status. Those burdens are not nominal. Any interim order should therefore require security of at least $10 million, which even still would not be sufficient to cover Meta's costs, administrative burdens, and damages if the injunction is later determined to have been wrongful. Fed. R. Civ. P. 65(c).

### V.      CONCLUSION

For all of the foregoing reasons, the Application should be denied in full. Every form of relief Plaintiffs seek is available in the individual arbitrations they have confirmed they intend to pursue, but only if they win on the merits of their claims, and convince an arbitrator that equitable

and injunctive relief is appropriate. This Court should not usurp the role of the arbitrator, override Plaintiffs' at-will employment agreements, or set a precedent that empowers courts to halt lawful workforce reductions based on nothing more than temporal proximity and self-serving declarations.

Dated: July 15, 2026

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____
Erin M. Connell
Attorneys for Defendant

META'S OPPOSITION TO APPLICATION FOR
TEMPORARY RESTRAINING ORDER
[CASE NO. 3:26-CV-07122-WHO]