ERIN M. CONNELL (SBN 223355)
econnell@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:  +1 415 773 5700
Facsimile:  +1 415 773 5759

LAUREN M. GOLDSMITH (SBN 293269)
lgoldsmith@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone:  +1 212 506-5000

DIXIE TAUBER (SBN 321692)
dtauber@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capitol Mall, Suite 3000
Sacramento, CA 95814-4497
Telephone:  +1 916 329 7982

Attorneys for Defendant
META PLATFORMS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DOES 1 THROUGH 26,<br><br>        Plaintiffs,<br><br>    v.<br><br>META PLATFORMS, INC.,<br><br>        Defendant. | Case No. 3:26-cv-07122-WHO<br><br>**DECLARATION OF BRYAN SHARKEY IN SUPPORT OF DEFENDANT META PLATFORMS, INC.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER** |

I, Bryan Sharkey, declare as follows:

1. I am Vice President, Workforce Strategy & Insights at Meta Platforms, Inc. ("Meta"), a position I have held since March 22, 2021. In my current role, I lead workforce strategy, analytics, and talent development functions across all of Meta, as well as company efforts in AI workforce transformation. Prior to Meta, I led workforce planning, analytics, and projects for Southwest Airlines and worked as an adjunct faculty member at the Community College of Allegheny County. I hold a Master of Business Administration from the Florida Institute of Technology.

2. I submit this declaration in support of Meta's Opposition to Plaintiffs' Application for Temporary Restraining Order. I have personal knowledge of the facts stated herein and could testify competently to them.

3. I was directly involved in planning and executing Meta's May 2026 reduction in force ("RIF"). I am familiar with the business rationale for the RIF, the organizational restructuring that accompanied it, and the current state of Meta's workforce.

4. Plaintiffs seek to be restored to positions that no longer exist. The status quo they describe has not existed since May 20, 2026. The RIF was not a simple headcount reduction—it was a fundamental restructuring of how Meta operates.

**The RIF Restructured the Company**

5. On April 23, 2026, Meta announced it would lay off approximately 10% of the company as part of a comprehensive organizational transformation. The purpose of this reorganization was to improve efficiency and offset investments the company was making, including standing up entirely new organizations. Meta flattened organizational structures, dissolved and reorganized teams, converted many manager roles to individual contributors, and redeployed thousands of employees to new strategic initiatives. The goal: smaller, faster-moving teams with fewer management layers.

6. Positions were identified for elimination based on business need and organizational efficiency.

DECLARATION OF BRYAN SHARKEY
3:26-cv-07122-WHO

**The Status Quo Plaintiffs Describe No Longer Exists**

7.      On May 20, 2026, Plaintiffs and thousands of other affected employees were notified that their positions were being eliminated. Their system access—including email and all internal tools—was revoked that same day. Although they remain on payroll through their separation dates (ending either July 22, 2026 or August 20, 2026 depending on work location), that pay covers the statutorily required notice period under state and federal WARN laws. They have not been and are not performing any work for Meta.

8.      In the seven weeks since May 20, 2026, Meta has restructured around the eliminated positions and redeployments. Teams have been fundamentally reorganized, downsized, or dismantled. Reporting lines have changed. Certain managers have been converted to individual contributors. Employees whose managers were separated or converted now report to a new manager. Meta's organizational systems were updated to reflect these changes shortly after they went into effect. The organizational charts that existed on May 19, 2026 no longer reflect how Meta operates.

9.      Plaintiffs ask the Court to keep them in their "positions." But those positions no longer exist. There is no status quo; the status quo changed seven weeks ago on May 20, 2026 when Meta made these business and organizational decisions to drive efficiencies and invest in strategic initiatives.

10.      Granting the relief Plaintiffs seek would require Meta to create new positions for 26 individuals to perform work that Meta has determined does not meet its business needs. Depending on the plaintiff, they would have to be inserted into team structures that have been fundamentally reorganized, or be assigned to report to managers who no longer have people manager responsibilities or who may no longer remain at the company. Similarly, Plaintiffs who previously held managerial roles will find that their former teams have been completely reorganized or disbanded and that their direct reports have been redeployed elsewhere within the organization. Plaintiffs would be assigned to workflows, initiatives, and projects that have already been permanently reassigned, deprioritized, or deprecated. This would be severely disruptive to employees who have already been assigned to new managers and/or who have already absorbed

- 3 -

DECLARATION OF BRYAN SHARKEY
3:26-cv-07122-WHO

new responsibilities, create security risks by reintegrating individuals who have been separated for seven weeks, require significant unbudgeted expense, and divert resources from the strategic business initiatives the RIF was executed to achieve. That is not preserving the status quo. It is requiring Meta to reverse business restructuring decisions that were made months ago.

11. In addition, granting the relief Plaintiffs seek would require Meta to continue paying Plaintiffs their salary and benefits, and allow their Restricted Stock Units ("RSUs") to vest, even though they have not been and are not working and therefore the RSUs have not been earned. For each month the Court allows Plaintiffs to remain employed, the additional expense to Meta would be approximately $600,000 in salary and benefits. Further, Meta's next vesting date is August 15, 2026. If the Court allows all Plaintiffs to remain employed through that date, including those whose employment is scheduled to terminate on July 22 (Does 1-9, 11, 13, 15-25), Plaintiffs would vest thousands of shares—worth $2,286,663.75 as of today's stock price–to which they are not entitled.

12. The balance of hardships favors Meta. Plaintiffs seek positions that do not exist. Meta would be forced to unwind a restructuring affecting thousands of employees, disrupting operations and undermining the efficiency gains and business objectives the RIF was designed to achieve.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 15, 2026, at Anna, Texas.

_Bryan Sharkey_
_____

Bryan Sharkey

DECLARATION OF BRYAN SHARKEY
3:26-cv-07122-WHO