ERIN M. CONNELL (SBN 223355)
econnell@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     +1 415 773 5700
Facsimile:     +1 415 773 5759

LAUREN M. GOLDSMITH (SBN 293269)
lgoldsmith@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone:     +1 212 506-5000

DIXIE TAUBER (SBN 321692)
dtauber@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capitol Mall, Suite 3000
Sacramento, CA  95814-4497
Telephone:     +1 916 329 7982

Attorneys for Defendant
META PLATFORMS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DOES 1 THROUGH 26,<br><br>                    Plaintiffs,<br><br>        v.<br><br>META PLATFORMS, INC.,<br><br>                    Defendant. | Case No. 3:26-cv-07122-WHO<br><br>**DECLARATION OF CINDY PULIDO IN SUPPORT OF DEFENDANT META PLATFORMS, INC.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER** |

1. I am Director, Health and Wellbeing at Meta Platforms, Inc. ("Meta"). I joined Meta in March 2014 and became a Director in August 2017. Prior to joining Meta, I was Director, Global Benefits and Employee Mobility at SanDisk. My current responsibilities include overseeing strategy, program design, vendor management, compliance, and financials for Meta's U.S. health, mental health, and family benefits portfolio. I submit this declaration in support of Meta's Opposition to Plaintiffs' Application for Temporary Restraining Order. I have personal knowledge of the facts stated in this declaration, except where stated on information and belief, and if called as a witness I could and would testify competently to them.

2. In my role, I am responsible for the administration of Meta's U.S. group health benefits, including health coverage continuation under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). I am also familiar with the benefits-related provisions in the separation agreements offered to employees selected for separation in Meta's May 2026 reduction in force, including the COBRA subsidy provision.

3. Plaintiffs seek temporary injunctive relief based in part on alleged loss of employer-sponsored health coverage. This declaration explains that (a) COBRA continuation coverage remains available to eligible employees regardless of whether they sign a separation agreement, and (b) the only difference is who pays the premiums.

## COBRA Continuation Coverage Is Available to All Eligible Employees

4. COBRA is a federal law that allows eligible former employees and their dependents to continue group health coverage for a defined period after a qualifying event, such as termination of employment. 29 U.S.C. § 1161 et seq.; 26 U.S.C. § 4980B. Under Meta's plans, employees who lose coverage due to termination (other than for gross misconduct) may continue medical, dental, vision, Health Care FSA, Limited Purpose FSA, and Lyra Mental Health benefits through COBRA for up to 18 months.

5. Eligible dependents, including domestic partners, may also continue coverage through COBRA.

6. When an employee's Meta coverage ends, the separated employee receives a letter explaining COBRA options. The separated employee has 60 days to elect COBRA coverage, and

DECLARATION OF CINDY PULIDO
3:26-cv-07122-WHO

45 days after election to make the first payment. After coverage begins, premiums are due monthly with a 30-day grace period.

7.    Critically, COBRA coverage is retroactive to the date Meta coverage ended, provided the separated employee timely elects and pays. In addition, they may seek reimbursement for covered medical expenses incurred during any gap between the end of active coverage and the activation of COBRA.

8.    Under COBRA, the plans work the same way they do for employed participants; the only difference is cost.

### A Separation Agreement Is Not Required to Elect COBRA

9.    An eligible participant does not need to sign a separation agreement to elect COBRA continuation coverage. If the separated employee is eligible for COBRA and satisfies the election and payment requirements, COBRA is available regardless of whether that individual signs a separation agreement.

10.    The separation agreement affects only who pays the premiums—not whether coverage is available.

### The Separation Agreement Provides a COBRA Subsidy

11.    For those employees selected for separation in Meta's May 2026 reduction in force who sign a separation agreement and satisfy its conditions, Meta pays the COBRA premiums for medical, dental, vision, and Lyra Mental Health benefits for up to 18 months (6 months of "COBRA Coverage Duration" plus 12 months of "Additional COBRA Subsidy").

12.    The subsidy begins on the first day of the month following the separated employee's termination date and continues for the period specified in the agreement, provided the separated employee remains eligible and timely elects COBRA.

13.    If a separated employee pays COBRA premiums before the separation agreement becomes effective and later satisfies the agreement's requirements, Meta reimburses eligible premiums paid for the subsidized period.

14.    Electing COBRA is completely within the separated employee's discretion; they are not required to enroll in COBRA and may choose other coverage options.

**Plaintiffs Will Not Lose Access to Health Coverage**

15.    The end of employment does not mean an eligible employee lacks any mechanism to continue with the same health coverage they had while employed. COBRA continuation coverage remains available to any eligible Plaintiff who timely elects and pays (or, if the separation agreement becomes effective, whose premiums are subsidized by Meta).

16.    The only difference between an active employee and a separated employee who elects COBRA is who pays the benefits premiums (unless the separated employee has an effective separation agreement and, in that case, there is no difference for a period of up to 18 months).

**Active Coverage Continues Through Month-End**

17.    Under Meta's health plans, active employee coverage continues through the last day of the month in which employment terminates. For example:

a.    For employees whose termination date is July 22 or July 31, 2026, active coverage continues through July 31, 2026, and COBRA coverage (if elected) begins retroactively as of August 1, 2026.

b.    For employees whose termination date is August 20, 2026, active coverage continues through August 31, 2026, and COBRA coverage (if elected) begins retroactively as of September 1, 2026.

18.    Lyra Mental Health coverage is included in all COBRA medical plans and does not need to be elected separately.

**Meta Has Not Blocked Any Plaintiff from Electing COBRA**

19.    Meta has not taken any action to prevent any Plaintiff from electing COBRA. BenefitConnect, Meta's COBRA administrator, mails election materials to eligible separated employees after the qualifying event is processed, explaining how to elect coverage, the applicable deadlines, and the required premium amounts.

20.    In sum, every eligible Plaintiff can continue the same health coverage they had when they were active employees through COBRA after employment ends and for a period of up to 18 months. A separation agreement is not required to elect COBRA—only to receive Meta's premium subsidy. Any Plaintiff who elects COBRA and pays premiums before a separation

- 3 -

DECLARATION OF CINDY PULIDO
3:26-cv-07122-WHO

agreement becomes effective will be reimbursed once the subsidy applies.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 15, 2026, at San Jose, California.

*Cindy Pulido*

_____

Cindy Pulido

DECLARATION OF CINDY PULIDO
3:26-cv-07122-WHO