UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DOE 1, et al.,

              Plaintiffs,

     v.

META PLATFORMS, INC.,

              Defendant.

Case No.  26-cv-07122-WHO

**ORDER ON TEMPORARY RESTRAINING ORDER**

Re: Dkt. No. 2[1]

Plaintiff Does 1 through 26 (collectively, "plaintiffs") allege that defendant Meta Platforms, Inc. ("Meta") engaged in employment discrimination by utilizing artificial intelligence ("AI") to make termination decisions that disproportionately impact employees with disabilities. Before the court is plaintiffs' motion for a temporary restraining order ("TRO").  For the reasons described below, the TRO is DENIED.

## BACKGROUND

In April 2026, Meta announced that in an effort to "remake itself into an 'A.I.-first' company," "approximately 8,000 employees—roughly ten percent of its workforce—would be laid off on May 20, 2026."  Complaint ("Compl.") [Dkt. No. 1] ¶ 45 (the "mass reduction in force" or "RIF").  Several thousands of other employees would also be "reassigned to new artificial-intelligence initiatives."  *Id.*  The complaint alleges that "Meta used a constellation of internal artificial-intelligence-assisted systems to score, rank, and select employees for inclusion on [its]

---

[1] This Order only addresses plaintiffs' request for a TRO.  *See* Dkt. No. 2.  I will address plaintiffs' motions for leave to proceed under pseudonym [Dkt. No. 4] and motions to seal [Dkt. Nos. 10–11] at the parties' preliminary injunction hearing.  Plaintiffs' administrative motion seeking leave to file a supplemental declaration for Does 16 and 18, *see* Dkt. No. 22, is DENIED with respect their motion for a TRO.  It was filed too late.  It will be considered in conjunction with plaintiff's motion for a preliminary injunction.

termination list." *Id.* ¶ 47.  These systems included "'Metamate,' an internal large-language-model assistant; employee-trained 'second brain' agents that ingest each employee's communications and documents to replicate the employee's output; algorithmic productivity scoring drawn from keystroke, screen-content, mouse, browser-history, messaging, and email data captured continuously from Meta-issued devices; internal dashboards displaying employee-level AI-token consumption; and AI-assisted performance-review and calibration tools that have substantially supplanted the prior manager-driven calibration process." *Id.*

Plaintiffs are "twenty-six current and former Meta employees, each of whom Meta selected for separation in the RIF, and each of whom—within the twenty-four months preceding the RIF—took, requested, or was approved to take statutorily protected leave; attempted to take protected leave and suffered interference; or requested or received a reasonable accommodation for a disability." *Id.* ¶ 3.  Plaintiffs initiated this lawsuit on July 13, 2026, bringing claims against Meta for violations of various state and federal employment and disability laws.  *See id.* ¶¶ 116–66.[2] They recognize that their claims must be arbitrated, and they have initiated arbitration proceedings

[2] Plaintiffs' causes of action include: interference of the use of protected leave as a negative factor under the Family Medical Leave Act (the "FMLA"), 29 U.S.C. § 2615(a)(1) (Count I); retaliation under the FMLA, 29 U.S.C. § 2615(a)(2) (Count II); disparate treatment under Title VII of the Civil Rights Act of 1964 and the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000e-2(a), 2000e(k) (Count III); disparate impact under Title VII and the Pregnancy Discrimination Act, 42 U.S.C. § 2000e-2(k), 2000e(k) (Count IV); violation of the Pregnant Workers Fairness Act, 42 U.S.C. §§ 2000gg *et seq.* (Count V); disability discrimination, failure to accommodate, and retaliation under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12112(a), (b)(5), 12203 (Count VI); disability discrimination, failure to accommodate, and failure to engage in the interactive process under the California Fair Employment and Housing Act of 1959 ("FEHA"), Cal. Gov't Code §§ 12940(a), (m), (n) (Count VII); sex and pregnancy discrimination and unlawful use of an automated-decision system under FEHA, Cal. Gov't Code § 12940(a); 2 Cal. Code Regs. §§ 11008, 11008.1, 11017, 11020) (Count VIII); interference and retaliation under the California Family Rights Act, Cal. Gov't Code § 12945.2 (Count IX); interference and retaliation under the California Pregnancy Disability Leave Law, Cal. Gov't Code § 12945 (Count X); violations of the Washington Law Against Discrimination, RCW ch. 49.60 (Count XI); retaliation, interference, and unlawful inclusion in may layoff order under Washington's Paid Family and Medical Leave, RCW 40A.40.010, 50A.35.010, RCW 49.45.060 (Count XII); violation of N.Y. Exec. Law § 296 (Count XIII); violation of N.Y.C. Admin. Code § 8-107 (Count XIV); retaliation under N.Y. Workers' Comp. Law §§ 203-a, 203-b (Count XV); violation of D.C. Code § 2-1402.11 (Count XVI); violation of the Florida Civil Rights Act, Fla. Stat. § 760.10 (Count XVII); disability discrimination and failure to accommodate under the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.* (Count XVIII); disability discrimination, failure to accommodate, and failure to engage in the interactive process under the Pennsylvania Human Rights Act, 43 P.S. § 951 *et seq.* (Count XIX); declaratory relief (Count XX); and preliminary and permanent injunctive relief in aid of arbitration (Count XXI).

