Andrea Mazingo, SBN 300824
LUMEN LAW CENTER, P.C.
8605 Santa Monica Blvd PMB 832031
West Hollywood, CA 90069
Telephone: (310) 269-6739
Email: andi@lumenlawcenter.com

Barbara E. Cowan, SBN 251942
WORKPLACE ADVOCATES, P.C.
9431 Haven Avenue, Suite 100
Rancho Cucamonga, CA 91730
Telephone: (909) 983-4102
Email: brandi@wpa.law

Rebecca Houlding (admitted *pro hac vice*)
HOULDING LAW PC
431 Classon Avenue, Suite 1B
Brooklyn, NY 11238
Telephone: (646) 561-9119
Email: rebecca@houldinglaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DOES 1 THROUGH 26,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:26-cv-07122-WHO<br><br>**SUPPLEMENTAL DECLARATION OF DOE 26 [redacted] IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge: Hon. William H. Orrick |



Doc ID: 71de36306bfc32447247f1ee2840bb73c5c8fd85

I, [redacted] declare as follows:

1. I am over the age of eighteen and a resident of [redacted] New York. I have personal knowledge of the matters stated in this declaration, except as to those matters stated on information and belief, and as to those matters I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2. I previously submitted a declaration in support of Plaintiffs' Motion for a Preliminary Injunction, executed on June 30, 2026 (my "Prior Declaration"). The statements in my Prior Declaration remain true and correct. I submit this supplemental declaration in response to the Declaration of Linh Doan Pursuant to the Court's July 17, 2026 Order (the "Doan Declaration"), which I have reviewed, and in particular paragraphs 27 through 32. I have also now reviewed my personnel records as produced by Meta to my counsel, and this declaration draws on those records; true and correct copies of the produced records cited below are attached to this declaration as **Exhibits A through D**.

3. The Doan Declaration states that I was selected based on "job level and historical performance," and that my "historical performance was lower than those in [my] cohort who were not included in the RIF." Unlike its discussion of other plaintiffs, the Doan Declaration does not state what my performance ratings actually were. My complete performance history at Meta consists of two review cycles. I joined Meta on [redacted] For the 2025 mid-year cycle, I received an "At or Above Expectations" performance signal (Gordana Tesic, submitted August 5, 2025, **Exhibit A**, Meta_Lumen_06143). As I understood Meta's review scales, "At or Above Expectations" is the mid-year label for the same tier that is labeled "Meets All" or "Consistently Met Expectations" on the year-end scale, and my Prior Declaration ¶ 5 described this signal using the equivalent "Meets All" label. The written rationale for the mid-year signal states: ' [redacted]



Doc ID: 71de36306bfc32447247f1ee2840bb73c5c8fd85

you received an At or Above Expectations performance signal, which reflects your positive contributions to the team and the company," and that I "demonstrated a strong ability to deliver high-quality results"; a peer is quoted that my "work in H1 has been of high quality and very trustworthy." For the 2025 year-end cycle, I received a "Consistently Met Expectations" rating (Mitchell Coviensky, submitted March 3, 2026, **Exhibit B**, Meta_Lumen_06138; 2025 Year-end Performance Letter, **Exhibit C**, Meta_Lumen_06137). My two ratings were thus consistent, at the same meets-expectations tier, across my entire tenure. I never received a rating below expectations, was never placed on a performance improvement plan or coaching plan, never received a written warning, and never received negative performance feedback.

4. No one at Meta has ever told me what criteria were used to select me. The May 20, 2026 notice did not state them. No manager, HR business partner, or document ever told me the time period covered by "historical performance," which reviews or ratings were considered, how different periods were weighted, or how—if at all—the roughly six months I spent on protected leave during the review period would be treated in that assessment.

5. The entire 2025 year-end review process for me took place while I was on [redacted] I submitted my self-assessment and provided my manager, [redacted] with the names of peer reviewers. My review was written and submitted on March 3, 2026—while I was on leave—and in March 2026, still on leave, I sent a message to [redacted] through Meta's internal work chat to request the written performance letter for that cycle.

6. **What the written review says.** The full written rationale for the rating on which the Doan Declaration relies states: "Congrats on completing your first year at Meta. You earned a Consistently Met Expectations rating. You drove impact through your work understanding Feed

Recs Photos and Carousels, Responsiveness and Negative Signals, and did a great job collaborating with [redacted] on a number of asks. You also lead initiatives to re-vamp our metric collections and streamlining operations for the Feed team." **Exhibit B**, Meta_Lumen_06138. The review's impact section credits me with, among other things, designing the format deletion test that "directly demonstrated that P&C in Feed Recs was incremental to user value"; leading the investigation that resolved a metric discrepancy, about which an [redacted] is quoted: "She delivered critical insights around the BBR<>rVPV metric divergence in Feed Relevance holdouts"; and operational improvements producing an approximately "80% reduction in time for [redacted] to pull weekly on-call metric data" and a simplified experiment-review process "impacting 100s of QEs per half." Its strengths section quotes peers describing my "ability to get work done quickly & autonomously" and my "strong sense of ownership." Its growth section concerns communication style only, and even there quotes a reviewer stating that my "analysis quality is already very high." Nothing in the written review identifies any failure to meet the expectations of my role or level. And nowhere does the review mention my leave: it evaluates my 2025 "year" without noting any adjustment, proration, or accommodation for my leave period.

