Andrea Mazingo, SBN 300824
LUMEN LAW CENTER, P.C.
8605 Santa Monica Blvd PMB 832031
West Hollywood, CA 90069
Telephone: (310) 269-6739
Email: andi@lumenlawcenter.com

Barbara E. Cowan, SBN 251942
WORKPLACE ADVOCATES, P.C.
9431 Haven Avenue, Suite 100
Rancho Cucamonga, CA 91730
Telephone: (909) 983-4102
Email: brandi@wpa.law

Rebecca Houlding (admitted *pro hac vice*)
HOULDING LAW PC
431 Classon Avenue, Suite 1B
Brooklyn, NY 11238
Telephone: (646) 561-9119
Email: rebecca@houldinglaw.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DOES 1 THROUGH 26,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:26-cv-07122-WHO<br><br>**PLAINTIFFS' STATEMENT OF RECENT DECISION PURSUANT TO CIVIL LOCAL RULE 7-3(d)(2)**<br><br>Date: August 24, 2026<br>Time: 10:00 a.m.<br>Courtroom: 2, 17th Floor<br>Judge: Hon. William H. Orrick |

Pursuant to Civil Local Rule 7-3(d)(2), Plaintiffs respectfully submit this Statement of Recent Decision to bring to the Court's attention a relevant judicial opinion issued after the completion of briefing on Plaintiffs' Motion for Preliminary Injunction, which is set for hearing on August 24, 2026.

On August 17, 2026, the Honorable Richard Seeborg of the United States District Court for the Northern District of California issued an Order Denying Motion to Dismiss and Motion to Strike or Narrow Class Claims in *Barela v. Deloitte Consulting LLP*, No. 3:26-cv-03051-RS (N.D. Cal. Aug. 17, 2026) (ECF No. 33). A true and correct copy of the Order is attached hereto as **Exhibit A**.

Dated: August 21, 2026

Respectfully submitted,

LUMEN LAW CENTER, P.C.
WORKPLACE ADVOCATES, P.C.
HOULDING LAW PC

By: ______________________
Andrea Mazingo
Barbara E. Cowan
Rebecca Houlding (admitted *pro hac vice*)
Attorneys for Plaintiffs

# EXHIBIT A

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOANNE BARELA,

Plaintiff,

v.

DELOITTE CONSULTING LLP,

Defendant.

Case No. 26-cv-03051-RS

**ORDER DENYING MOTION TO DISMISS AND MOTION TO STRIKE OR NARROW CLASS CLAIMS**

## I. INTRODUCTION

Plaintiff Joanne Barela brings this action on behalf of herself and a putative class of Deloitte Consulting LLC ("Deloitte") exempt employees who she alleges were penalized for taking protected parental, pregnancy, or pregnancy-disability leave ("Protected Leave"). Deloitte moves to dismiss each of her individual and class claims—asserted under various federal and state anti-discrimination, family and medical leave, and fair pay acts—and moves to strike or narrow the class claims. For the foregoing reasons, both the motion to dismiss and the motion to strike are denied as to each claim.

## II. BACKGROUND[1]

Joanne Barela worked for Deloitte in its Human Capital Consulting practice from 2013 to 2025. Barela started as a consultant and was promoted three times, most recently being promoted to Senior Manager.

[1] Unless otherwise stated, this order accepts well-pled factual allegations made in the complaint as true.

Since at least 2016, Deloitte has used Performance Impact Dimensional Assessments to assess employees' performance relative to their peers. Since Performance Year[2] 2022, Deloitte's assessments use three dimensions: Client, Marketplace/Firm, and Leadership & Teaming. An employee's Utilization, Sales, and Margin metrics were factored into their Client and Marketplace/Firm scores until Performance Year 2026, when a fourth dimension, Metrics, was added. Metrics includes Utilization for all levels and Sales and Margin for Senior Managers.

Utilization is a critical metric for all levels and reflects an employee's total billable hours divided by the standard hours an employee is expected to work. The standard-hours variable does not account for leave taken as paid time off ("PTO"). Employees who take short-term disability as part of maternity leave are required first to use five days of PTO. On the aggregate, employees who take Protected Leave use more PTO than other employees. They also experience greater staffing lags between projects and are more often staffed on projects without Utilization-bearing billing codes.

An employee can earn a score for each dimension (Client, Marketplace/Firm, Leadership & Teaming, and Metrics) of "Below," "Strong," and "Exceptional." As of Performance Year 2023, an employee could also earn "Meets Expectations" in the "Client" dimension. Since 2022, employees in the Human Capital Consulting practice are categorized into five bands based on their performance ratings. When assigned to a band, exempt employees who take Protected Leave are compared to those who work a full 12 months. These performance bands directly translate into salary increases and bonuses, or lack thereof.[3]

---

[2] Performance Management Years measured performance from March of the previous year to March of the current performance management year until recently. Now it reflects performance from January to January.