2

with the American Arbitration Association (AAA).  Here, they seek a temporary restraining order:

1. Enjoining Meta from separating, terminating, or negatively altering the compensation, benefits, equity vesting, or protected-leave status of the named Plaintiffs, pending a hearing on Plaintiffs' concurrently filed Motion for Preliminary Injunction;
2. Directing Meta to preserve all data, models, training data, decision logs, calibration materials, workforce-planning documents, monitoring data, second-brain training inputs and outputs, AI-token-usage dashboards, and all communications relating to the May 2026 reduction in force and the algorithmic selection process; and
3. Setting a date and time for a hearing on an order to show cause why a preliminary injunction should not issue, at the Court's earliest available date.

Motion for Temporary Restraining Order ("TRO Mot.") [Dkt. No. 2] at 18.  They also request that I waive the bond requirement or impose only a nominal bond.  *Id.*

**LEGAL STANDARD**

The standard for issuing a TRO is largely identical to the standard for issuing a preliminary injunction.  *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017).  Petitioners seeking such relief must establish that (1) they are likely to succeed on the merits; (2) they are "likely to suffer irreparable harm" in the absence of irreparable relief; (3) the "balance of equities tips in [their] favor"; and (4) an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008).  "[I]f a plaintiff can show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor and the other two *Winter* factors are satisfied.'"  *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

Although the substantive standards for both motions are similar, the timeframe for a TRO is different. While a preliminary injunction remains in effect pending final resolution of the litigation, a TRO "should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer." *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

United States District Court
Northern District of California

Federal Rule of Civil Procedure 65(b)(1) allows a TRO to be issued without notice to the opposing party—i.e., *ex parte*—only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and the "movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

### DISCUSSION

I will briefly review the *Winter* factors. Plaintiffs have established that there are at least "serious questions going to the merits" of their claims. *All. for the Wild Rockies*, 865 F.3d at 1217. They have not demonstrated irreparable injury at this juncture, however, such that the balance of equities tips in their favor.

The parties dispute whether Meta utilized AI in deciding to terminate plaintiffs' employment. In its opposition to the TRO, Meta submitted a declaration from Linh Doan, Director of Human Resources Business Partner Enablement at Meta, who was directly involved in planning the May 2026 RIF. *See* Declaration of Linh Doan in Support of Meta's Opposition to TRO [Dkt. No. 18-3], ¶ 2. She states that selection decisions in the RIF were "made by human business leaders based on documented, neutral criteria," including:

    a. Job profile (*e.g.*, software engineer) or Level (*e.g.*, individual contributor ("IC") level 3; Manager ("M") level 1).
    b. Historical performance, based on performance ratings and promotion history over a defined period. There was no AI-assisted "scoring" or "ranking" related to employee performance.
    c. Most recent performance rating, with employees rated "Meets Most Expectations," "Meets Some Expectations," or "Does Not Meet Expectations" identified for potential impact.
    d. Tenure, but only for the purpose of retaining longer-tenured employees depending on the decisional unit's need for institutional knowledge.
    e. Location, consistent with business need.
    f. Job function (*e.g.*, a decisional unit could decide to retain only attorneys whose job function focused on a specific set of laws).
    g. Specialized skills or experience critical to future business needs, such as specific technical certifications or other capabilities identified by business leaders.
    h. Spans and layers, *e.g.*, reducing the number of direct reports per manager or hierarchical tiers to enhance speed, cost efficiency, and/or decision-making agility.

*Id.* ¶¶ 4–5. Doan confirmed, and counsel for Meta reiterated at oral argument, that "[n]o Plaintiff

United States District Court
Northern District of California

United States District Court
Northern District of California

was selected based on leave status, disability, or any other protected characteristic," and no "selection decision [was] made by 'AI.'" *Id.* ¶ 11.