7. **Meta's incentive pay based on that rating.** Meta's 2025 Year-end Performance Letter, dated on the basis of the same rating, awarded me a salary increase of [redacted]% effective February 23, 2026; a 2025 bonus computed with an individual multiplier of [redacted]%—my full individual bonus target—totaling [redacted] restricted stock units, valued by Meta at approximately [redacted], vesting quarterly beginning May 15, 2026. **Exhibit C**, Meta_Lumen_06137. Meta granted this compensation, including a new four-year equity award, weeks before selecting me for termination based, it now says, on that same rating.



Doc ID: 71de36306bfc32447247f1ee2840bb73c5c8fd85

8. **AI in the review instrument itself.** The impact question on my year-end 2025 review form asked my manager: "What impact did [redacted] achieve in 2025? Include impact achieved, progress against business goals, and significant contributions to how we work at Meta, which includes *AI-driven impact*, smart risk-taking and effective teamwork." **Exhibit B**, Meta_Lumen_06138 (emphasis added). The corresponding question on my 2025 mid-year review form, six months earlier, asked only about "impact achieved, progress against business goals, and contributions to how we work at Meta," with no reference to AI. **Exhibit D**, Meta_Lumen_06144.

9. My Prior Declaration states that my team consisted of approximately eight people, including my manager, and that three of us were selected for termination. Prior Decl. ¶ 10. The three selected were me, [redacted] at the [redacted] level, with similar scopes of work.

10. I joined the team in January 2025. [redacted] joined in approximately March 2025, and [redacted], joined in approximately April 2025.

11. The other three individual contributors on the team—[redacted], and [redacted]—joined the team approximately one month before the reduction in force, and each was retained. Each holds the title [redacted] level. I do not know [redacted] I understand that [redacted] transferred to the team from elsewhere within Meta, so her overall tenure at Meta may exceed one year.

12. I do not know whether the three retained individual contributors were included in the same decisional unit or cohort as me, what criteria if any were applied to them, or what "historical performance" information could have existed for them after a few weeks on the team.

The Doan Declaration does not identify the cohort's composition, its size, which employees were considered but not selected, or the performance distribution within it.

13. To my knowledge, neither [redacted] leave before my leave began in November 2025. [redacted] told me, however, that he was planning his wedding, the ceremony for which is scheduled for October 2026; he had been planning it over the course of the past year, and we spoke about it from time to time. I do not know whether any wedding-related absence was already reflected on team calendars or in coverage plans before May 20, 2026.

14. My manager, [redacted], had a child in November 2025 and thereafter took parental leave intermittently, in blocks of approximately one month on and one month off. When I returned from my own leave on May 8, 2026, he was on a parental leave block that I understood ran through approximately May 25, 2026—meaning that he was on parental leave on May 20, 2026, when I received the layoff notice. Because he was on leave, my re-onboarding after my return was handled primarily by the [redacted] rather than by my manager. I understand that he remains on leave as of the date of this declaration. The Doan Declaration states that, due to the reorganization, my "manager became an individual contributor" and that the team as previously structured no longer exists. Doan Decl. ¶ 32.

15. The Doan Declaration identifies the decision-maker for my decisional unit as a "VP, Head of Analytics & Insights, Instagram." Doan Decl. ¶ 28. I understand that position to be held by [redacted] leave in the months before May 2026.

16. My leave was visible through ordinary workplace channels. I blocked my leave period as out-of-office time on my Meta calendar, where it was publicly visible to other employees.

As stated in my Prior Declaration, I told my then-manager, [redacted] in approximately August or September 2025, and the October 2025 reorganization of my team occurred as my leave approached. Prior Decl. ¶¶ 6–7.

17. As stated in my Prior Declaration, I acknowledged Meta's activity monitoring when I returned from leave. Prior Decl. ¶ 12. Specifically, on or about May 8, 2026, when I logged in upon my return, a pop-up window appeared that would not disappear until I selected "yes." I do not recall the exact wording of the notice. Before my leave, I used Meta's internal artificial-intelligence tool MetaMate from time to time, including to find [redacted] and to improve the [redacted] When I caught up with colleagues after returning from leave, they encouraged me to use the "Analytics Agent," and some encouraged me to use Claude.