[3] For Senior Managers, the highest band of performers includes those who received "Exceptional" ratings across all three dimensions, representing about 18% of exempt employees; the next band includes those who received "Exceptional" Client rating with one additional "Exceptional" rating, representing about 22% of exempt employees; the middle band includes those who received an "Exceptional" Client rating and two "Strong" ratings, representing about 16% of exempt employees; the fourth band includes those who receive a "Strong" Client rating and two other "Strong" ratings or one other "Strong" rating and one "Exceptional" rating, representing about 41% of employees; the bottom band, representing around 3% of exempt employees receive no salary increase or bonus.

Barela received high performance ratings with a mix of "Exceptional" and "Strong" ratings every year except for Performance Years 2021 and 2024, the years she took extended parental and pregnancy-related disability leave. Barela took such leave from March 2 to September 27, 2020, and from May 9, 2023, to February 4, 2024. In both Performance Years 2021 and 2024, Barela received "Strong" ratings across all dimensions. Her Utilization score was also lower, reporting 38% in Performance Year 2024. These assessments resulted in lower base salary increases in 2021 and 2024.

In Performance Management Year 2025, during which Barela took six weeks of Protected Leave, she received a "Strong" Client rating and "Exceptional" Marketplace/Firm and Leadership & Teaming ratings, placing her in the second highest performance band. She received a salary increase of $9,000 and a $37,000 bonus. Barela had $18.3 million in sales that year, well above the $5 million target. Nonetheless, because Barela took leave that year, she received lower performance ratings—and a lower salary increase—than if she had not taken leave.

On December 2, 2025, Deloitte informed Barela she was being terminated as part of a company-wide force reduction; the decision reflected her relative performance based on multi-year metrics. According to Barela, these metrics include the Performance Impact Dimensional Assessment ratings. Barela also alleges the length of time she had been a Senior Manager—6.3 years, including 1.3 years on leave—influenced her termination. (Deloitte expects to promote its Senior Managers to Principal, Partner, or Managing Partner within four to six years.) Barela's last day at Deloitte was December 30, 2025.

On March 20, 2026, Barela filed a charge with the California Civil Rights Department ("CRD") alleging discrimination based on sex, pregnancy, and use of Protected Leave. She received a right-to-sue letter from the CRD the same day. Barela next filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") on March 24, 2026, and received a Notice of Right to Sue from the EEOC on May 14, 2026.

Barela filed this action against Deloitte on April 9, 2026. She asserts fourteen claims for relief related to Deloitte's alleged failure to provide protected pregnancy leave, disparate impact, and disparate treatment in violation of various federal and state protections. Barela brings the action on behalf of a proposed nationwide class and a California class of all exempt employees

United States District Court
Northern District of California

who worked for Deloitte in the United States and California within the last three and four years, respectively, and who took Protected Leave. She also seeks to represent related subclasses depending on the claim.

## III. MOTION TO DISMISS

Plaintiff alleges a litany of class and individual claims. Defendant moves to dismiss the claims for Family Medical Leave Acy ("FMLA"), California Family Rights Act ("CFRA"), and Pregnancy Disability Leave Law ("PDLL") interference with the primary argument that Barela must show Deloitte treated employees who took Protected Leave differently from those who took other leave. Defendant moves to dismiss the claims for disparate impact, arguing Barela must show men and women who take Protected Leave are treated differently from one another. Defendant argues the claims for Pregnant Workers Fairness Act ("PWFA") and California Fair Employment and Housing Act ("FEHA") reasonable accommodation and related interference should be dismissed because Barela does not show reasonable accommodations were sought or that those requests were the but-for cause of her termination. Defendant moves to dismiss the California Unfair Competition Law ("UCL") claims based on the failure of other predicate claims. Finally, per Defendant, Barela's individual discriminatory treatment claims cannot survive because she fails to plead discriminatory intent related to a protected class. Defendant's arguments fail for the reasons set forth below.

### A. Legal Standard

Rule 12(b)(6) governs motions to dismiss for failure to state a claim. A complaint must contain a short and plain statement of the claim showing the pleader is entitled to relief, Fed. R. Civ. P. 8(a), and "giv[ing] the defendant fair notice of what the… claim is and the grounds upon which it rests," *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While "detailed factual allegations" are not required, a complaint must have factual allegations sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic*, 550 U.S. at 555). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital*

*Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (internal quotation marks and citation omitted). When evaluating such a motion, courts "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

**B. FMLA, CFRA, and PDLL Interference**

Barela alleges Deloitte's performance assessment metrics fail to account for FMLA Protected Leave, resulting in lower compensation. Deloitte argues these allegations do not set out a claim for interference with FMLA rights because Barela does not allege employees who took FMLA leave were treated differently from employees *who took other types of leave*.