Plaintiffs submitted their own declarations that they believe prove otherwise. One employee noted that "public news reports and internal employee anecdotes revealed a pattern of Meta's prior layoffs targeting individuals [seeking] leave." Declaration of Doe 18 ("Doe 18 Decl.") [Dkt. No. 3-18] ¶ 11. That same employee previously participated in "calibration discussions regarding employee performance ratings and retention selections," noted that "termination determinations [were] substantially subjective," and emphasized that "Meta failed to conduct a comparable series of calibration discussions prior to and in connection with the May 2026 reduction in force." *Id.* ¶¶ 19–20. Other employees noted that it was their understanding that the "June 2026 review cycle was to be AI-based," and that Meta was incorporating AI into their performance review cycles. Declaration of Doe 13 ("Doe 13 Decl.") [Dkt. No. 3-13] ¶ 14; *see also* Declaration of Doe 22 ("Doe 22 Decl.") [Dkt. No. 3-22] ¶ 10 ("Although I do not know of a formula between [Meta's internal ratings of employees by their adoption of Meta AI tools] and performance rating, I was told that performance evaluation and calibration would be based in part on these classifications . . . I also understood, from my own observation, that an employee's score on Meta's artificial-intelligence usage metrics would decline during periods when the employee was on leave or otherwise out of the office."); Declaration of Doe 25 ("Doe 25 Decl.") [Dkt. No. 3-25] ¶ 14 ("Meta . . . announced internally that, going forward, its AI tools would generate the first drafts of employees' performance reviews, including the reviews due in June 2026, and encouraged employees to train the AI on their work so that it would have enough context to draft those reviews.").

Meta's declarations that it did not use AI in any way with respect to the RIF are unequivocal. Plaintiffs understandably do not have the evidence to rebut what Meta says it has done with respect to RIF—they were not in the rooms where it happened. Discovery during the arbitration process will be necessary to test the credibility of Meta's declarants. On this record, plaintiffs have not shown a likelihood of success on the merits, but rather a "serious question[]" going towards the merits of their claims. *All. for the Wild Rockies*, 865 F.3d at 1217.

Next, without downplaying the serious consequences of being laid off from employment, I do not find that the plaintiffs have suffered or will suffer irreparable harm. For one thing, Meta notes that the AAA arbitrators have equitable powers and the ability to authorize all the relief sought by plaintiffs if their claims prove to be meritorious. And in this regard, "simply showing some 'possibility of irreparable injury' fails to satisfy" the irreparable harm factor. *Nken v. Holder*, 556 U.S. 418, 434–35 (2009) (citing *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998), *abrogated on other grounds*, *Singh v. Holder*, 658 F.3d 879 (9th Cir. 2011)). Rather, plaintiffs must provide sufficient evidence showing that they will be "irreparably injured absent" injunctive relief. *Id.* at 426.

Plaintiffs identify five irreparable harms that they argue would stem from not issuing a TRO in their favor: (1) loss of employer-sponsored health insurance; (2) loss of protected leave time; (3) loss of unvested equity compensation; (4) loss of employment visas and immigration status; and (5) the loss of the ability to "undo" Meta's RIF once finalized. TRO Mot. at 9–14. Loss of health care, employment, protected leave, and unvested restricted stock units ("RSUs") are not "irreparable" harms because each can be remedied through damages, back pay, or other comparable relief in the arbitration process. *See Phillips-Kerley v. City of Fresno*, No. 1:18-cv-00438-AWI-BAM, 2022 WL 3371249, at *2 (E.D. Cal. Aug. 16, 2022) ("Loss of employment [] generally does not constitute irreparable harm"); *Belzer v. Am. Airlines*, No. 2:06-cv-2884-GEB-GGH, 2007 WL 685865, at *2 (E.D. Cal. Mar. 5, 2007) ("[L]oss of health benefits does not ordinarily constitute irreparable harm"). With respect to loss of health insurance, Meta has shown that all separated employees are eligible for COBRA. *See* Declaration of Cindy Pulido in Support of Meta's Opposition to TRO ("Pulido Decl.") [Dkt. No. 18-2]. That plaintiffs may be forced to pay for COBRA out of pocket as they wait for a decision in their arbitration proceedings does not constitute an irreparable harm.

Loss of immigration status is different. Four of the plaintiffs have employment-based, nonimmigrant visas sponsored by Meta. *See* Doe 26 Decl. ¶ 15; Doe 15 Decl. ¶¶ 23, 31; Doe 9 Decl. ¶ 20; Doe 4 Decl. ¶ 16. Plaintiffs argue that "each is left with, at most, a single discretionary grace period of up to sixty days" after their final day "to secure new sponsored employment,

6

United States District Court
Northern District of California

change status, or depart the United States." Motion for Preliminary Injunction ("PI Mot.") [Dkt. No. 3] at 28. They also note that they are prohibited from working at all without new sponsorship. *Id.* (citing 8 C.F.R. § 214.1(l)(2)). Should those four individuals be forced to leave the United States, plaintiffs argue that "participat[ing] in this litigation or arbitration . . . becomes a practical impossibility." *Id.* at 28–29. Moreover, "back pay does not restore lawful status, and no damages award returns a family to the country." *Id.* at 29.