18. I never received from Meta any document describing a "decisional unit" or listing the job titles and ages of employees selected and retained in the reduction in force—whether attached to my separation agreement, delivered under separate cover, made available through the alumni portal, or sent by email. The only plan document I received is the Meta Platforms, Inc. Severance Plan document and summary plan description, which contains no such disclosure.

19. **My immigration status.** My Prior Declaration described my dependence on Meta's visa sponsorship. Prior Decl. ¶ 15. [redacted]



Doc ID: 71de36306bfc32447247f1ee2840bb73c5c8fd85

20. **Developments since my Prior Declaration.** I have had no communication with Meta or its immigration counsel regarding my immigration status since May 20, 2026. The one change I am aware of is that my Meta-sponsored [redacted] received a Request for Additional Evidence; I am not able to see the details of that request, because only the petitioner—Meta—can access them. Separately, [redacted]

21. **My family and coverage.** My children depend on my income. My husband and my children are covered under my Meta-sponsored health insurance, which I will lose upon separation. [redacted]

22. **My job search, and what I face.** I have been actively interviewing since May 20, 2026. My greatest obstacle is that many employers [redacted], which sharply limits the positions for which I can even apply. If I am ultimately unable to secure sponsored employment [redacted], I would lose nearly everything I have built. I have lived in the United States for more than ten years and have developed my professional network and my career here. My husband and children, [redacted] would remain in the United States, so returning would separate me from my family. [redacted]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on Aug 6 2026, at [redacted], New York.

[redacted]

[redacted]



Doc ID: 71de36306bfc32447247f1ee2840bb73c5c8fd85

*Does 1–26 v. Meta Platforms, Inc.*
Case No. 3:26-cv-07122-WHO (N.D. Cal.)
Supplemental Declaration of Doe 26 in Support of Plaintiffs' Reply in Support of Motion for Preliminary Injunction

---

# EXHIBIT A

2025 Mid-Year Performance Review of Doe 26

(Meta_Lumen_06143)

**FILED UNDER SEAL**

This exhibit consists entirely of confidential material and is omitted in full from the public version of this filing. An unredacted copy of this exhibit is being lodged under seal pursuant to Plaintiffs' Administrative Motion to File Under Seal, Civil Local Rule 79-5, and Judge Orrick's Standing Order on Administrative Motions to File Under Seal (Sept. 2022), and served on Defendant concurrently. Because this exhibit is sought to be sealed in its entirety, and no portion of it is proposed for public disclosure, the highlighting convention of Civil Local Rule 79-5(d)(1)(D), which identifies partial redactions, is inapplicable to it.

*Does 1–26 v. Meta Platforms, Inc.*
Case No. 3:26-cv-07122-WHO (N.D. Cal.)
Supplemental Declaration of Doe 26 in Support of Plaintiffs' Reply in Support of Motion for Preliminary Injunction

---

# EXHIBIT B

2025 Year-End Performance Review of Doe 26

(Meta_Lumen_06138)

**FILED UNDER SEAL**

This exhibit consists entirely of confidential material and is omitted in full from the public version of this filing. An unredacted copy of this exhibit is being lodged under seal pursuant to Plaintiffs' Administrative Motion to File Under Seal, Civil Local Rule 79-5, and Judge Orrick's Standing Order on Administrative Motions to File Under Seal (Sept. 2022), and served on Defendant concurrently. Because this exhibit is sought to be sealed in its entirety, and no portion of it is proposed for public disclosure, the highlighting convention of Civil Local Rule 79-5(d)(1)(D), which identifies partial redactions, is inapplicable to it.

# EXHIBIT C

2025 Year-End Performance Letter of Doe 26

(Meta_Lumen_06137)

**FILED UNDER SEAL**

This exhibit consists entirely of confidential material and is omitted in full from the public version of this filing. An unredacted copy of this exhibit is being lodged under seal pursuant to Plaintiffs' Administrative Motion to File Under Seal, Civil Local Rule 79-5, and Judge Orrick's Standing Order on Administrative Motions to File Under Seal (Sept. 2022), and served on Defendant concurrently. Because this exhibit is sought to be sealed in its entirety, and no portion of it is proposed for public disclosure, the highlighting convention of Civil Local Rule 79-5(d)(1)(D), which identifies partial redactions, is inapplicable to it.

# EXHIBIT D

2025 Mid-Year Performance Review Form of Doe 26

(Meta_Lumen_06144)

**FILED UNDER SEAL**

This exhibit consists entirely of confidential material and is omitted in full from the public version of this filing. An unredacted copy of this exhibit is being lodged under seal pursuant to Plaintiffs' Administrative Motion to File Under Seal, Civil Local Rule 79-5, and Judge Orrick's Standing Order on Administrative Motions to File Under Seal (Sept. 2022), and served on Defendant concurrently. Because this exhibit is sought to be sealed in its entirety, and no portion of it is proposed for public disclosure, the highlighting convention of Civil Local Rule 79-5(d)(1)(D), which identifies partial redactions, is inapplicable to it.