The FMLA prohibits an employer from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided" by the Act, 29 U.S.C. § 2615(a)(1), including "attaching negative consequences to the exercise of protected rights." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001). When performance issues that are "a direct result of [an employee's] FMLA leave" lead to termination, an employee's FMLA right has been interfered with and the FMLA's protections become " 'illusory[.]' " *See Pagel v. TIN Inc.*, 695 F.3d 622, 629 (7th Cir. 2012) (citing *Lewis v. School District # 70*, 523 F.3d 730, 743 (7th Cir.2008)); *see also dela Cruz v. DeJoy*, No. 19-CV-01140-DMR, 2022 WL 2668378, at *3 (N.D. Cal. July 11, 2022) ("[T]he plaintiff must prove that the taking of FMLA-[P]rotected [L]eave 'constituted a negative factor in the decision to terminate' him or her." (quoting *Bachelder v. Am. W. Airlines, Inc*., 259 F.3d 1112, 1125 (9th Cir. 2001))).

As opposed to creating anti-discrimination protections, "Congress intended that these… entitlements would set 'a minimum labor standard for leave,' in the tradition of statutes such as 'the child labor laws, the minimum wage, Social Security, the safety and health laws, the pension and welfare benefit laws, and other labor laws that establish minimum standards for employment.' " *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001) (citing S.Rep. No. 103–3 at 4); *see also id.* at 1124 ("[T]he issue is one of *interference* with the exercise of FMLA rights under § 2615(a)(1), not retaliation *or* discrimination[.]" (emphasis in original)); *Sommer v. The Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006) (" 'An interference action is not

about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA.' " (citing *Callison v. City of Philadelphia*, 430 F.3d 117, 120 (3d Cir.2005) (holding that an employer may not reduce an absence of occurrence, i.e. a safety or perfect attendance, bonus for an FMLA leave taker who otherwise qualifies but the employer *may* prorate any production bonuses by the amount of lost production caused by FMLA leave)). Defendant, however, argues a contrary view of the law.

Defendant relies on two cases for its position that FMLA interference requires treating FMLA leave takers differently than other leave takers. *See Jefferson v. Time Warner Cable*, No. CV 11-5637-GW(CWx), 2012 WL 12887692, at *16 (C.D. Cal. July 23, 2012); *Clemens v. Moody's Analytics, Inc.*, 770 F. App'x 10, 12 (2d Cir. 2019). While those cases are consistent with Defendant's position, they do not negate the Ninth' Circuit's clear warning in *Bachelder*:

> Some of the case law applying § 2615 erroneously uses the term "discriminate" to refer to interference with exercise of rights claims. This semantic confusion has led many courts to apply anti-discrimination law to interference cases, instead of restricting the application of such principles—assuming they are applicable to FMLA at all—to "anti-retaliation" or "anti-discrimination" cases under §§ 2615(a)(2) and (b).

259 F.3d at 1124 n.10 (collecting cases). Defendant similarly relies on 29 C.F.R. § 825.215(c)(1) for the position that FMLA requires an employer to give FMLA leave takers only the pay increases that it would give to other leave takers. However, 29 C.F.R. § 825.21(c)(1) sets out the pay increases required to satisfy the FMLA "right to return to [a leave taker's] job or an equivalent job," which is distinct from the FMLA "right to use a certain amount of leave for protected reasons." *Bachelder*, 259 F.3d at 1122 ("The FMLA creates two interrelated, substantive employee rights[.]"). In other words, even if it does not violate the FMLA right to an "equivalent position," failure to provide certain conditional pay increases may violate the FMLA right to take Protected Leave and the prohibition against an employer's interference with that right.

Here, Barela alleges Deloitte's Utilization scores, which are an employee's billable hours divided by Deloitte's expected employee work hours, do not account for PTO. Yet, Deloitte requires pregnancy-related disability leave takers to use PTO for part of their leave. Regardless of how many hours a woman who takes pregnancy-related disability leave bills, her billables will be

United States District Court
Northern District of California

considered against work-hour expectations that include a week she was required to take PTO. Accordingly, taking protected pregnancy-disability leave directly results in depressed Utilization scores.