Meta responds that "Plaintiffs' claimed personal and family disruptions [do not] transform compensable employment injuries into irreparable harm." Opposition to Plaintiffs' Motion for TRO ("Oppo.") [Dkt. No. 18] at 17. It relies on two cases. First, in *Ogunleye v. Arizona*, a professor at the University of Arizona claimed that "she was discriminated against as a result of her support for an ousted faculty member and that she was treated differently than two male colleagues." 66 F. Supp. 2d 1104, 1106 (D. Ariz. 1999). The professor filed a motion for a preliminary injunction, which the court rejected. *Id.* at 1111. On the question of irreparable harm, the professor argued that she would suffer irreparable harm because her "family will be uprooted with three of her children in high school and her career will be permanently damaged." *Id.* The court disagreed, noting that "the requisite irreparable harm is not established in employee discharge cases by financial distress or inability to find other employment, unless truly extraordinary circumstances are shown." *Id.* (quoting *Holt v. Cont'l Grp., Inc.*, 708 F.2d 87, 90 (2d Cir. 1983)).

Meta also cites *O'Hailpin v. Hawaiian Airlines, Inc.*, 583 F. Supp. 3d 1294 (D. Haw. 2022). *O'Hailpin* concerned a vaccine mandate imposed by Hawaiian Airlines in wake of the COVID-19 pandemic. *Id.* at 1298. Plaintiffs were employees who either opposed vaccination or did not receive an accommodation or exemption to the airline's vaccination policy. *See id.* at 1298–1301. Plaintiffs filed a TRO seeking to enjoin the policy. *Id.* at 1301. A court in the District of Hawai'i denied the TRO. When considering irreparable harm, the court noted that "discharge and its associated consequences do not ordinarily constitute irreparable harm, no matter how 'severely they may affect a particular individual.'" *Id.* at 1302 (quoting *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974)). Instead, injunctive relief should be reserved for "genuinely

7

United States District Court
Northern District of California

extraordinary situation[s]," not awarded in routine cases. *Id.* The court concluded that any "possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.* at 1302–03 (quoting *Sampson*, 415 U.S. at 90).

This case is notably different from *O'Hailpin* and *Ogunleye.* Plaintiffs face an imminent threat of removal from the United States, absent finding new employment in the next sixty days. Their harm is more than "speculation," as Meta characterized at oral argument. These immigration conditions likely constitute irreparable harm and may warrant injunctive relief. I cannot make that determination now because I lack sufficient information on the reasons for their inclusion in the RIF; at the end of this Order I describe how I will get that information.

Finally, on this record, the balance of the equities and public interest factors do not tip sharply in plaintiffs' favor. Plaintiffs' hardships include "loss of employment, healthcare, vesting equity, visa sponsorship, statutory reinstatement rights, and the protected leave time itself." TRO Mot. at 14. Those are challenging harms, but they can be remedied through the arbitration process. Meta's harms include maintaining employment for the twenty-six plaintiffs as this case proceeds, as well as payment of "several million dollars" in unvested RSUs and compensation. Oppo. at 17–18. While the loss of millions of dollars is not significant for a large company like Meta, plaintiffs have not established that this factor weighs so heavily in their favor that it warrants a TRO on the "sliding scale" approach.

Accordingly, in consideration of the *Winter* factors, I find that plaintiffs are not entitled to the extraordinary relief of a TRO.

## CONCLUSION

Plaintiffs' motion for a TRO is DENIED. They have moved for a preliminary injunction. Meta shall file an opposition to plaintiffs' preliminary injunction motion by August 10, 2026, with any replies filed by August 17, 2026. I will hold a hearing on the motion for preliminary injunction on August 24, 2026 at 10:00am PDT on Zoom.

At that hearing, I may reconsider the determinations stated in this Order based on any additional evidence the parties provide regarding whether and how AI was used in an improper

manner to cause the RIF of the plaintiffs. In this regard, I direct Meta to submit a declaration explaining how and why the four Doe plaintiffs with Meta-sponsored employment visas (Does 4, 9, 15, and 26) were selected for termination by July 23, 2026. Plaintiffs may file declarations in response regarding those four individuals and in reply to the declarations Meta filed to oppose the motion for a temporary restraining order by August 6, 2026.

**IT IS SO ORDERED.**

Dated: July 17, 2026

William H. Orrick
United States District Judge

United States District Court
Northern District of California

9