Plaintiff also alleges employees returning from Protected Leave are not staffed to client projects with Utilization billing codes at the same rates as their peers, further depressing Utilization scores. Barela alleges she received lower Utilization scores in the Performance Years she took substantial Protected Leave, including pregnancy-related disability leave; those years were also the only years she did not receive a mix of "Exceptional" and "Strong" ratings, resulting in lower base salary increases and, ultimately, her termination. Adopting the FMLA's protections against interference as a floor and rejecting Defendant's anti-discrimination view of the law, these allegations are sufficient to establish a claim for interference with FMLA rights.

The Parties do not dispute that CFRA and PDLL incorporate the same standards as the FMLA. *See Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132 n.4 (9th Cir. 2003) (applying the same standard to FMLA and CFRA claims because "CFRA adopts the language of the FMLA[,] and California state courts have held that the same standards apply" (collecting cases)). Accordingly, as with Plaintiff's FMLA interference claim, Barela pleads her CFRA and PDLL interference claims sufficiently.

**C. Disparate Impact in Violation of Title VII and FEHA**

A disparate impact claim under Title VII requires a plaintiff to "demonstrate[] that [his or her employer] uses a particular employment practice that causes a disparate impact on the basis of … sex." 42 U.S.C. § 2000e-2(k)(1)(A)(i). Specifically, "a plaintiff must allege (1) a significant disparity with respect to employment for the protected group, (2) the existence of a specific employment practice or set of practices, and (3) a causal relationship between the identified practice and the disparity." *Liu v. Uber Techs. Inc.*, 551 F. Supp. 3d 988, 990 (N.D. Cal. 2021) (citing *Freyd v. University of Oregon*, 990 F.3d 1211, 1224 (9th Cir. 2021)). "At the pleading stage, the complaint need only allege facts giving rise to plausible inferences that the disparity exists and is caused by the identified practice." *Id.* (citing *Moussouris v. Microsoft Corp.*, 2016 WL 6037978, at *3, *6 (W.D. Wash. Oct. 14, 2016); *Chaidez v. Ford Motor Company*, 937 F.3d

998, 1007 (7th Cir. 2019)). The plaintiff may "draw on their own personal observations and experience, such as by alleging that they and their female colleagues received lower performance evaluations despite performing as well as or better than their male peers" *Id.* (citing *Moussouris*, 2016 WL 6037978 at *6).

Deloitte argues disparate impact claims under Title VII and FEHA[4] require showing disparate impact on women who take parental leave as compared to men who take parental leave. Instead, however, it is enough to show that women are disproportionately represented in a group harmed by a policy. *See e.g., Barrett v. Forest Lab'ys, Inc.*, 39 F. Supp. 3d 407, 450 (S.D.N.Y. 2014) (collecting cases) ("[C]ourts have affirmed disparate impact claims under the PDA—even though those claims (by definition) necessarily involve a policy that is applied equally to pregnant women and men who take comparable leave or have similar physical restrictions."); *id.* at 451 (holding that a leave "policy has a disparate impact on women" where "women are more likely to take extended periods of leave," and this is sufficient at the pleading stage). Barela's allegations establish women are disproportionately represented among Protected Leave takers and Deloitte's policies penalize leave takers—and, specifically, her—through lower performance scores leading to lower payer and, ultimately, termination.[5]

Deloitte also argues that the Title VII claim must fail because Title VII cannot be used to challenge a practice permitted by the FMLA, CFRA, or PDLL. Even if this were true, Defendant's argument fails because, at this stage, Plaintiff has shown plausible FMLA, CFRA, and PDLL violations, as set forth above.

### D. Reasonable Accommodation Violations under PWFA and FEHA–Individual & Class-Wide Claims

#### a. Formal Request for Accommodation

The Pregnant Workers Fairness Act ("PWFA") requires employers to grant reasonable accommodations to known limitations related to pregnancy, childbirth, or related medical

[4] Defendant does not make separate arguments regarding Plaintiff's FEHA and Title VII disparate impact claims.

[5] Moreover, to the extent the requirement to use five days of PTO for pregnancy-related disability leave is not applied to men who take Protected Leave, Deloitte treats women who take parental leave that includes pregnancy related disability leave worse than men who take parental leave.



United States District Court
Northern District of California

conditions and prohibits employers from "tak[ing] adverse action in terms, conditions, or privileges of employment… on account of the employee requesting or using a reasonable accommodation." 42 U.S.C. § 2000gg-1. The statute took effect on June 27, 2023. Under the PWFA, a reasonable accommodation includes "[t]he ability to use paid leave (whether accrued, short-term disability, or another employer benefit) or unpaid leave[.]" 29 C.F.R. § 1636.3(i)(3)(i) (2024). When "the reasonable accommodation is leave," an employer's "production standard may need to be prorated to account for the reduced amount of time the qualified employee worked." 29 C.F.R. § 1636.3(h)(2), app. A (2024); *see also id.* § 1636.4(e), app. A (observing that, if as a result of taking Protected Leave, an employee "failed to meet the sales quota for that quarter," leading "to a negative performance appraisal," it "could be a violation of 42 U.S.C. 2000gg-1(5) because [the employee] received [the negative appraisal] due to the use of a reasonable accommodation."). Penalizing an employee who takes leave could both violate the PWFA right to reasonable accommodation and constitute an adverse action in the terms, conditions, or privileges of employment or retaliation. *Id.* § 1626.3(h)(2).

Barela alleges Deloitte's policies and practices regarding performance assessments and pregnancy-related leave penalize employees who take that leave. Deloitte argues that Plaintiff and proposed class members never sought a PWFA accommodation. However, "[t]o request a reasonable accommodation" under the PWFA, "the employee or the employee's representative need only communicate," C.F.R. § 1636.3 (h)(2), to "a supervisor, a manager, someone who has supervisory authority or who regularly directs the employee's tasks[,]… human resources personnel, or another appropriate official, or by following the steps in [the employer's] policy," *id.* §§ 1636.3(d), 1636.3(h)(2)(i), a limitation related to pregnancy or childbirth, 42 U.S.C. § 2000gg(4), and "an adjustment or change at work" needed due to that limitation, C.F.R.§ 1636.3(d). "The communication need not be in writing, be in a specific format, use specific words, or be on a specific form in order for it to be considered 'communicated to the employer.' " *Id.* § 1636(d)(2). Nor does it have "to identify a medical condition… or use medical terms." *Id.* § 1636(h)(2)(ii).

Under California's Fair Employment and Housing Act ("FEHA"), employers must "make reasonable accommodation for the known physical or mental disability of an applicant or employee." Cal. Gov't Code § 12940(m). As with the PWFA, a formal accommodation is not required. *See Gardner v. Fed. Express Corp*., 114 F. Supp. 3d 889, 901 (N.D. Cal. 2015) ("Employers who are aware of an employee's disability have an affirmative duty to make reasonable accommodations for such disability, *even if the employee has not requested an accommodation*."); *Prilliman v. United Air Lines, Inc*., 53 Cal. App. 4th 935, 954 (Cal. Ct. App. 1997) (holding the FEHA does not require a "disabled employee [to] first come forward and request a specific accommodation before the employer has a duty to investigate such accommodation"). Defendant's argument for dismissal on the grounds that Plaintiff and proposed class members did not seek accommodation under PWFA or FEHA fails.

**b. Differential Treatment Across Leave Takers**

Deloitte also argues that a PWFA claim requires treating PWFA leave takers differently than non-PWFA leave takers. However, Deloitte fails to provide convincing authority. Deloitte reasons the PWFA is modeled off the Americans with Disabilities Act ("ADA"), citing a Northern District of Illinois case, and the ADA does not require exceptions to generally applicable seniority or no-rehire policies, citing two Supreme Court decisions. Yet, it does not follow—as Defendant cursorily suggests—that a PWFA claim requires differential treatment between leave takers. In fact, the PWFA interpretive guidance makes clear that employers "must ensure that their *ordinary workplace policies or practices* . . . do not operate to penalize qualified employees for utilizing PWFA accommodations." 29 CFR § 1636.3(h)(2), app. A (emphasis added).

**c. But-For Causation**

Finally, Deloitte, relying on Supreme Court decisions holding that Title VII retaliation claims require but-for causation, argues the PWFA claims must fail because the PWFA requires showing "but for" causation. Dkt. 20, Mot., at 20–21. While PWFA retaliation claims are generally consistent with Title VII retaliation claims,[6] Plaintiff points out the PWFA has separate

[6] Where the language of the PWFA mirrors that of Title VII, courts apply the legal standards governing Title VII claims to corresponding PWFA claims, as the PWFA and Title VII all share

United States District Court
Northern District of California

prohibitions against adverse action based on requesting or using a reasonable accommodation, 42 U.S.C. § 2000gg-1(5), and against retaliation on account of "oppos[ing] any act or practice made unlawful" by the PWFA or participating in any related investigation. *Id.* § 2000gg-2(f). Plaintiffs may recover under either or both. 29 C.F.R. § 1636.4(e) (setting out in paragraph (e)(1) that adverse action is unlawful and in paragraph (e)(2) that nothing in paragraph (e)(1) "limits the rights available under 42 U.S.C. 2000gg-2(f)"); *see U.S. Equal Emp. Opp. Comm'n v. Sec. Assurance Mgmt., Inc.*, 2025 WL 2911781, at *3-4 (D.D.C. Oct. 14, 2025) (holding that plaintiffs' adverse action claim under § 2000gg-1(5) and retaliation claim under § 2000gg-2(f) are separate and not duplicative). In other words, Defendant has not shown that a PWFA claim under § 2000gg-1(5) requires but-for causation.[7] For the foregoing reasons, Defendant's arguments for dismissing the FEHA and PWFA claims fail.

**E. UCL Claim**

Defendant argues Plaintiff's UCL claim should not survive because Plaintiff's other predicate claims fail. However, finding that those claims in fact survive as set forth herein, so too

---

the same purpose: eliminating workplace discrimination. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85–86 (2006) ("[W]hen judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its ... judicial interpretations as well." (citation modified)); 82 C.J.S. Statutes § 458 (2025) (statutes relating to the same subject matter "generally should be read as together constituting one law and should be harmonized if possible")." *U.S. Equal Emp. Opportunity Comm'n v. Sec. Assurance Mgmt., Inc.*, No. CV 25-00181 (RC), 2025 WL 2911781, at *4 n.4 (D.D.C. Oct. 14, 2025).

[7] In fact, it appears no court has required but-for causation for an adverse action claim under § 2000gg-1(5). *See e.g., U.S. Equal Emp. Opportunity Comm'n v. Sec. Assurance Mgmt., Inc.*, No. CV 25-00181 (RC), 2025 WL 2911781, at *5 (D.D.C. Oct. 14, 2025) (To state a claim under § 2000gg-1(5), "Plaintiff would need to show that: (a) [she] suffered 'some harm' related to a term or condition of her employment; and (b) Defendant acted adversely 'on account of' (i.e., 'because of') her requesting or using a reasonable accommodation."); *Keiper v. CNN Am., Inc.*, No. 24-CV-875, 2024 WL 5119353, at *5 (E.D. Wis. Dec. 16, 2024) (Plaintiff "must allege facts sufficient to show her employer took an adverse employment action against her because of her statutorily protected activity."); *Ivy v. Amazon.com Servs., LLC*, No. 24 CV 6028, 2026 WL 1180070, at *10 (N.D. Ill. Apr. 30, 2026) (To succeed on a claim under § 2000gg-1(5), "the evidence must be sufficient to allow a reasonable jury to find that (1) [the plaintiff] used or requested a reasonable accommodation for a limitation related to pregnancy, childbirth, or related medical conditions, (2) [the defendant] took an adverse action against her, and (3) there is a causal connection between the two."); *ANDREA MCGUIRK, Plaintiff, v. NOOM, INC.*, Defendant., No. CV 24-3715-BAH, 2026 WL 1983833, at *6 (D. Md. July 9, 2026) ("At the pleading stage, [a plaintiff] need only allege facts plausibly supporting a reasonable inference of causation.").

United States District Court
Northern District of California

does Plaintiff's UCL claim.

**F. Disparate Treatment under Title VII and FEHA**

"Stating a claim for disparate treatment requires pleading facts giving rise to an inference that the employer *intended* to discriminate against the protected group." *Liu v. Uber Techs. Inc.*, 551 F. Supp. 3d 988, 992 (N.D. Cal. 2021); *see also Lui v. DeJoy*, 129 F.4th 770, 778 (9th Cir. 2025) ("requiring only that the adverse action occurred under circumstances giving rise to an inference of discrimination" (internal quotation marks and citation omitted)). "Mere awareness that a facially neutral policy was likely to have a disparate impact is not sufficient to infer intent." *Id.* (citing *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012)).

Barela alleges that Deloitte's performance assessment system penalizes employees who take Protected Leave, a group in which women are overrepresented and in which she falls. More specifically, she alleges that those who take short-term disability as part of maternity leave (notably, a group representing only women) are required to use a week of PTO. This depresses key performance metrics on which the reduction-in-force decisions that resulted in Barela's termination were made. Moreover, even those Protected Leave takers who are not required first to use PTO take more time off as part of their leaves than other employees.

Barela herself took substantial pregnancy and parental leave during the two years she received lower Utilization scores and overall performance assessments. This is not a coincidence. The allegations set out the mechanism by which such leave inevitably depresses performance scores and results in lower relative performance. Barela also alleges that Deloitte does not staff Protected Leave takers on Utilization-bearing billing codes at the same rate as other employees, further depressing the key performance metrics. Finally, Barela alleges her termination may have been motivated by longer times between promotions, which resulted in part from staffing lags caused by Deloitte's policies penalizing Protected Leave takers.

Moreover, Barela alleges Deloitte leadership and HR teams have been warned of these problems, including a Managing Director who warned Barela extended parental leave takers are compared to and expected to demonstrate the same results as their peers who work the full year. These allegations are sufficient to give rise to an inference that Deloitte intended to discriminate

against women.

## IV. MOTION TO STRIKE OR NARROW CLASS CLAIMS

### A. Legal Standard

Rule 12(f) permits "any redundant, immaterial, impertinent, or scandalous matter" to be stricken from a complaint. Fed. R. Civ. P. 12(f). "As with motions to dismiss, when ruling on a motion to strike, the Court takes the plaintiff's allegations as true and must liberally construe the complaint in the light most favorable to the plaintiff." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1145–46 (N.D. Cal. 2010).

" 'Motions to strike are generally disfavored' and 'should only be granted if the matter sought to be stricken clearly has no possible bearing on the subject matter of the litigation.' " *Hill v. Pacific Maritime Association*, 2025 WL 1282628, at *5 (N.D. Cal. May 2, 2025) (*quoting Gutzalenko v. City of Richmond*, 723 F. Supp. 3d 748, 755 (N.D. Cal. 2024)). Consequently, "courts in this District do not generally consider motions to strike class allegations at the pleadings stage," *id.*, and those that do only grant the motion if "any questions of law are clear and not in dispute[]… and under no set of circumstances could the [class action device] succeed." *In re Nexus 69 Prod. Liab. Litig.*, 296 F. Supp. 3d 888, 960–64 (N.D. Cal. 2018).

### B. Discussion

In the alternative to its motion to dismiss, Deloitte moves to strike or narrow Barela's proposed class claims. Deloitte argues Barela's putative nationwide class and statewide subclasses are facially overbroad. Barela's proposed class consists of "all exempt employees who worked for Deloitte in the United States within the last three years and who took parental, pregnancy, or pregnancy-disability leave." Dkt. 19, Am. Compl., at 8. Deloitte argues the nationwide class and statewide subclasses should be narrowed to include only those women who received a lower performance rating, as a result of taking FMLA leave, within the relevant statute of limitations period. Existing law does not definitively resolve whether the statute-of-limitations clock should start when the lower performance rating is assigned, when

the most recent paycheck diminished by a lower performance is deposited, or at some point in between. Since this is an open question of law, and since Barela's interpretation of the applicable statutes could be correct, there is a "set of circumstances" under which Balera's class action device could succeed. *In re Nexus 69 Prod. Liab. Litig.*, 296 F. Supp. 3d 888, 960–64 (N.D. Cal. 2018). Consequently, Deloitte's motion to narrow Barela's proposed class claims is denied as to each claim.

**i. FMLA Subclass**

Balera seeks to represent a proposed FMLA class consisting of all exempt employees who worked for Deloitte in the United States within the last three years and took Protected Leave. The FMLA provides a two-year statute of limitations for non-willful violations and a three-year statute of limitations for willful violations. 29 U.S.C. § 2617(c). Deloitte argues the FMLA subclass is overbroad because Barela has not alleged willfulness and because her class definition is not limited to violations that occurred during the statutory period.

Willfulness requires that the "employer either knew or showed reckless disregard for whether its conduct violated the Act." *Olson v. United States by and through Dep't of Energy*, 980 F.3d 1334, 1339 (9th Cir. 2020). According to the amended complaint, "[e]mployees at Deloitte have raised concerns about the negative impacts of taking Protected Leave on their performance reviews and compensation," and "[t]hese issues have been raised to and discussed by Talent, Ethics & Compliance, DEI, and other teams or groups within Deloitte Consulting LLP and/or Deloitte Global Talent." Dkt. 19, FAC, ¶ 65. Barela also alleges a Deloitte Managing Director told her that employees who take extended parental leave are expected to demonstrate the same results and impact as their peers who do not and are compared against those same peers. Crediting these allegations, a rational jury could find that Deloitte "showed reckless disregard" for whether its conduct was prohibited by the FMLA. *Olson*, 980 F.3d at 1339. Barela successfully alleges willfulness.

The FMLA's statute of limitations is triggered by "the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c). Deloitte and Barela

United States District Court
Northern District of California

pinpoint the "last event constituting the alleged violation" at different moments. According to Deloitte's theory, that moment occurs when an employee *receives* a performance assessment negatively impacted by FMLA leave. In contrast, Barela argues the moment of significance is the most recent paycheck reflecting lesser pay due to FMLA leave. The FMLA does not provide additional guidance on how to interpret the "last event constituting the alleged violation," nor has case law established its meaning. Because this is a disputed, open question under the law, Barela's class claims will not be narrowed at the pleading stage. *See In re Nexus 69 Prod. Liab. Litig.*, 296 F. Supp at 960–64.

**ii. Title VII and PWFA Subclasses**

Under Title VII and the PWFA, plaintiffs have 300 days after their claim accrues to file an EEOC charge. 42 U.S.C. §§ 2000e–5(e)(1), 2000gg-2(a)(1). Accordingly, the parties agree that Barela's and the subclass's claims must have accrued by May 28, 2025, 300 days after Barela filed her EEOC charge. However, they disagree as to when claims like Barela's accrue.

In 2009, Congress enacted the Lilly Ledbetter Fair Pay Act ("LLFPA") to overrule a key Title VII claim accrual decision, *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007). In *Ledbetter*, the Supreme Court held the statute of limitations under Title VII began when an employer made the initial discriminatory pay decision and not with each subsequent paycheck. *Id.* In response, Congress passed the LLFPA, which amended Title VII such that a claim based on a "discriminatory compensation decision or other practice" accrues with each paycheck. 42 U.S.C. § 2000e-5(e)(3)(A); Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, § 2, 123 Stat. 5, 5 (2009).

Deloitte argues that the LLFPA does not apply to Barela's claims because they are based on performance evaluations, rather than compensation discrimination. However, according to the legislative history, " '[o]ther practices' captures the fact pattern in Ledbetter, where sex-based performance evaluations were used in conjunction with a performance-based pay system to effectuate the discriminatory pay." H.R. Rep. No. 110-237, at 5 (2007).

Barela alleges Deloitte's performance assessment system effectuates discriminatory

pay by penalizing Protected Leave takers, among which women are overrepresented—as Deloitte knows. Per Barela's allegations, Deloitte's performance assessments directly influence employee pay, which is plausibly the kind of "performance-based pay scheme" Congress contemplated when including "other practices" in the LLFPA. *See* H.R. Rep. No. 110-237, at 5 (2007). Though Deloitte challenges this interpretation of the statute, the question of law is, at minimum, open and in dispute. Thus, again, Barela's class claims should not be narrowed at this stage. *See In re Nexus 69 Prod. Liab. Litig.*, 296 F. Supp at 960–64.

**iii. California's FEHA, PDLL, and CFRA Subclasses**

For the class claims asserted under California's FEHA, PDLL, and CRFRA laws, Barela seeks to certify a subclass of women who worked for Deloitte as exempt employees in California since March 20, 2023, and took Protected Leave at any time.

As to FEHA, Deloitte argues the statute of limitations has run for FEHA disparate impact claims for employees whose Protected Leave ended prior to the statutory period because the statute of limitations is triggered by "use" of a particular employment practice. Dkt. 20 at 30 (citing *Carroll v. City & Cnty. of S.F.*, 41 Cal. App. 5th 805, 823 (2019)). In *Carroll*, the California Supreme Court made clear that "even if a defendant's decision to adopt the practice would 'give rise to a freestanding disparate-impact claim,' a new actionable violation of Title VII occurs when the defendant 'implements that decision down the road'; or, in the words of the statute, when the defendant 'uses a practice that causes disparate impact.' " 41 Cal. App. 5th at 823 (citing *Lewis v. City of Chicago, Ill.*, 560 U.S. 205, 214, 217 (2010)). It is reasonable to extend this logic to both the FEHA and PDLL, which would allow the class action vehicle to succeed.

As to the CFRA, courts rely on FMLA cases to interpret CFRA. *See Rogers v. County of Los Angeles*, 198 Cal. App. 4th 480, 487 (Cal. Ct. App. 2011) ("Because the CFRA and the FMLA contain nearly identical provisions regarding family or medical leave, California courts routinely rely on federal cases interpreting the FMLA when reviewing the CFRA." (internal citations omitted)). Accordingly, Berela's CFRA claim should not be narrowed on the same

Case 3:26-cv-07121-WHO Document 34 Filed 08/21/26 Page 20 of 20

grounds, previously set out, her FMLA claim should not be narrowed.

As with the federal claims, Barela's California state class claims should not be narrowed at the pleading stage. *See In re Nexus 69 Prod. Liab. Litig.*, 296 F. Supp at 960–64.

**V. CONCLUSION**

For the foregoing reasons, Deloitte's motion to dismiss and motion to strike are denied as to each claim.

**IT IS SO ORDERED**.

Dated: August 17, 2026

RICHARD SEEBORG
United States District Judge

United States District Court
Northern District of California